**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | | |
|---|---|---|---|
| JANE DOE 1, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| v. | ) | CIVIL ACTION FILE | |
| | ) | NO. 1:19-CV-03840-WMR | |
| RED ROOF INNS, INC.; VARAHI | ) | | |
| HOTEL, LLC; FMW RRI NC, LLC; | ) | | |
| WESTMONT HOSPITALITY | ) | | |
| GROUP, INC.; WHG SU ATLANTA | ) | | |
| LP; SUB-SU HOTEL GP, LLC; | ) | | |
| CHOICE HOTELS INTERNATIONAL, | ) | | |
| INC.; LQ PROPERTIES, LLC; | ) | | |
| CPLG PROPERTIES, LLC; | ) | | |
| BRE/LQ PROPERTIES, LLC; | ) | | |
| LA QUINTA WORLDWIDE, LLC; | ) | | |
| EXTENDED STAY AMERICA, INC.; | ) | | |
| ESA MANAGEMENT, LLC; | ) | | |
| ESA P PORTFOLIO, LLC; | ) | | |
| ESA P PORTFOLIO OPERATING | ) | | |
| LESSEE, LLC; JOHN DOES 1-10, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## ESA DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED ANONYMOUSLY

COME NOW Defendants Extended Stay America, Inc., ESA Management,

LLC, ESA P Portfolio, LLC, and ESA P Portfolio Operating Lessee, LLC

(collectively "the ESA Defendants") hereby respond to *Plaintiff's Motion for*

*Protective Order and Leave to Proceed Anonymously*,[1] showing the Court as follows:

## I. <u>INTRODUCTION</u>

Plaintiff has filed two separate motions, seeking different relief. First, Plaintiff is seeking leave to proceed anonymously. That is, Plaintiff wishes to prosecute this action under a pseudonym and not her given name. In the spirit of good faith and given the nature of the Plaintiff's allegations, ESA initially had no objection to Plaintiff's request, asking only that the jury not be informed that the Plaintiff was able to proceed in secret. Plaintiff, however, disagreed with that notion and filed the current Motion. It has now been discovered that Plaintiff and her attorneys have acted and continue to act in a manner which is decidedly inconsistent with her purported need to stay out of the public eye – repeatedly courting local and national media attention and perpetually advertising this very lawsuit. Said behavior has effectively weaponized Plaintiff's anonymity, providing her the ability of launching public and extremely derogatory allegations against ESA, with no means for ESA (or anyone else) to even begin to investigate, let alone respond, to her claims. As will be noted below, District Courts, including this one, and the 11th Circuit have recognized the fundamental unfairness inherit in

---

[1] Plaintiff's Motion was filed on November 4, 2019 (document no. 74).

permitting a plaintiff to avoid having to stand behind his or her allegations. This unfairness should not be exacerbated here, where Plaintiff simultaneously seeks to take advantage of and be protected from publicity.

Second, Plaintiff is seeking entry of a proposed protective order to govern the use, treatment and dissemination of allegedly confidential information during discovery. The proposed order, however, severely limits the use of important information, hampers the ability of ESA and the other Defendants to test Plaintiff's allegations, and provides a significant strategic advantage to Plaintiff by limiting Defendants' ability to protect their defense strategy and work product. Currently, the parties continue to work towards a mutually agreeable confidentiality agreement, and ESA is agreeable to one that affords reasonable protections of embarrassing or sensitive information. However, the current version Plaintiff submitted to the Court is fundamentally unfair and compounds the inherent prejudice to Defendants created by Plaintiff proceeding anonymously. As such, ESA opposes Plaintiff's proposed protective order.

