## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JANE DOE 1,<br><br>            Plaintiff,<br><br>vs.<br><br>RED ROOF INNS, INC., VARAHI HOTEL, LLC, FMW RRI NC, LLC, WESTMONT HOSPITALITY GROUP, INC., RRI III, LLC, WHG SU ATLANTA, LP, SUB-SU HOTEL GP, LLC, CHOICE HOTELS INTERNATIONAL, INC., WYNDHAM HOTELS & RESORTS, INC., MICROTEL INNS AND SUITES FRANCHISING, INC., KUZZINS BUFORD, LLC, RAMADA WORLDWIDE INC., JEET & JJ LLC, NEWTEL V CORPORATION, CPLG HOL, LLC, CPLG PROPERTIES, LLC, COREPOINT LODGING, INC., LQ MANAGEMENT, LLC, LA QUINTA WORLDWIDE, LLC, HAMENT DESAI, VAD PROPERTY MANAGEMENT, LLC, VANTAGEHOSPITALITY GROUP, INC., 2014 SE OWNER 5-EMORY, LLC, LAXMI DRUID HILLS HOTEL, LLC, JHM HOTELS MANAGEMENT, INC., AURO HOTELS MANAGEMENT, LLC, HILTON FRANCHISE  HOLDINGS,LLC, HILTON DOMESTIC OPERATING COMPANY, INC., HILTON WORLDWIDE HOLDINGS, INC. and JOHN DOES 1-10.<br><br>            Defendants. | Civil Action No.: 1:19-cv-03840-WMR |

## DEFENDANT CHOICE HOTELS INTERNATIONAL, INC'S
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN
## THE ALTERNATIVE, TO STRIKE AND MEMORANDUM IN SUPPORT

COMES NOW Defendant Choice Hotels International, Inc. ("Choice"), by and through undersigned counsel, and pursuant to Rules 12(b), (e) and (f) hereby brings its Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, to Strike.  In support thereof, Choice states as follows:

## **INTRODUCTION**

Plaintiff's claims stem from a fundamental misunderstanding of well-settled Georgia law.  Georgia courts have consistently held in cases nearly identical to the case at issue, that franchisors shall not be held liable for the acts and omissions of their franchisees.  To find otherwise would represent a sea change in the law and drastically impact the business community by effectively invalidating a business form which is widely utilized.

Choice is a franchisor which enters into contracts with independent owner / operators ("franchisees") to allow them to use certain brand names, including Suburban Extended Stay®.  WHG SU Atlanta, LLC ("Chamblee Franchisee") temporarily was a party to such an agreement from May 2012 until August 2016 related to the property it independently owned and operated in Chamblee, Georgia which was branded during that time period as Suburban Extended Stay®.  Plaintiff alleges the conduct at issue occurred from 2011 until 2016.  Am. Compl. ¶102.

2

## FACTS

Plaintiff's Amended Complaint, generally, makes allegations against a group of "Defendants," in most relevant part referenced as the "Suburban Extended Stay Defendants." Am. Compl. ¶28.  This generic moniker "Suburban Extended Stay Defendants" appears to include Choice, Sub-Su Hotel GP, LLC and WHG SU Atlanta, LLC (as alter egos and/or agents of Westmont Hospitality Group), and John Does 1-10 (unnamed "additional owners, operators, managers, management companies, security companies, or related companies of the hotel locations identified in this Amended Complaint." Am. Compl. at ¶28,70.  Plaintiff improperly fails to specify which Defendants from this group allegedly took which specific actions set forth in the Amended Complaint.  Am. Compl. ¶28.  Most significantly, none of the allegations set forth any cognizable legal theory under which Choice as a franchisor could be held liable for the alleged actions of a franchisee or the employees of that franchisee.