## II.   <u>ARGUMENT</u>

### A.   *ESA's Opposition to Plaintiff's Motion to Proceed Anonymously.*

#### 1.   <u>Plaintiff has courted, not lamented, the public spotlight for this suit.</u>

Before examining the law applicable to Plaintiff's Motion to Proceed

Anonymously ("MPA"), the Court must know that Plaintiff, through her attorneys, has repeatedly publicized the facts of this case, flooding this community (as well as the national news) with the details of her as-yet-unchallenged allegations.  On or about the day she filed this lawsuit, Plaintiff's attorneys appeared on nearly every major Atlanta media outlet (both print and television) to discuss this litigation.[2] Around the same time, Plaintiff's counsel solicited and received national media coverage as well, sending out press releases, appearing on television news shows, giving interviews and sharing details of Plaintiff's Complaint (if not the entire Complaint itself) with organizations such as U.S. News and World Report, NBC, Headline News and Fox.[3]  While counsel did not reveal the name of their client, every other aspect of the lawsuit was open for discussion – dates and specific locations of the alleged trafficking, as well as factual allegations particular to Plaintiff's claim, were provided.  Even today, Plaintiff's lawyers continue to actively promote the widespread dissemination of the facts of this lawsuit via links to news coverage on their website.

---

[2]     https://www.11alive.com/article/news/local/lawsuits-allege-employees-facilitated-heinous-sex-trafficking-network-at-atlanta-hotels/85-23220ac5-6ac1-4c05-93e4-22945b891680; https://www.ajc.com/news/crime--law/breaking-atlanta-area-hotels-face-sex-trafficking-lawsuits/B9Wy8bMUOV60eWuqdjlWWN/; https://www.wsbtv.com/news/local/atlanta/sex-trafficking-victims-file-lawsuits-against-metro-hotels/979808272; https://www.fox5atlanta.com/news/4-metro-atlanta-hotels-named-in-sex-trafficking-lawsuit

[3]     https://www.nbcnews.com/news/us-news/hotel-workers-helped-sex-traffickers-4-women-say-lawsuit-n1047691; https://www.atclawfirm.com/people/trinity-hundredmark/; https://www.foxbusiness.com/retail/sex-trafficking-ignored-atlanta-based-hotels-lawsuits; https://www.usnews.com/news/best-states/georgia/articles/2019-08-27/lawsuit-targets-hotels-accused-of-supporting-sex-trafficking

During their media tour, Plaintiff's lawyers recounted the allegations of these Complaints as fact, despite the apparent lack of any underlying criminal complaint or any governmental investigation into the alleged crimes[4], and made serious accusations against ESA and the other Defendants (such as the alleged trafficking was occurring "with full knowledge" of the hotels, that hotel employees were "getting paid to be lookouts for the police", etc.).  And, since there was no police report or investigation related to these allegations and Plaintiff's identify was concealed, the reporters, the public at large, and even the Defendants were unable to vet these allegations whatsoever or offer any detailed response.  Clearly, these repeated communications serve only a single purpose – to taint the potential jury pool against the Defendants before Plaintiff's allegations can be investigated.

Plaintiff's behavior highlights the reasons why anonymity is rarely granted by the Courts – it is fundamentally unfair.  And, while remarkable circumstances might lead a Court to grant an exception and tolerate the disadvantage it foists on a defendant, no such remarkable circumstances can exist where a plaintiff seeks out publicity and actively wields it against a defendant.

---

[4] Plaintiff's allegations in this manner are, thus far, entirely unsubstantiated.  The undersigned have been informed that there was no police investigation into this matter and that there is not going to be.  In other words, Plaintiff apparently did not report these crimes to the police, there is no investigation by the authorities, and, so far, there nothing other than Plaintiff's averments that a crime took place or that she was a victim thereof.

2.    Plaintiff cannot make a showing of a substantial privacy right to permit her to proceed anonymously.

Fed. R. Civ. P. 10(a) requires that every pleading in federal court must name all the parties.  Not only does this Rule protect the public interest in "knowing all the facts involved"[5], it is also protects the rights of those being sued:

> This [Rule] creates a strong presumption in favor of parties' proceeding in their own names.  Defendants have the right to know who their accusers are, as they may be subject to embarrassment or fundamental unfairness if they do not.

*Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011) (*citing Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005)).  The district courts recognize that permitting a plaintiff to conceal his or her identity, while at the same time making allegations of misconduct against a named and identifiable defendant is, on its face, fundamentally unfair:

> [Plaintiff] has denied [defendant] the shelter of anonymity – yet it is [defendant], and not the plaintiff, who faces disgrace if the complaint's allegations can be substantiated.  And if the complaint's allegations are false, then anonymity provides a shield behind which defamatory charges may be launched without shame or liability.

---

[5] "Public access to this information is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings."  *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992) (*citing Freedom From Religion Foundation, Inc. v. Emanuel County School Syst.*, 109 F.Supp.3d 1353, 1356 (S.D.Ga. 2015)).

*Id.*   Certainly, exceptions to the rule can and should be made from time to time, but "[i]t is the exceptional case in which a plaintiff may proceed under a fictitious name." *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992).  Thus, before a plaintiff can be allowed to proceed anonymously, she must make a showing that she "has a substantial privacy right that outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Id.* (*citing Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)).

The first step in analyzing a plaintiff's claim of substantial privacy right is to look at the following three factors:  (1) Is the plaintiff challenging governmental activity[6], (2) will the plaintiff be required to disclose information of the utmost intimacy, or (3) will the plaintiff be compelled to admit her intention to engage in illegal conduct and risk criminal prosecution.  *Plaintiff B*, 631 F.3d at p. 1316 (internal cites omitted).  Next, since these three factors are not all encompassing, Courts will review additional elements, such as whether the plaintiff is a minor, whether the plaintiff will be threatened with violence by proceeding in her own name, and whether the plaintiff's anonymity poses a unique threat of fundamental

---

[6] It should be noted that, in analyzing this particular prong, the 11th Circuit has held that it should be counted in the defendant's favor in suits where the defendant is a private entity or corporation.  *Frank*, 951 F.2d at p. 323-24.  In other words, the issue is not whether there is more of a reason to grant anonymity where the plaintiff is suing the government.  Rather, the issue is that there is "*more* reason *not* to grant" the request where the plaintiff is suing a private citizen.  *Id.* (emphasis in original).  Thus, this factor weighs in favor of ESA.

unfairness to the defendant.  *Id.* (internal cites omitted).  Here, Plaintiff argues that the litigation will require her to disclose "information of the utmost intimacy" and that proceeding under her own name exposes her to threats of violence.  These factors are analyzed, in turn, below.

> a.    *Without more, the fear of embarrassment or ridicule by revealing "information of the utmost intimacy" does not warrant anonymity.*

The fact that revealing one's identity might, due to the subject matter involved in a particular case, cause a plaintiff substantial embarrassment is not enough to warrant anonymity under this prong.  *Id.*    The 11th Circuit has noted that, for this reason, courts "have often denied the protection of anonymity [even] in cases where plaintiffs allege sexual assault …"  *Id.* (internal cites omitted). Indeed, this very Court has determined that allegations of sexual assault, without more, are an insufficient basis on which to cast aside the fairness of having litigants prosecute actions in their own name:

> When a plaintiff alleges that he or she will be required to divulge information "of the utmost privacy," and requests anonymity on this basis, the case generally involves "abortion, mental illness, personal safety, homosexuality, transsexuality and illegitimate or abandoned children in welfare cases."  ***Doe v. Bell Atlantic Business Systems Services, Inc.***, 162 F.R.D. 418, 420 (D. Mass. 1995) (***citing Doe v. Blue Cross and Blue Shield of Rhode Island***, 794 F.Supp. 72, 74 (D.R.I. 1992)).    While Plaintiffs allege that Plaintiff John Doe was the victim of

sexual assault by another male, Plaintiffs do not allege
that Plaintiff John Doe is homosexual, and indeed, they
deny that is the case.