Georgia law[1] is clear that a franchisor has no direct legal relationship with the guests of a franchisee.  Absent day-to-day control over the premises the franchisor assumes no duty.  *DaimlerChrysler Motors Co., LLC v. Clemente*, 294 Ga. App. 38,

---

[1]   A federal court sitting in diversity must apply the forum state's choice of law rules. *Sanders v. Doe*, 831 F. supp. 886, 889 (S.D.Ga. 1993)(citing *Klaxon Co. v. Stentor Electric Mfg. Co*. 313 U. S. 674 (1941).

4834-5827-8574

44 (2008).  Plaintiff has failed to allege such day-to-day control.  To the contrary,

Plaintiff has alleged that control rested with Westmont, not Choice:

> WHG SU is the title holder of the Suburban Extended Stay (Chamblee).
> SUB SU is the general partner of WHG SU.  **Westmont exerts
> complete control over WHG SU and SUB-SU**, who are agents of,
> and/or the alter-egos of, Westmont.

Am. Compl. ¶31 (emphasis added).

As a franchisor, Choice has strictly proscribed rights and responsibilities

under Federal and State law.  Choice sets certain brand standards in order to maintain

its trademark and brand name under the provisions of the Lanham Act, 15 U.S.C.

§1051, *et. seq*.  Adoption and enforcement of those standards does not create day-

to-day "control" sufficient to establish liability as a matter of well-established

Georgia legal precedent.  *See e.g. Baldino's Giant Jersey Subs, Inc. v. Taylor,* 216

Ga. App. 467, 467 (1995); *McMullan v. Ga. Girl Fashions,* 180 Ga.App. 228, 230

(1986); *see Holiday Inns v. Newton,* 157 Ga.App. 436 (1981).  Plaintiffs have

alleged nothing more than a typical franchisor/franchisee relationship.

If Plaintiff's conclusory claims were correct, a hotel franchisor would be liable

in every case, for anything and everything that happened at each of the independently

owned and operated properties simply by virtue of the use of the franchise business

form – irrespective of any control, or lack thereof, exhibited.  This is an absurd legal

position and is contrary to every Georgia case on the subject.

4

4834-5827-8574

Choice makes no decisions and has no input on, much less control over, (i) rental of rooms to particular guests; (ii) setting of room rates; (iii) any determination of whether lawful or unlawful activity occurs in guest rooms; or (iv) any addressing of possible unlawful activity in guest rooms on a franchised property.  As a matter of law, these responsibilities fall solely on the franchisee, WHG SU Atlanta LP.

Accordingly, Plaintiff's claims, as pleaded, must fail under well-established franchisor-franchisee case law both in Georgia and around the country.  These laws plainly demonstrate that Choice, a franchisor, is not liable even construing the facts stated in the Amended Complaint in favor of Plaintiff.  Any holding to the contrary would represent a drastic change in Georgia law and contravene the overwhelming weight of consistent, nationwide authority on the issue.

## STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the plaintiff's statement of a claim for relief.  *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997).  Further, "Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (internal citations and quotations

4834-5827-8574

omitted); *see also Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*, 634 F.3d 1352, 1359 (11th Cir. 2011). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted).

Plaintiff's Amended Complaint fails to set forth a short and plain statement against Choice:

> … [N]otice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'

*Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).

## ARGUMENT

**A.    The Amended Complaint is an impermissible (and incomprehensible) shotgun pleading that should be struck or dismissed.**

Though Plaintiff expanded her Amended Complaint to include 799 paragraphs, only 10 mention Choice by name. It is impossible to determine which alleged actions related to Choice are purported to support which of Plaintiff's claims. Further, the Amended Complaint contains extensive descriptions of events that have no bearing on the Plaintiff or this case. This type of pleading creates an illusion that

6

Choice is responsible for every aspect of Plaintiff's allegations.  Notice pleading does not eliminate the requirement for Plaintiff to inform Choice which allegations pertain to it as opposed to against a franchisee, employees of a franchisee, or unnamed criminal(s) actors.  *See* Am. Compl. ¶¶ 28-32 and ¶¶ 383-407.