***Doe v. Family Dollar Stores, Inc.***, 2007 WL 9706836, *2 (N.D.Ga. 2007).[7]

As noted above, the issue comes down to fairness.  In ***Doe v. Shakur***, 164
F.R.D. 359, 361 (S.D.N.Y. 1996),[8] the court prohibited a plaintiff to proceed
anonymously in a civil suit against her alleged rapist, making the following points:

- By choosing to bring her lawsuit, plaintiff put her credibility at issue
  and "fairness requires" that she be prepared to sand behind her
  charges publically;

- In a civil suit, a plaintiff is seeking primarily to vindicate her own
  interests.  Thus, there is no need to use anonymity to encourage
  victims to testify in order to promote public interests; and

- Allowing a plaintiff to make anonymous allegations against a named
  defendant places that defendant at a serious disadvantage, forcing him
  to defend himself publically, "while plaintiff could make her
  accusations from behind a cloak of anonymity."

***See also Doe v. North Carolina Central Univ.***, 1999 WL 1939248, *2 (M.D.N.C.
1999) (finding it fundamentally unfair to allow a plaintiff to anonymously accuse
her supervisor of rape, without requiring her to stand, "as [she] must", in a public

---

[7] In ***Family Dollar***, the plaintiff, a male, alleged he was sexually assaulted by his male supervisor and that, due to the "intimate and traumatic details" of the attack, "requiring him to disclose his real name [would] embarrass and humiliate him …"  ***Family Dollar***, 2007 WL 9706836 at *2.  His request for anonymity was denied.

[8] Admittedly, the ***Doe v. Shakur*** opinion is not binding on this Court, but it is informative.  Also, it was cited by the 11th Circuit in ***Plaintiff B***.  ***Plaintiff B.***, 631 F.3d at p. 1316

forum) (internal cite omitted); *Doe v. Bell Atlantic Business Systems Services, Inc.*, 162 F.R.D. 418, 422 (1995) (same); *Doe v. University of Rhode Island*, 1993 WL 667341, *3 (D.R.I.) (noting that victims of sexual assault are "not within those classes of cases that have generally been recognized as compelling privacy", and potential embarrassment and ridicule is not enough to warrant anonymity).

Also, when a plaintiff actually seeks out publicity for his or her claims, while remaining anonymous in the process, the prejudice and unfairness is more than just potential – it is palpable.  In such a scenario, permitting a plaintiff to proceed anonymously essentially hands her the advantage the above cases warn against.  The undersigned was able to locate only one case wherein a plaintiff simultaneously sought secrecy from the Court and attention from the media (suggesting, perhaps, that such inconsistent and unfair behavior is rare):  *Doe v. North Carolina Central Univ.*, *supra*.

In *North Carolina Central*, the plaintiff alleged that she was assaulted and raped by her supervisor, Lt. Robert Moore, in her position as a security guard for the university.  As one would expect, the District Court found that the plaintiff's media publication of the names of and allegations against the defendants, while plaintiff herself enjoyed secrecy, exacerbated the unfairness wrought by anonymity:

> [T]he Court notes that Plaintiff has made her accusations
> publicly.  In addition, Plaintiff's attorney has made
> several statements to the media regarding the case,
> specifically identifying Moore and leveling charges at
> NCCU.  If the Court allowed Plaintiff to proceed as "Jane
> Doe", NCCU would be "required to defend itself
> publically while plaintiff could make her accusations
> from behind a cloak of anonymity."  It is not appropriate
> for Plaintiff to "use her privacy interests as a shelter from
> which she can safely hurl these accusations without
> subjecting herself to public scrutiny."

*North Carolina Central*, 1999 WL 19389248 at *4-5.  Thus, anonymity was

denied.  *Id.*

Finally, it must be noted that, in support of her position, Plaintiff has

presented the Court with nothing more than the allegations of her Complaint.

While there may be no bright letter rule *requiring* actual evidence to support a

motion to proceed anonymously, the position that one can satisfy his or her burden

without evidence seems innately illogical.  If allegations were all that were

required, anonymity would be easily achieved and the exception may swallow the

rule.  Indeed, a cursory review of the case upon which Plaintiff primarily relies –

*Plaintiff B* – reveals that the plaintiff therein submitted "extensive evidence" along

with her motion, which included an expert affidavit.[9]

Accordingly, Plaintiff's initial argument, that she will be required to reveal intimate details, cannot support her Motion alone.  ESA recognizes the sensitive nature of these lawsuits, but, respectfully, that is not enough to cast aside the notions of fairness the rules are designed to protect, especially where Plaintiff has willingly sought to take advantage of her anonymity and make unchallenged and unchallengeable statements and allegations in the most public of forums – the local and national news media – with the sole purpose and inevitable result of poisoning the jury pool.