Separate and apart from the sufficiency of the allegations against Choice, the Amended Complaint should be dismissed outright as a "Shotgun Pleading."  District courts have the inherent authority to dismiss complaints on shotgun pleading grounds.  *Vibe Micro, Inc. v. Shabanets*, 2018 WL 268849, at *2 (11th Cir. Jan. 3, 2018)*; Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1321-23 (11th Cir. 2015); FED. R. CIV. P. 8(a)(2).  Just as in *Anderson v. Dist. Bd. of Trs. of Cent. Fl. Comm. Coll.*, the Amended Complaint is "a perfect example of 'shotgun' pleading in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  77 F.3d 364, 366 n. 12 (11th Cir. 1996) (internal citation omitted).

Plaintiff alleges numerous separate causes of action against Choice, yet repeats and incorporates the <u>same</u> non-contiguous 88 paragraphs plucked out of the 799 paragraphs of the Amended Complaint <u>for each of the counts</u>.[2]  Additionally, it

---

[2]  Plaintiff consistently directs this Court to Am. Compl. ¶¶ 1-6, 28-32, 70-106, 172-198, 327-332.

4834-5827-8574

is nearly impossible to determine what is alleged to have happened to this Plaintiff, or perhaps to the other Plaintiffs represented by counsel, or to other non-parties or at other hotel locations altogether.

Further, the salacious and impertinent details of the Amended Complaint should be struck pursuant to Fed. R. Civ. P. Rule 12(f).

> The Federal Rules of Civil Procedure provide that "the court may order stricken from any pleading ... any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters. …motion to strike will be granted only if the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.

*Blake v. Batmasian*, 318 F.R.D. 698, 700-01 (S.D. Fla. 2017); *also see Stephens v. Georgia Dep't of Transp.*, 134 F. App'x 320, 322–23 (11th Cir. 2005).

Additionally, "the Supreme Court established long ago that federal courts have the duty to keep their records clean and free from scandal." *Chattanooga-Hamilton Cty. v. Walker,* No. 4:14-CV-00016-HLM, 2014 WL 12495271, at *2 (N.D. Ga. Aug. 28, 2014). In *Walker*, the Court struck that portion of the defendant's counterclaim that contained facts irrelevant "to the issues at hand" and that would prejudice the opposing party. *Id*. at *3.

The Supreme Court of Georgia recently clarified the definition of "salacious" under Rule 8, stating "to prevail on [a] motion to strike, the movant must clearly

show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants." *Chappuis v. Ortho Sport & Spine Physicians Savannah, LLC*, 305 Ga. 401, 407–08 (2019) (quoting 2 Moore's Federal Practice § 12.37 [3]). This is particularly appropriate where the matter to be struck is not related to the facts in controversy and will confuse the issues, such as by including extensive general statements about a social problem, unrelated to the causes of action against Choice. *Blake v. Batmasian*, 318 F.R.D. 698, 700–01 (S.D. Fla. 2017). Accordingly, the Court should strike paragraphs 1, 5-7, 74-80, 83-90 as impertinent and salacious and meant merely to flame emotions. They contain dramatic allegations that have no bearing on the case, but that could serve to prejudice Choice and confuse the facts at issue.

**B.    Counts Seven to Nine:  Plaintiff's allegations of omission are insufficient to establish liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA").**

The failure to act is not a trigger of liability under any of Plaintiff's causes of action, including the TVPRA.[3]  Plaintiff alleges multiple causes of action against the generic moniker "Suburban Extended Stay Defendants" under the TVPRA, but fails

---

[3] Even "negative acquiescence" allegations of failure to train or disseminate information would are insufficient to create liability under TVPRA. *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016); *but see M.A. v. Wyndham Hotels & Resorts, Inc.,* No. 2:19-CV-849, 2019 WL 4929297, at *4 (S.D. Ohio Oct. 7, 2019)(applying willful blindness standard); *H.H. v. G6 Hospitality, LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *3 (S.D. Ohio Dec. 6, 2019).