> b.    *Anonymity does not afford the protection Plaintiff claims to need.*

Plaintiff next claims that she lives in fear of retaliation by her alleged sex traffickers, and that this fear is an additional basis for which to grant her anonymity.  *See* Plaintiff's Motion, pp. 6-7.  However, Plaintiff fails to offer any

---

[9] It should also be noted that Plaintiff's analysis of the *Plaintiff B* opinion is woefully incomplete.  In her Motion, Plaintiff claims that the *Plaintiff B* court "held that descriptions of the plaintiffs while nude and engaging in explicit sexual conduct 'could not be of a more sensitive and highly personal nature,' *and thus the district court should have allowed the plaintiffs to proceed anonymously*."  *See* Plaintiff's Motion, p. 5 (emphasis added).  The Court's opinion, however, was based on far more than the potential for descriptions of sexual conduct.  *Plaintiff B* involved several women who, while minors, were filmed nude and/or engaged in illicit homosexual activity and then featured in the infamous "Girls Gone Wild" videos, which were sold to the public.  *Plaintiff B*, 631 F.3d at p. 1312.  The Court's ultimate decision to overturn the district court's denial of anonymity to some (but not all) of the plaintiffs, was based on many factors, including (1) that the sexual behavior at issue was homosexual in nature (*id.*, p. 1317), (2) the fact that the videos were still available for sale and, should anonymity be lifted, the plaintiffs would be forever linked to those videos (*id.*, p. 1318), and (3) the fact that the videos contained child pornography and lifting anonymity could "create heavy demand for these links, pictures, and videos, knowing they provide an easy way to obtain some explicit sexual images of minors." (*id.*).

evidence to substantiate this fear other than the averments in her Motion, which provide the Court no way to assess the merits of her argument.[10]   Likewise, Plaintiff offers no explanation as to how proceeding under her real name might increase her likelihood of being threatened.

As noted above, Plaintiff has already publicized the factual allegations of this suit – including the specific locations and dates the trafficking occurred and particular factual events that purportedly took place.  And, certainly, the traffickers already know who Plaintiff is.  Thus, if her contentions are true, the traffickers – upon hearing the broadcasts or reading the reports solicited and promoted by Plaintiff – will know that she is the one prosecuting this lawsuit.  *See Shakur*, 164 F.R.D. at p. 362 ("Plaintiff has not, however, provided any details, nor has she explained how or why the use of her real name in court papers would lead to harm, since those who presumably would have any animosity toward her already know her true identity.") (*citing Doe v. Hallock*, 119 F.R.D. 640, 644 (S.D.Miss. 1987) ("the source of any harassment apparently is already aware of plaintiff's identity, and there is little reason to believe that disclosure of her identity in this lawsuit

---

[10] Interestingly, Plaintiff even notes that the case upon which she relies for support – *Doe v. Barrow County, GA.*, 219 F.R.D. 189 (N.D.Ga. 2003) – involved a plaintiff who presented evidence to the Court, in the form of affidavits. *See* Plaintiff's Motion, p. 6.  Specifically, the plaintiff in *Barrow County* presented his own affidavit, along with one of another individual who had made the same complaint (challenging a religious monument in the courthouse), documenting threatening behavior.  In addition to that, the Court took note of threatening communications it had received as well.  By way of contrast, Plaintiff herein presents nothing other than the conclusory and unsupported statements of her counsel.

would serve to increase the number of such incidents")).  Indeed, it is much more likely that the alleged traffickers would learn of the lawsuit via the flood of media reports as opposed to them checking the federal court docket.