4834-5827-8574

to allege specific actions or omissions by Choice sufficient to invoke application of the statute.   18 U.S.C. § 1595.   All three TVPRA counts simply reincorporate wholesale the same <u>88</u> prior paragraphs of the Amended Complaint, none of which establish a claim against Choice.

The TVPRA requires a Plaintiff to allege and prove that a Defendant "knowingly benefit[ed]" from "participation in a venture" as described in 18 U.S.C. § 1591(a)(1) and (2).   *See* 18 U.S.C.A. § 1595(a).   No such allegations of "participation" or "knowing benefits" have been made and mere receipt of ordinary payments, like those paid by a franchisee to a franchisor, do not create a vicarious, alter ego, or agency relationship:

> "[a] franchise contract under which one operates a type of business on a royalty basis does not create an agency or a partnership relationship. The franchise agreement at issue provided for payment on a royalty basis. Thus in order to impose liability on the franchisor for the [obligations] of the franchisee, it must be shown that: (a) the franchisor has by some act or conduct obligated itself to pay the debts of the franchisee; or (b) the franchisee is not a franchisee in fact but a mere agent or 'alter ego' of the franchisor."

*McGuire*, 209 Ga. App. at 742 (internal citation and punctuation omitted).

Under the TVPRA, "[a defendant's] participation giving rise to the benefit must be **<u>participation in a sex-trafficking venture</u>**, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture."   *Geiss v. Weinstein Company Holdings LLC, et. al*., 383

10

F.Supp. 3d 156, 169 (S.D.N.Y. 2019) (emphasis added).[4]  Plaintiff has not alleged any "overt act" by Choice which furthered sex trafficking and would amount to participation.  Similarly, Plaintiff's claim against Choice fails because she does not and cannot allege that Choice was "engaged in some aspect of the sex trafficking." *See id.*; *Afayre*, 632 F. App'x. at 286.  There is no link between Choice in its role as franchisor and the alleged harm suffered by Plaintiff under the Amended Complaint.

Further, to hold a hotel franchisor liable for criminal acts of a third party in Georgia, a plaintiff is required to show a legally attributable causal connection between the franchisor's conduct and her injury.  *Tomsic v. Marriott Int'l, Inc.,* 321 Ga. App. 374, 384 (2013).  The holding in *Tomsic* is consistent with the rulings thus far issued under the civil remedy section of the TVPRA.  Here, there are no factual allegations linking Choice's conduct and that of the perpetrator, much less a description of how Choice was a "participant in" or "cause of" the perpetrator's alleged sex trafficking venture.  "[T]here must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit,

---

[4]  The Southern District of New York also recently dismissed a claim brought pursuant to the TVPRA where against peripheral defendant, because plaintiffs failed to "allege any facts to show that [defendant] knowingly benefitted ... from *participation* in a venture *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018)*.*  A Plaintiff instead "must allege *specific conduct that furthered the sex trafficking venture.*" *Id.*  In other words, *some participation in the sex trafficking act itself must be shown.  Id.*

11

with actual, or in the civil context, constructive knowledge of that causal relationship." *Geiss*, 383 F.Supp. 3d at 169.  The dismissal of claims against a non-perpetrator was applied in *Geiss* despite the fact that the court found sufficient allegations to state a claim against the individual perpetrator-who was an employee of the dismissed defendants.  *Id.* at 168.

**C.**     **Plaintiff's Georgia claims are barred by the statute of limitations.**

O.C.G.A. §§ 9-3-33 and 16-14-8 clearly bar Plaintiff's claims for negligence and violation of the Georgia RICO statutes.  Plaintiff alleges that the trafficking began in 2012 and ceased in 2016.  These actions allegedly started a minimum of seven years ago and ceased more than three years ago. O.C.G.A. § 9-3-33 provides, "a cause of action in negligence accrues and the statute of limitation begins to run when there is a negligent act *coupled with a proximately resulting injury*."  *Wilks v. Overall Const. Inc.*, 296 Ga. App. 410, 413 (2009) (emphasis in original). Accordingly, Plaintiff, who undoubtedly alleges she was injured more than two years ago, cannot maintain a claim for negligence.