Additionally, Plaintiff concedes that Defendants will have to be provided with the traffickers' identities, so they may interview/depose them.  After all, there has been no police report filed by the Plaintiff and no police investigation into Plaintiff's allegations.  As such, the Defendants are obligated to interview and depose these alleged traffickers to ensure that Plaintiff's claims about her treatment at Defendants' hotels are entirely accurate, especially with respect to the allegations that the hotel employees and management actively participated in the abuse and trafficking.  Thus, if Plaintiff's attorneys' website and the heavy media coverage they have solicited have not already alerted the traffickers that one of their victims has filed a lawsuit, they will certainly know this information when they are located, interviewed and deposed.

Thus, the primary and most important reason for remaining anonymous and taking the extraordinary step of shielding the public from the information in this important lawsuit, does nothing to serve the purpose Plaintiff promotes.  The only purpose anonymity serves is allowing Plaintiff's attorneys to continue to promote the one-sided media coverage of this case, severely tainting the jury pool in this process.

c.       *Plaintiff's remaining arguments are entirely unsupported.*

Finally, Plaintiff closes out her brief making an attempt to address the other prongs of an anonymity analysis.  For example, at one point, Plaintiff claims that she will be required to admit "that she engaged in prostitution".  *See* Plaintiff's Motion, p. 5.  However, the element to be considered is whether a plaintiff would be compelled to admit her intent to engage in illegal conduct and risk criminal prosecution.  *See Plaintiff B*, 631 F.3d at p. 1316; *Frank*, 951 F.2d at p. 324.  Here, a cursory review of Plaintiff's Complaint reveals that she is not alleging to be a willing participant in the crimes at issue.  Rather, she claims she was coerced and forced into non-consensual sex, which is not admitting an intent to commit a crime and cannot satisfy the element cited.

Elsewhere in her Motion, Plaintiff contends that she is "especially vulnerable", given her "past victimization".  *See* Plaintiff's Motion, p. 7.  However, Plaintiff fails to explain how her victimization rises to a level requiring anonymity.  If victimization satisfied the inquiry, the many cases in which anonymity was denied to one claiming sexual assault would be decidedly incorrect; yet, they remain good law.  Moreover, the cases to which Plaintiff cites in this section are readily distinguishable.  In *Doe v. Stegall*, for example, the plaintiffs were children, which the court found "especially persuasive".  *Stegall*, 653 F.2d at

186.   And, the special circumstances that existed in ***Plaintiff B*** (*i.e.* anonymity being necessary to prevent the plaintiff from being identified in publically sold child pornography) simply do not exist here.

Next, Plaintiff makes the amorphous argument that forcing her to proceed under her own name "would subject her to the harm being litigated".   ***See*** Plaintiff's Motion, p. 8.   This, however, is not one of factors to be examined by the Court and, even if it were, it is hard to imagine how the act of standing against those Defendants the Plaintiff alleges participated in her trafficking would subject her to the same harm.   Indeed, Plaintiff contends that it was the Defendants – not her – who engaged in scornful behavior.

Finally, Plaintiff claims that the public interest "in revealing Plaintiff's identity is weak".   ***See*** Plaintiff's Motion, p. 8.   This argument misses the point. "Public access to this information is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings." ***Frank***, 951 F.2d at 322 (***citing Freedom From Religion Foundation***, 109 F.Supp.3d at 1356).   It is not interest in any one fact that controls; we are dealing with "customary and constitutionally-embedded presumption[s] of openness in judicial proceedings", which can only rarely be overcome and not in the present case. ***Id.*** (***citing Stegall***, 653 F.2d at 186).

**B.**     ***ESA's Opposition to Plaintiff's Protective Order.***

Along with her Motion for anonymity, the Plaintiff has submitted a draft protective order.  Plaintiff's proposed order essentially assumes her Motion to proceed anonymously will be granted.  As noted above, ESA opposes Plaintiff's Motion.  Obviously, if anonymity is denied (as it should be), Plaintiff's version of protective order will have to be completely reworked.[11]  Even if Plaintiff's Motion is granted, however, the Plaintiff's current draft protective order is unworkable and must be rejected.  Simply put, Plaintiff's version disregards the Defendants' attorney-client privileges and work-product protections, and requires the Defendants to provide Plaintiff with a detailed playbook of their defense.  To the extent Plaintiff contends that her draft protective order is necessary to protect her identity, the prejudicial and unfair nature of the protective order is all the more reason to deny Plaintiff's Motion for anonymity.