Further, pursuant O.C.G.A. § 16-14-8, Plaintiff's causes of action arising under the Georgia RICO statute are barred.

> [T]he five-year statute of limitation for RICO actions contained in OCGA § 16–14–8 began to run when the civil RICO cause of action accrues, which we [interpret] to mean when the plaintiff discovers, or

12

> reasonably should have discovered, that he has been injured and that
> his injury is part of a pattern.

*Cobb County v. Jones Group P.L.C.*, 218 Ga.App. 149, 154 (1995) (internal

quotations omitted).  Plaintiff knew or should have known that she was injured and

that her injury was a part of a pattern from the outset in 2012 as she alleges that the

other Plaintiffs were subject to the same treatment and that the pattern of actions was

ubiquitous. Since her knowledge of the alleged trafficking came to light more than

five years prior to her filing, her Georgia RICO claims are barred.

**D.    Counts 29-30: Plaintiff fails to state a claim pursuant to O.C.G.A. § 16-14-4(a) & (c).**

Plaintiff's allegations cannot support a claim pursuant to the Georgia RICO

Statue providing civil remedy for victims of racketeering.  *OCGA § 16–14–4.*[5]

Under Georgia law "[i]n order to establish such a civil RICO claim, [Plaintiff] is

required to show by a preponderance of the evidence that [Defendant] violated the

RICO statute, that she has suffered injury, **and that [Defendant's] violation of the**

**RICO statute was the proximate cause of the injury**."  *Cox v. Mayan Lagoon*

*Estates, Ltd*, 319 Ga. App. 101, 108–09 (2012) (emphasis added).  "A plaintiff

---

[5] Section 16–14–4(a) states "[i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." Additionally, Section 16-14-4(c) states "It shall be unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) or (b) of this Code section."

cannot allege merely that an act of racketeering occurred and that he lost money." *Id.*

Plaintiff's allegations against Choice, are based generically upon its relationship as franchisor, but the Amended Complaint itself is devoid of any specific facts as to Choice's alleged role in the predicate acts. Rather, Plaintiff provides only conclusory statements as to a generic group of Defendants. Am. Compl. ¶¶ 534-552. These claims must fail because Plaintiff pleads no facts particular to Choice, which could create an inference that Choice, as franchisor: (1) engaged in any of the predicate acts necessary to support this claim; (2) participated in a "pattern" of such racketeering activity; or (3) that any act of Choice was a proximate cause of injury. *See Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 519 n. 9 (11th Cir. 2000) (due to plaintiffs' failure to establish predicate acts, "their Georgia RICO cause of action fails as would any federal RICO cause of action").

**E.    Count 43:    Plaintiff's negligence allegations against Choice are insufficient as a matter of law.**

**1.    Georgia acknowledges and respects franchising as a permissible form of business and liability is not created through its' mere use.**

Plaintiff's legal strategy would effectively eliminate the long standing legal precedent Georgia has adopted with respect to the franchise business model.

Specifically, Georgia courts have recognized the special relationship created by a franchise agreement. For instance, courts have recognized

14

> the need for controls over the use of a trade name. [cit] Furthermore, a
> franchisor is faced with the problem of exercising sufficient control
> over a franchisee to protect the franchisor's national identity and
> professional reputation, while at the same time foregoing such a degree
> of control that would make it vicariously liable for the acts of the
> franchisee and its employees.

*Brooks v. Collis Foods, Inc.,* 365 F. Supp. 2d 1342, 1349–50 (N.D. Ga. 2005)

(internal citations omitted).  Plaintiff seeks to employ a faulty legal theory which

results in an unreasonable "damned if you do, damned if you don't," trap – that a

franchisor properly protecting its brand under the *Lanham Act* is per se controlling

the franchise and subjecting itself to the very liability from which it is protected:

> Thus, a franchisor is faced with the problem of exercising sufficient
> control over a franchisee to protect the franchisor's national identity and
> professional reputation, while at the same time foregoing such a degree
> of control that would make it vicariously liable for the acts of the
> franchisee and its employees.