For example, Plaintiff's draft order permits her to label ***anyone*** as a Highly Confidential Pseudonym Required ("HCPR") witness and automatically extends that designation to Plaintiff, any other people suspected of being trafficked, any alleged or suspected trafficker and any "affiliate or associate" of any trafficker.

*See* Plaintiff's Draft Order ("Draft"), ¶¶ 2B, 4.  The parties would then be unable to use the person's name in any "public document," which is undefined and achingly broad.[12]

The Draft then goes on to severely limit the categories/types of witnesses Defendants are permitted to ask about anyone designated as HCPR.  *Id.*, ¶ 6.  Not included within Plaintiff's approved list are former hotel employees, law enforcement, Plaintiff's friends, family and associates, or various other fact witnesses.  Contacting a witness who is outside of Plaintiff's approved categories would require the defense to seek and obtain Plaintiff's approval.  *Id.*, ¶¶ 6-7.[13] Moreover, before any Defendant could interview and reveal Plaintiff's identity to her alleged traffickers, their "affiliates", or anyone who even worked at one of the hotels at issue in the complaint, the Defendant must seek and receive *the Court's* permission to do so.  *Id.*, ¶ 7.

---

[11] ESA recognizes that there may be sensitive documentation, photographic evidence and even testimony that the Plaintiff or the Defendants may wish to designate as confidential, and ESA is not opposed to a limited protective order limiting the publication of certain information.  The parties continue to work together in an effort to agree upon a fair protective order.

[12] Among the undesirable results of this provision would be that Plaintiff and potentially dozens of witnesses will be referred to as "Doe" in depositions and interrogatory responses, some of which will almost certainly be used at some point during trial.  This restriction would provide the aura of the Court's "stamp of approval" regarding there being a reason for Plaintiff and select witnesses to fear revealing their identity.  This is an issue the parties have agreed would be addressed prior to trial.  However, if this condition is part of the protective order, there will be no way to avoid the jury hearing that Plaintiff and some of the witnesses were allowed to proceed anonymously when the deposition is played or interrogatory answers are read to the jury.

18

Obviously, these requirements would dilute, if not negate entirely, attorney/client privileges and work-product protections. Plaintiff would be entitled to know of almost every witness Defendant thinks might have helpful or even harmful information related to the factual allegations on which Plaintiff's claim is based, essentially supplying Plaintiff with an outline of defense strategy. Many of these witnesses may be witnesses Defendants might not otherwise be required to disclose in discovery, but will now be forced to do so.

Moreover, Plaintiff's lawyers, it seems, have already revealed that they are not obligated to follow the terms of their draft protective order. On one of the various media appearances referenced above, one of Plaintiff's attorneys indicated that counsel have already been seeking out and interviewing witnesses:

> There are employees involved, but there are employees who left their job because they weren't happy with this, they didn't like what they saw, and there – when things happen at hotels there are witnesses that see them happen. . . . I don't know if I can get into everything that we would use at trial. There are witnesses to a lot of this. What's in the Complaint we allege to be true and we have reasons to know that it's true. . . . There's a chain of evidence. There's video, there's witnesses, there are people that saw things that they didn't like seeing at the time and they're still willing to talk about it.

---

[13] Likewise, the Defendants would be required to get Plaintiff's permission before showing documentary evidence labeled as "confidential" to anyone not within the listed categories. *See* Plaintiff's Draft, ¶ 6. So, for example, before showing a police officer the copy of a police report marked confidential, or before showing a potential witness a photograph of the Plaintiff, the Defendants must seek Plaintiff's counsel's approval.