*McGuire v. Radisson Hotels Int'l, Inc.,* 209 Ga. App. 740, 742 (1993) (internal

citation omitted) (refusing as a matter of law to hold franchisor liable for acts of

franchisee owner / operator).

This protection under Georgia law was recently reiterated when the Court of

Appeals explained "[a] franchisor's exercise of its right to protect and control its

trade name and good will does not equate to managing the daily operations of [a

franchisee's] business."  *New Star Realty, Inc. v. Jungang PRI USA, LLC,* 346 Ga.

App. 548, 556, (2018), *cert. denied* (Mar. 4, 2019) (internal citation omitted).

15

Further, "the fact that a franchisor establishes mandatory operating standards to ensure uniformity and quality among its franchises does not amount to day-to-day supervisory control over the franchisee." *Id.*

Similarly, in *Hyde v. Schlotzsky's, Inc.*, 254 Ga. App. 192, 192 (2002), the plaintiff argued that the franchisor was directly liable for failing to ensure that its franchisees complied with standards for cleanliness and sanitation. *Id.* The Court rejected the plaintiff's contention:

> [Franchisor] was evaluating the restaurant's compliance with its standards, and a franchisor's reserving the right to do this is not the equivalent of retaining day-to-day supervisory control of the franchisee's business operations as a matter of law. Schlotzsky's acted in its role as a franchisor, upholding its commitment to achieving a certain level of quality and uniformity with the [Franchisor's] system.

*Id.* at 193 (internal quotation marks and citations omitted).[6]

### 2.     Plaintiff has not made any allegations which would create liability for Choice, even if accepted as true.

Choice's receipt of funds alone is insufficient to create liability:

> A franchise contract under which one operates a type of business on a royalty basis does not create an agency or a partnership

---

[6] This same analysis was applied when the Fourth Circuit granted summary judgment in favor of Choice in a negligence action under its franchise agreement: "[T]he Rules and Regulations simply ensure uniformity at all Comfort Inn franchise locations." *Allen v. Choice Hotels Int'l, Inc.*, 276 F. App'x 339, 343 (4th Cir. 2008). The franchisor merely had "authority to insure 'the uniformity and standardization of products and services offered by [a franchisor's] restaurant. [Such] obligations do not affect the control of daily operations." *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 814 (Iowa 1994) (affirming summary judgment for the franchisor).

> relationship…Thus in order to impose liability on the franchisor for the [obligations] of the franchisee, it must be shown that: (a) the franchisor has by some act or conduct obligated itself to pay the debts of the franchisee; [cit.] or (b) the franchisee is not a franchisee in fact but a mere agent or 'alter ego' of the franchisor.

*McGuire,* 209 Ga. App. at 742.  Further, despite lumping in numerous "John Does" under the generic moniker of "Suburban Extended Stay Defendants," Plaintiff has not plausibly alleged — nor can she — that franchisee's employees were employed or controlled by Choice.

Georgia Courts have applied the *McGuire* analysis to the precise relationship at issue here under another Choice brand.  In *Anderson v. Turton Dev., Inc.*, the Court of Appeals of Georgia found that the Choice franchise agreement with a Comfort Inn operator imposed "various building, construction, and operational requirements," but those "requirements" only amounted to "achieving a certain level of quality and uniformity within its system" not control of the day-to-day operations.  225 Ga. App. at 275–76, (1997) (citing *McGuire*, 209 Ga. App. at 742).  Specifically, the court stated:

> The franchise agreement provides that no agency relationship exists between Choice and the franchisee and that nothing contained in the agreement would take away from the franchisee the right to exercise "ordinary business control" to the extent consistent with the specific terms of the agreement.  Therefore, it is immaterial that the agreement was subject to termination if the inn were operated in a manner which violated the rules and regulations.