*See*  https://www.atclawfirm.com/people/trinity-hundredmark/  ("Sex Trafficking Lawsuit | HLN").  If the lawyer asked these witnesses about an HCPR, which one assumes he would have, he would have been required, per Plaintiff's draft order, to get permission from the Defendants and/or the Court, which obviously was not done.

It cannot be denied that Plaintiff's draft order would provide Plaintiff with an enormous and extremely prejudicial strategical advantage.  Accordingly, it must be rejected, along with the anonymity upon which Plaintiff's unfair draft protective order is based.

## III.   CONCLUSION

Based on the above, the ESA Defendants respectfully request this Court enter an Order denying to *Plaintiff's Motion for Protective Order and Leave to Proceed Anonymously*.

Respectfully submitted this 12th day of November, 2019.

*{Signature on following page}*

WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, LLC

/s/  *Christopher Byrd*
Patrick B. Moore
GA Bar No. 520390
Christopher T. Byrd
GA Bar No. 100854
Shubhra R. Mashelkar
GA Bar No. 475388
Emily M. Adams
GA Bar No. 54419

3344 Peachtree Road, N.E.
Suite 2400
Atlanta, Georgia  30326
(404) 876-2700

*Counsel for Defendants Extended Stay America, Inc., ESA Management, LLC, ESA P Portfolio, LLC, and ESA P Portfolio Operating Lessee, LLC*

## RULE 7.1D CERTIFICATE OF TYPE, FORMAT AND FONT SIZE

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

Dated: November 12, 2019.

/s/  *Christopher Byrd*
Christopher T. Byrd

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been furnished to all known counsel of record by electronic service via the Court's CM/ECF electronic filing system, addressed as follows :

Jonathan S. Tonge, Esq.
jtonge@atclawfirm.com
Patrick J. McDonough
pmcdonough@atclawfirm.com
Trinity Hundredmark
thundred@atclawfirm.com
ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Ste. 4000
Duluth, GA  30097
*Counsel for Plaintiff*
Sara M. Turner
smturner@bakerdonelson.com
Christie L. Dowling
cdowling@bakerdonelson.com
BAKER DONELSON -B'HAM
420 North 20th Street
Suite 1600 Wachovia Tower
Birmingham, AL 35203-5202

Janelle E. Alleyne
BAKER, DONELSON-ATL
3414 Peachtree Rd., N.E., Suite 1600
Atlanta, GA 30326
jalleyne@bakerdonelson.com
*Counsel for Choice Hotels Int'l.*

C. Shane Keith
HAWKINS PARNELL & YOUNG, LLP
303 Peachtree Street, N.E., Suite 4000
Atlanta, GA 30308-3243
skeith@hpylaw.com
*Counsel for Varahi Hotel, LLC*

Admir Allushi
adi.allushi@lewisbrisbois.com
P. Michael Freed
michael.freed@lewisbrisbois.com
Charles K. Reed
chuck.reed@lewisbrisbois.com LEWIS BRISBOIS
BISGAARD & SMITH, LLP - ATL
1180 Peachtree St., N.E., Suite 2900
Atlanta, GA 30309-3521
*Counsel for Red Roof Inns, Inc., FMW RRI NC,*
*LLC; Westmont Hospitality Group, Inc.; WHG*
*SU Atlanta, LP; SUB-SU Hotel GP, LLC*

David S. Sager
DLA PIPER LLP
51 John F. Kennedy Pkwy, Ste 120
Short Hills, NJ  07078-2704
david.sager@dlapiper.com

Delia Gervin Frazier
Christopher G. Campbell
DLA PIPER LLP-ATL
One Atlantic Center, Suite 2800
1201 West Peachtree St., N.W.
Atlanta, GA 30309
delia.frazier@dlapiper.com
christopher.campbell@dlapiper.com
*Counsel for CPLG Properties, LLC*
*LQ Properties, LLC*
*BRE/LQ Properties, LLC*
*La Quinta Worldwide, LLC*

This 12th of November, 2019.

/s/   *Christopher Byrd*
Christopher T. Byrd