17

*Anderson v. Turton Dev., Inc.,* 225 Ga. App. 270, 275–76 (1997). Plaintiffs allegations, even if accepted as true, do not amount to day-to-day control of operations. Plaintiff has not alleged any extraordinary or unique involvement in this case or as to this particular franchisee that might invoke a different analysis.

Plaintiff makes an allegation that Choice sent "inspectors" to the property at issue in its usual course, but even accepting Plaintiff's allegation as true for the purposes of this Motion, Plaintiff still fails to set forth when those "inspections" occurred or how that might create liability for Choice. Am. Compl. at ¶188. This argument has already been rejected under Georgia law:

> the fact that a franchise agreement authorizes periodic inspections of the franchise and gives the franchisor the right to terminate the agreement for noncompliance is not enough to prove an agency relationship.

*New Star Realty, Inc.,* 346 Ga. App. at 555.[7]

Plaintiff also makes allegations related to general customer complaints related to this property but fails to allege how generic complaints would impart any liability to Choice. Am. Compl. ¶¶ 190-191; Am. Compl. ¶¶193-195. This is especially true

---

[7]   Another District Court looking at the role of inspections in the franchise relationship came to the same conclusion. Choice Hotels visual inspections of the pool and spa area of a franchise twice a year did not establish that Choice Hotels had assumed a duty. *Braucher ex rel. Braucher v. Swagat Grp., L.L.C.*, 702 F. Supp. 2d 1032, 1044 (C.D. Ill. 2010).

because Plaintiff also affirmatively alleges that all such complaints were referred to the franchisee as owner / operator of the property.  Am. Compl. ¶¶193-195.  The mere existence of complaints or the fact that a franchisor maintains a mechanism by which customers are able to make complaints is insufficient to create liability for a franchisor.  *BP Expl. & Oil, Inc. v. Jones*, 252 Ga. App. 824, 830 (2001).  The mere existence of complaints fails to create liability even when a franchisor could have taken action to reduce the risk related to issues raised by those complaints.  *Id.*  This is even more true where, as here, Plaintiff has not shown that any of the alleged complaints pertained to Plaintiff specifically.  The bare bones allegations against Choice fail to create an issue of liability, as a matter of law, and should be dismissed.

      **3.**      **Plaintiff fails to allege a duty.**

Plaintiff generically asserts that the Suburban Extended Stay Defendants collectively owed a duty of ordinary care to the Plaintiff.  Plaintiff asserts that Defendants taken together "had supervisory control and authority over employees, contractors and others at Suburban Extended Stay (Chamblee)."  Am. Compl. ¶204.

To establish direct negligence, Plaintiff must establish that Choice, as the franchisor, owed Plaintiff a duty of care.  "The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care.  Whether a duty exists upon which liability can be based is a question of

law." *City of Alpharetta v. Hamby*, No. A19A0856, 2019 WL 5538086, at *2 (Ga. Ct. App. Oct. 25, 2019). [8] "In the absence of a legally cognizable duty, there can be no fault or negligence." *Sheaffer v. Marriott Int'l, Inc.,* 349 Ga. App. 338, 340 (2019) (holding, as a matter of law, that Marriott had no duty to rescue a guest in distress where the hotel had not caused his medical emergency). Under Plaintiff's legal theory, however, franchisors would be liable in every case – irrespective of their alleged control. This is not now and has never been the law in Georgia.

Under similar law in a recent, highly publicized case, Marriott International, Inc. ("Marriott International"), was dismissed from an action brought by a former ESPN reporter, Erin Andrews, arising from an incident that could allegedly have been prevented by additional security measures. *See Andrews v. Marriott Int'l, Inc., et al.*, Case No. 11C048311 (Tenn. Cir. Ct., Davidson Co). The Court in that case found that Marriott International, as a mere franchisor, "did not control the hotel" because it "was not responsible for the lack of cameras, or with the alleged lack of

---

[8] Several courts "have found that retaining certain rights such as the right to enforce standards, the right to terminate the agreement for failure to meet standards, the right to inspect the premises, the right to require that franchisees undergo certain training, or the mere making of suggestions and recommendations does not amount to sufficient control." *Hunter v. Ramada Worldwide, Inc.*, 2005 WL 1490053, *6 (E.D. Mo. June 23, 2005); Plaintiffs alleging that they became ill with Legionnaires disease following a stay at a Choice franchise could not recover against Choice because "Choice Hotels never voluntarily took on the task of maintaining the water to avoid the risk of infection." *Braucher ex rel. Braucher v. Swagat Grp., L.L.C.*, 702 F. Supp. 2d 1032, 1044 (C.D. Ill. 2010).

supervision on the tenth floor (a secured floor), or the other alleged deficiencies at the Nashville Marriott hotel claimed by the Plaintiff." *Id.* Rather, "[t]he security concerns at the Nashville Marriott Hotel raised by the Plaintiff were the responsibility of [the franchisee defendants]." *Id.*

Here, there are no allegations that Choice exercised sufficient control over the franchisee or the daily operations of the hotel to establish a duty to Plaintiff. As such, Plaintiff cannot establish that Choice owed any duty to her, and her claims fail as a matter of law.

**F.    Plaintiff's request for joint and several liability and punitive damages is improper.**

The TVPRA provides no basis for joint and several liability. *See* 18 U.S.C. § 1595. Plaintiff has not alleged that Choice acted together in concert with anyone or any named Defendants or planned to inflict damage on the Plaintiff, because she cannot. *Pease & Elliman Realty Tr. v. Gaines*, 160 Ga. App. 125, 131 (1981). Plaintiff seeks joint and several liability with franchisors and franchisees wholly unrelated to Choice. Plaintiff's attempt to hold each of these entities liable for the alleged actions or inactions of the others at other hotels is improper.

The conclusory statements of Plaintiff are not sufficient to hold Choice liable for any enumerated claims in Plaintiff's Amended Complaint, and certainly cannot support a punitive damages or a claim for specific intent to cause harm warranting

unlimited damages as sought by Plaintiff.  Nor can such statements support joint and several liability in this case.

WHEREFORE Defendants respectfully request that this Court dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted or in the alternative dismiss or strike due to the impermissible "Shotgun Pleading" and/or inclusion of impertinent and salacious matters and for such other relief as this Court may deem just and proper.

Dated this the 12th day of December 2019.

*[signature on following page]*

22

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

 /s/ *Janelle E. Alleyne*
JANELLE E. ALLEYNE
Georgia State Bar No. 716480
3414 Peachtree Road, NE
Atlanta, Georgia 30326
(404) 577-6000 Telephone
(404) 221-6504 Facsimile
jalleyne@bakerdonelson.com

/s/ *Sara M. Turner*
SARA M. TURNER
*Admitted Pro Hac Vice*
CHRISTIE LYMAN DOWLING
Georgia Bar No. 228180
1400 Wells Fargo Tower
420 20th Street North
Birmingham, Alabama 35203-5202
(205)          328-0480          Telephone
(205) 322-8007 Facsimile
cdowling@bakerdonelson.com
smturner@bakerdonelson.com
***Attorneys for Defendant, Choice Hotels
International, Inc.***

4834-5827-8574

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 5.1B</u>

This is to certify that this Pleading was created in Times New Roman 14-point font as approved by LR 5.1.

Dated: December 12, 2019

/s/ *Sara M. Turner*
SARA M. TURNER
*Admitted Pro Hac Vice*

24

4834-5827-8574

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 12th  day of December 2019, the foregoing DEFENDANT CHOICE HOTELS INTERNATIONAL, INC'S Motion to Dismiss Plaintiff's Amended Complaint or in the Alternative to Strike was filed with the Clerk of the Court using the CM/ECF system which will automatically send an e-mail notification of such filing to all counsel of record.

/s/ *Sara M. Turner*
SARA M. TURNER
*Admitted Pro Hac Vice*

4834-5827-8574