## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JANE DOE 1 <br><br> Plaintiff, <br><br> v. <br><br> RED ROOF INNS, INC., et al. <br> Defendants. | Civil Action No. <br> 1:19-cv-03840 <br><br><br> JURY TRIAL DEMANDED, <br> Pursuant to Fed. R. Civ. P. 38 |

### PLAINTIFF'S RESPONSE TO DEFENDANT CHOICE HOTELS INTERNATIONAL, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE

Defendant Choice Hotels International, Inc. ("Choice") is in the hotel business.  At the Suburban Extended Stay ("SES") in Chamblee, Georgia, guests were welcomed with comfortable bedding and convenient amenities.  Plaintiff Jane Doe 1 enjoyed none of these when, in over 20 separate occasions, from 2011 to 2016 she was trafficked out of the SES—sold to as many as 20 buyers a day for commercial sex.  Choice did more than look the other way, it facilitated her trafficking, and profited from the rental of every room every time she stayed, sometimes for more than two weeks at a time.  Plaintiff seeks to recover for the injuries caused by Choice under the Trafficking Victims Protection Reauthorization Act, Georgia RICO, and negligence.

## STATEMENT OF FACTS

Choice profited from a sex trafficking venture operating out of the SES. Plaintiff is one survivor of that sex trafficking venture. Am. Compl. [Doc. 87] ¶¶ 2, 8–9. SES employees accepted payments from Plaintiff's traffickers to work as lookouts. *Id.* ¶ 178. Two employees were in regular communication with Plaintiff's trafficker, to discuss their pay-offs, *id.* ¶ 180, to offer rooms in the "usual spot," and to warn the traffickers if police were present. *Id.* ¶¶ 181–82. A third employee also worked for Plaintiff's traffickers. *Id.* ¶ 183. When Jane Doe 2 asked this employee for help to escape, he notified her trafficker. *Id.* ¶¶ 183–84. As a result, Jane Doe 2's trafficker ruthlessly beat her. *Id.* ¶ 184. SES employees ignored the trash cans filled with condoms, the frequent requests for towels, and the absence of personal items in Plaintiff's possession—all well-established and readily observable evidence of sex trafficking. *Id.* ¶¶ 185–86.

The SES sex trafficking venture extended to management, owners, the franchisor, and others. *Id.* ¶ 172. Choice, among other things, managed, oversaw, and controlled the operations of the SES. *Id.* ¶ 28. Choice implemented rules and regulations for the hotel's operations, including the handling of internal complaints that made Choice aware of sex trafficking at the SES. *Id.* ¶¶ 192–95. Choice managers and inspectors sent to examine the hotel were aware of the open and obvious signs of Plaintiff's sex trafficking at the SES

including Plaintiff's and other victims' physical condition, the number of daily buyers, and the state of the rooms in which the trafficking occurred. *Id.* ¶¶ 185–88. The signs of sex trafficking were so obvious, other guests routinely posted graphic public reviews reporting widespread crime and prostitution at the hotel, of which Choice was aware. *Id.* ¶¶ 190–91. Numerous deaths and prostitution arrests occurred at the hotel, which also alerted Choice to the type of crimes on the property. *Id.* ¶¶ 196–97.

In 2010, Choice knew it had a problem with sex trafficking in its hotels and faced public pressure to take action to address this problem. *Id.* ¶ 98. Despite this knowledge, *id.* ¶ 175, Choice failed to adequately train its employees, maintain a safe premises, or protect its invitees. *Id.* ¶ 731. All the while, Choice profited from the sex trafficking venture at the SES by receiving revenue generated from the rental of rooms in which Plaintiff and other victims were trafficked. *Id.* ¶ 173.

## LEGAL STANDARD

On a motion to dismiss, this Court must take the "factual allegations in the complaint as true and construe them in the light most favorable to" the plaintiff. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). That is, the Court must construe the Amended Complaint "broadly," such that it need only include "enough factual matter to . . . suggest the required element[s]" for a

claim. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 556 (2007)). Plaintiff's claims may only be dismissed if "the facts as pled do not state a claim for relief that is plausible on its face." *Edwards*, 602 F.3d at 1291 (citations omitted).

<u>ARGUMENT AND CITATION OF AUTHORITY</u>

**I.   The Amended Complaint is not a Shotgun Pleading.**

A complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Neither detailed factual allegations nor "technical forms of pleading . . . are required." *Crowe v. Coleman,* 113 F.3d 1536, 1539 (11th Cir. 1997).

Choice argues that by grouping it with other named defendants, the Complaint fails to specify which Defendants "allegedly took which specific actions set forth in the Amended Complaint." Mot. to Dismiss [Doc. 133] at 3. *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.,* 917 F.3d 1249, 1274 (11th Cir. 2019) ("the gist of the problem with group pleading . . . is the failure to give fair notice to each named defendant of the claims against it.").

Choice's motion fails, however, because "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." *Crowe,* 113 F.3d at 1539; *Kyle K. v. Chapman*, 208 F.3d 940, 944

(11th Cir. 2000)(Where complaint accuses defendants collectively, "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.").[1]  That is what Plaintiff has done here with the allegations against the "Suburban Extended Stay Defendants," which is specifically defined to include Choice.  Am. Compl. ¶ 28; *see Quality Auto Painting,* 917 F.3d at 1274 (reversing a district court's 12(b)(6) dismissal of claims based on a purported violation of the group pleading doctrine where "defendants" was specifically defined).  Choice's argument is contrary to binding law of the Eleventh Circuit and any dismissal based on group pleading would be erroneous.[2]

Choice also requests that the Court strike paragraphs 1, 5–7, 74–80, and

---

[1] *See also Crespo v. Coldwell Banker Mortg.,* 599 F. App'x 868, 872 (11th Cir. 2014) (applying post-*Iqbal*); *FTC v. Hornbeam Special Situations, LLC,* 308 F. Supp. 3d 1280, 1288 (N.D. Ga. 2018) (rejecting argument that group pleading rule did not apply following *Iqbal*).

[2] To the extent Choice's motion criticizes the Amended Complaint generally as a "shotgun pleading," that argument should also be rejected.  Although Choice does not attempt to explain why it contends the Amended Complaint is a shotgun pleading, as Choice's motion acknowledges, only the specific paragraphs applicable to Choice, are incorporated into the claims against it.  Mot. to Dismiss at 7 n.2. (identifying paragraphs 1–6, 28-32, 70–106, 172–98, 327–32).

In fact, the paragraphs identified in Choice's motion specifically direct Choice to the facts alleged against it.  *See* Am. Compl. ¶¶ 28–32 (defining defendants and giving jurisdictional facts); 70-106 (explaining the nature and harm of sex trafficking and specifically how hotels, including Choice, benefit from it); 172–98 (specific factual support describing how Choice participated in and financially benefited from Plaintiff's trafficking at the SES). Choice does not describe how, in more specific terms, the Amended Complaint is a shotgun pleading and the Court should deny Choice's motion on those grounds.

1830198.6

83–90 as "impertinent and salacious."  Motion to Dismiss at 9.  Motions to strike are "disfavor[ed] and are often considered time wasters."  *TracFone Wireless, Inc. v. Zip Wireless Prods., Inc.*, 716 F. Supp. 2d 1275, 1290 (N.D. Ga. 2010) (citation and internal punctuation omitted).  A motion to strike "is a drastic remedy" that should only be resorted to "when the pleading to be stricken has no possible relation to the controversy."  *Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.,* 306 F.2d 862, 868 (5th Cir. 1962).  Choice seeks to strike paragraphs that describe human sex trafficking in Atlanta and the role the hotel defendants play in facilitating and profiting from that venture.  These facts are directly relevant to Plaintiff's claims and there is no basis for this Court to strike those paragraphs.

## II.    Plaintiff has Alleged Choice's Liability under the TVPRA.

Plaintiff asserts claims against Choice under the civil remedy provision of the TVPRA.  18 U.S.C. § 1595.  Section 1595 provides damages and attorneys' fees for a victim of a violation of 18 U.S.C. § 1591 against (1) the perpetrator, or (2) "whoever knowingly benefits, financially or by receiving anything of value from participating in a venture which that person knew or should have known has engaged in a violation of [§ 1591]."

The plain language of the TVPRA refutes Choice's motion entirely.  Although the TVPRA presents issues of first impression in the Eleventh Circuit,

its text is plain and unambiguous and the Court's inquiry should cease there. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  Further, Choice's arguments against hotel liability for claims under the TVPRA have been rejected in every federal case in which they were argued.[3]

Plaintiff asserts three claims against Choice under § 1595 of the TVPRA: a perpetrator claim alleging a violation of § 1591(a)(1) (Count 7); a perpetrator financial beneficiary claim alleging a violation of § 1591(a)(2) (Count 8); and a negligent financial beneficiary claim under § 1595(a) (Count 9).  Though each of these claims have distinct elements, Choice attacks four elements it implies are at issue under "the TVPRA" generally.

### A.   Plaintiff has Properly Alleged Acts and Omissions

As to Choice, the elements of a § 1591(a)(1) violation are: (1) harboring (knowingly providing a place for), or maintaining (keeping in existence, "by any means") a person (2) "knowing, … or in reckless disregard of the fact" that that

---

[3] Choice's motion implies there is a body of binding case law requiring dismissal under the TVPRA. There is not. There are few cases on point, none of which are binding on this Court, and all of which were decided adversely to Choice's arguments. *See Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017); *Ricchio v. Bijal, Inc.*, 386 F. Supp. 3d 126 (D. Mass. 2019); *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019); *H.H, Plaintiff v. G6 Hospitality, LLC,* No. 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019).

1830198.6

person is a victim of sex trafficking.[4]  18 U.S.C. § 1591(a).  Knowingly harboring under the TVPRA has been found to consist of "continuing to rent [the trafficker] the room after [the trafficker's] conduct was manifest."  *Ricchio v. McLean*, 853 F.3d at 557.  Plaintiff has so alleged.

Maintaining—to keep in existence "by any means"—is a very broad statutory prohibition that by its plain meaning encompasses acts *and* omissions that allow a person's sex trafficking to remain in existence after an entity knows of the sex trafficking.  Every TVPRA hotel sex trafficking case thus far has either cited omissions or explicitly found omissions to be actionable under the TVPRA.  *See id*. at 555 (citing hotel owner indifference and ignoring plea for help); *M.A.*, 2019 WL 4929297, at *6 ("Defendants were on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence."); *H.H*, 2019 WL 6682152, at *3 (same); *see also Bistline v. Parker*, 918 F.3d 849, 875 (10th Cir. 2019) (citing acceptance of funds with "awareness and acquiescence" of their origin in trafficking).

Though omissions are actionable under the TVPRA, Plaintiff has also

---

[4] To "harbor" is to "provide a place, home, or habitat for." HARBOR, The American Heritage Dictionary of the English Language (5th ed. 2016). To "maintain" is to "keep in existence." *Id.* at MAINTAIN.

1830198.6

alleged that Choice, *inter alia*, supervised, oversaw, and controlled the
operations of the SES and was actively involved in its franchisee locations
regarding sex trafficking measures.  Am. Compl. ¶¶  28, 98, 188, 194, 385–407.
Choice's acts and omissions are actionable under the TVPRA.

### B.    Choice Knowingly Benefitted from the Sex Trafficking of Plaintiff.

The "knowing benefit" element only applies to Counts Eight and Nine.
Every court that has ruled on a TVPRA sex trafficking claim against a hotel has
concluded the "knowing benefit" element is satisfied by the rental of a room,
including as to Choice in *M.A.  Ricchio v. McLean*, 853 F.3d at 556 (knowing
benefit satisfied by room rental); *M.A.*, 2019 WL 4929297, at *3 (same); *H.H*,
2019 WL 6682152, at *2 (same).  Plaintiff has alleged Choice knew of the sex
trafficking venture at the SES and that it received a percentage of the money for
the rental of rooms in which Plaintiff's trafficking occurred—allegations
sufficient to allege Choice knowingly benefited from this venture.  Am. Compl. ¶
173.

### C.    Choice's "Participation in a Venture" Caused Plaintiff's Injuries.

Plaintiff has adequately alleged that Choice knowingly harbored and
maintained Plaintiff's sex trafficking under § 1591(a)(1). *Supra* at 7–9. Those
allegations alone—providing a venue to Plaintiff's sex trafficker in exchange for

1830198.6

a percentage of the room fee—are sufficient to allege participation in a venture, because a much lower standard applies to the two financial beneficiary claims under §1591(a)(2) and § 1595(a).

Sex trafficking cannot occur without a place for sex.  Choice's hotel rooms are essential to the sex trafficking venture because they provide the venue, the crime scene, without which sex trafficking cannot occur.  The business of the SES is harboring, including knowingly providing a place for sex trafficking.  At minimum, Choice assisted, supported, and facilitated the provision of rooms for sex trafficking at the SES in exchange for a percentage of the money from the rooms used for sex trafficking.  Am. Compl. ¶¶ 28, 98, 173–74, 188, 190, 192, 194–95, 385–407.

Choice has tried and lost this argument before.  *M.A.*, 2019 WL 4929297, at *9 (S.D. Ohio Oct. 7, 2019) (denying Choice's motion to dismiss and finding "Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendants rented rooms to people it knew or should have known were engaged in sex trafficking"); *see also H.H*, 2019 WL 6682152, at *5 (same).

Unlike the defendants in *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016), or the Harvey Weinstein cases, Choice is not in business with the other Suburban Extended Stay Defendants to make movies or play soccer.  They are

in business to directly profit from the rental of hotel rooms, including the rental of hotel rooms for sex trafficking.  Choice, *inter alia*, managed, supervised, operated, oversaw, and controlled the operations of the SES in exchange for a portion of the sex trafficker's money.  Am. Compl. ¶¶ 28, 98, 173–74, 188, 190, 192, 194–95, 385–407.  Plaintiff has properly asserted claims under § 1595 for Choice's knowing violation and negligent violation of § 1591(a)(2).[5]

Finally, Georgia case law cited by Choice on franchisor/franchisee liability or the meaning of "participation" or "knowing benefits" in the TVPRA in no way affects Plaintiff's ability to state a claim under the TVPRA, which is a federal statute governed by federal common law and the common law of agency. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992) (adopting common-law test to define terms under federal statute and citing the Restatement (Second) of Agency); *see also Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1492 (11th Cir. 1993) (applying *Darden*).

---

[5] Choice's causation argument is without merit for the same reasons. Choice participated by operating and controlling the venue for Plaintiff's sex trafficking and providing that venue to Plaintiff's sex trafficker, without which Plaintiff's sex trafficking could not occur. Choice's knowing provision of the crime scene in exchange for a percentage of the profits from Plaintiff's sex trafficking caused Plaintiff's injuries.  Am. Compl. ¶¶ 388, 397, 405.

1830198.6

## III.   The Amended Complaint States Claims Under Georgia RICO.

### A.   Plaintiff's Georgia RICO Claims are not Barred by the Statute of Limitations.

Plaintiff's RICO claims are not barred by the governing statute of limitations.  O.C.G.A. § 16-14-8.  A statute of limitations bar is an affirmative defense which plaintiff was not required to negate in her complaint.  *La Grasta v. First Union Secs., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004).  Consequently, a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.  *Id.* Because the face of the complaint does not establish that the RICO claims are time-barred, dismissal on limitations grounds is inappropriate.

Dismissal is also inappropriate because Choice incorrectly measures the limitations period.  Unlike its federal counterpart, Georgia's RICO Act contains a statutory limitations provision, O.C.G.A. § 16-14-8.  That provision, which governs both criminal and civil cases, remained the same from the statute's enactment in 1980 until 2015, when the General Assembly amended the first sentence of § 16-14-8 as follows:

> Notwithstanding any other provision of law setting forth a statute of limitations, a criminal proceeding or civil action brought pursuant to Code Section 16-14-6 shall be commenced up until five years after the conduct in violation of a provision of this chapter terminates ~~or the cause of action accrues~~.

2015 Ga. Laws 693.  Prior to 2015, the limitations period for civil RICO cases began to run when a plaintiff discovered, or reasonably should have discovered, that she had been injured and that her injury was part of a pattern.  *Blalock v. Anneewakee, Inc.,* 426 S.E.2d 165, 167 (Ga. Ct. App. 1992).  In criminal cases, however, the limitations period commenced running upon the termination of the violation.[6]

The 2015 Amendment eliminated the different applications of § 16-14-8 in criminal and civil cases by striking the words "or the cause of action accrues," leaving the words "after the conduct in violation of a provision of this chapter terminates" as the sole point of measurement for both kinds of cases.[7]  Thus, the limitations period is now measured solely by reference to the defendant's conduct, not the plaintiff's injury.[8]

---

[6] *Harper v. State*, 738 S.E. 2d 584, 587 (Ga. 2013) ("Generally, prosecutions for RICO violations must begin within five years of the termination of any violation, O.C.G.A. § 16-14-8 . . . ."); *Jannuzzo v. State*, 746 S.E. 2d 238, 242 (Ga. Ct. App. 2013)(five-year statute of limitations "runs from the last overt act during the existence of the conspiracy.") (citation omitted).

[7] This uniformity between criminal and civil cases is consistent with RICO's role as a private attorney general statute.  *See Williams General Corp. v. Stone*, 614 S.E. 2d 758, 760 (Ga. 2005) (recognizing RICO's "goal of compensating victims and providing incentive for 'private attorney generals' to initiate actions against those in violation of the Act.").

[8] While a plaintiff in a civil action under RICO must still establish standing under O.C.G.A § 16-14-6(c)—that she has been "injured by reason of any

The 2015 amendment did not revive RICO claims that became time-barred before the amendment became effective, i.e., claims that had accrued prior to July 1, 2010.  *Glock, Inc. v. Harper*, 796 S.E. 2d 304, 306 (Ga. Ct. App. 2017).  But because plaintiff's RICO claims are based on injuries that occurred after July 1, 2010, they are not governed by *Glock*.  Am. Compl. ¶ 176 (plaintiff was trafficked at the SES from 2011–2016).  Instead, the amended version of § 16-14-8 applies, because the time for Plaintiff to bring her RICO claims had not expired at the time the new version was enacted (2015) and her complaint was filed after that enactment (2019).  Because a new statute of limitation was in effect at the time the action was filed, application of that new statute is not retroactive.[9]  This means that claims based on conduct occurring after July 1, 2010 became subject to the limitations period set forth by amended § 16-14-8, and do not become time-barred until five years after the conduct in violation of RICO terminates.

Plaintiff alleges both substantive and conspiracy violations of RICO.  Am.

---

violation of Code Section 16-14-4"—that is a separate inquiry from the limitations period.

[9] *See, e.g., Huggins v. Powell*, 726 S.E. 2d 730, 733–34 (Ga. Ct. App. 2012) (where the new statute of limitations is in effect at the time the action was filed, there is no question of retroactivity); *Beneke v. Parker*, 667 S.E. 2d 97, 102 (Ga. Ct. App. 2008) (same); *Atlanta Country Club v. Smith*, 458 S.E. 2d 136, 137 (Ga. Ct. App. 1995) (suit filed after effective date of amendment does not involve retroactive application of statute of limitation).

Compl. ¶¶ 594–610.  In a substantive RICO case, the limitations period runs from the time the conduct in violation of the statute terminates, i.e., last act of racketeering activity in the pattern of racketeering activity.  O.C.G.A. § 16-14-8.  That act does not have to involve the plaintiff, because the definition of pattern encompasses acts committed against *similar* victims, i.e., other victims of trafficking.  O.C.G.A § 16-14-3(4).[10]

Similarly, in a RICO conspiracy case, the limitations period runs from the last overt act during the existence of the conspiracy.  *State v. Conzo*, 666 S.E. 2d 404, 406 (Ga. 2008).  Because a conspirator is responsible for all acts committed in furtherance of the criminal endeavor, *Pasha v. State,* 616 S.E. 2d 135, 138 (Ga. Ct. App. 2005),[11] there is no requirement that each conspirator personally commit an overt act.  Instead, the limitations period is measured from the last overt act committed by *any* conspirator or party to the crime.  *Whaley v. State,* 808 S.E. 2d 88, 93 (Ga. Ct. App. 2017).[12]

---

[10] The Amended Complaint references the trafficking of multiple victims at the SES.  Am. Compl. ¶¶ 172, 177, 185, 187.

[11] *See also, Akintoye v. State,* 798 S.E. 2d 720, 724 (Ga. Ct. App. 2017)("[i]t is well settled that when individuals associate themselves in an unlawful enterprise, any act done in pursuance of the conspiracy by any one or more of the conspirators is in legal contemplation the act of all.").

[12] *Harper*, 738 S.E. 2d at 590 (RICO count was timely where there was evidence showing that one or more of the alleged conspirators committed acts of racketeering activity within five years of the indictment).

1830198.6

Plaintiff alleges that Choice's conduct in violation of O.C.G.A. § 16-14-4 has not terminated, Am. Compl. ¶ 600, and that the conduct in violation of RICO in which Choice participated continued to within five years of the filing of this action. *Id.* ¶ 606. Because it is not apparent from the face of the complaint that plaintiff's RICO claims are time-barred, the motions must be denied.

## B.   Choice's Proximate Cause Argument Fails.

Choice contends that Plaintiff has failed to properly allege proximate cause. But these arguments really challenge the allegations of predicate acts, asserting Plaintiff fails to allege predicate acts directly committed by Choice. In so doing, Choice ignores the elements of the predicate acts themselves and of RICO generally. As noted above, Plaintiff alleges that Choice violated O.C.G.A § 16-14-4(a) and also § 16-14-6(c), by conspiring to violate subsection (a).[13] A person violates O.C.G.A § 16-14-4(a) when they obtain money, directly or indirectly, through a pattern of racketeering activity. Evidence of two related predicate acts is sufficient to constitute a pattern. *Dorsey v. State,* 615 S.E. 2d 512, 518-19 (Ga. 2005).

---

[13] Liability for a substantive RICO violation can arise directly or as a party to a crime. *Whaley,* 808 S.E. 2d at 92 (affirming RICO conviction where defendant was found guilty both individually and as a party to a crime); O.C.G.A. § 16-2-21 ("Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto . . .")

1830198.6

Acts of racketeering activity are related if they are in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated. *Cotman v. State,* 804 S.E. 2d 672, 684 (Ga. Ct. App. 2017). Financial gain is sufficient to link acts of racketeering activity into a pattern. *State v. Overton,* 671 S.E. 2d 507, 517–18 (Ga. Ct. App. 2008).

If the predicate acts are related to each other, a violation of O.C.G.A. § 16-14-4(a) occurs if one or more of the acts which form the pattern results in the defendant acquiring or maintaining control over property, in this case money. *Dorsey*, 615 S.E.2d at 519. A person engages in a RICO conspiracy "if they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." *Cotman,* 804 S.E. 2d at 684.

Choice ignores the fact that, as members of conspiracies to violate RICO, they are responsible for all acts committed in furtherance of the criminal endeavor.[14] There is no requirement that Choice commit a predicate act, only that an overt act be committed by a member of the conspiracy of which it was a part. *Pasha*, 616 S.E. 2d at 138. ("Thus, *Pasha's* argument is unavailing, since

---

[14] *Akintoye,* 798 S.E.2d at 724; *Pasha*, 616 S.E. 2d at 138.

there is no requirement in a conspiracy case that the State prove that Pasha personally committed the underlying predicate offenses.").

Here, it is clear that Plaintiff has alleged acts of racketeering activity from which Choice is not insulated.  For example, a person commits the offense of trafficking an individual for sexual servitude when they knowingly benefit financially or by receiving anything of value from the sexual servitude of another.  O.C.G.A § 16-5-46(c)(3).  Plaintiff alleges that Choice benefitted financially from her sexual servitude.  Am. Compl. ¶ 597.

A corporation has liability if its agent knew or should have known that the illegal activity was occurring.  O.C.G.A § 16-5-46(j).  Plaintiff alleges that Choice knew or should have known of the illegal activity.  Am. Compl. ¶¶ 188–97.  Plaintiff alleges that she was trafficked during more than 20 separate stays at the SES, some stays lasting more than 2 weeks.  *Id.* ¶ 176.  Plaintiff further alleges that the sex trafficking venture located at that SES comprised traffickers, the hotel's employees, management, owners and its franchisor.  Plaintiff also alleges that the Suburban Extended Stay Defendants which include Choice, received revenue generated by the rental of rooms in which Plaintiff and other victims were trafficked.  *Id.* ¶ 173.

Similarly to O.C.G.A. § 16-5-46, 18 U.S.C. § 1591 creates liability for anyone who financially benefits from participation in a venture which, *inter alia*,

harbors, provides, or maintains persons who are coerced into engaging in commercial sex acts.  18 U.S.C. § 1591(a).  Liability may be based upon actual knowledge or reckless disregard.  *Id.*  Plaintiff's allegations regarding violations of O.C.G.A. § 16-5-46 and 18 U.S.C. § 1591 are sufficient to allege that Choice engaged in acts of racketeering activity that injured Plaintiff.  In sum, Plaintiff has alleged predicate acts and RICO violations for which Choice can be found liable based on facts that could be proven consistent with those allegations.

## IV.   Plaintiff Has Properly Alleged a Negligence Claim against Choice.

### A.   Plaintiff's Negligence Claim is Timely.

Plaintiff was trafficked at the SES on around 20 separate occasions from 2011 to 2016.  Am. Compl. ¶ 176.  Choice asserts that because the statute of limitation for a negligence claim is two years (O.C.G.A. § 9-3-33), Plaintiff's negligence claim is barred.  However, Choice fails to recognize that Plaintiff's claim was tolled by O.C.G.A. § 9-3-99[15] for up to six years because it arises out of crimes committed against her.  As a result, she has up to eight years to timely

---

[15] O.C.G.A. § 9-3-99 provides that:

> The running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years.

assert her negligence claim.

The Court of Appeals of Georgia examined the scope of O.C.G.A. § 9-3-99 tolling in *Harrison v. McAfee*, 788 S.E. 2d 872, 873 (Ga. Ct. App. 2016).  In that case, an unknown perpetrator shot the plaintiff in the arm while he was at the defendant's bar.  *Id.*  More than two years later the plaintiff filed a premises liability lawsuit against the bar.  *Id.*  The *Harrison* court held the plaintiff's claim was timely because he was a victim of an alleged crime and his lawsuit asserted a tort claim arising out of the facts and circumstances related to the commission of that crime.  *Id.* at 876, 878–79.  The court held that § 9-3-99 tolled the limitation period even though the defendant was not the perpetrator of the crime, *id.* at 876, and even though there was no prosecution of the crime.  *See id.* at 873 (unknown perpetrator had "yet to be arrested or prosecuted").

Because Plaintiff is the "victim of [] alleged crime[s]," O.C.G.A. § 9-3-99, and her cause of action "arises out of the facts and circumstances relating to the commission of such alleged crime[s]," *id.*, the limitation period for her negligence claim was tolled for six years because no prosecution of those crimes has yet become final.  *Id.*  Therefore, her negligence claim is time barred only to the extent it relates to crimes occurring more than eight years prior to filing this action.  Her negligence claim arising out of crimes committed at the SES from 2012 to 2016, as well as some crimes committed in 2011, are timely.

1830198.6

20

**B.    Choice Owed a Duty of Care to Protect Plaintiff against an Unreasonable Risk of Harm.**

Choice managed, supervised, oversaw, and/or controlled the operation of the SES, and "controlled the policies and standards applicable to and enforced (or not enforced)" at that hotel.[16]  Am. Compl. ¶¶ 28, 723, 174.  Choice had supervisory control and authority over the hotel, its employees, and contractors. *Id.* ¶¶ 724–25.  Because Choice had control over the premises, it had a duty to exercise ordinary care to keep the premises and approaches safe.  O.C.G.A. § 51-3-1; *see Stelly v. WSE Prop. Mgmt., LLC*, 829 S.E.2d 871, 875 (Ga. Ct. App. 2019) (trial court erred by concluding defendant owed no duty to plaintiff because issue of fact remained as to whether defendant exercised sufficient control over premises).

Plaintiff has also alleged that Choice breached its duty to properly train employees at the SES to observe and report potential threats to the safety of invitees.  Am. Compl. ¶ 731.  Because Plaintiff alleged that Choice controlled the manner in which its franchisee executed its work, Choice "can be held liable for the negligent training and supervision of franchisee employees."  *New Star*

---

[16] Choice incorrectly contends that Plaintiff alleged that Westmont, not Choice, maintained exclusive control over the SES.  Mot. to Dismiss at 4 (citing Am. Compl. ¶ 31).  All paragraph 31 alleges is that Westmont exerts complete control over two separate entities, one of which is the title holder of the SES, not that it or either entity exercises complete control over the SES.

*Realty, Inc. v. Jungang PRI USA, LLC*, 816 S.E.2d 501, 513 (Ga. Ct. App. 2018) (citing *Hyde v. Scholtzsky's, Inc.*, 561 S.E.2d 876 (Ga. Ct. App. 2002)).

Choice asks this Court to ignore Plaintiff's allegations, and to instead adopt Choice's unsupported factual assertion that "Choice makes no decisions and has no input on, much less control over . . . whether lawful or unlawful activity occurs in guest rooms,"  Mot. to Dismiss at 5, and rule that as a matter of law Plaintiff cannot present evidence establishing that Choice owed her a duty.  Yet Choice fails to cite a single case that would support such a holding. Rather, every decision on which it relies involves a court finding the ***evidence*** failed to establish the existence of a duty.[17]  What the evidence in this case will establish cannot be assessed on a motion to dismiss.

## C.    Choice is not Immunized from Liability Simply by Virtue of Being a Franchisor.

Choice asks this Court to adopt a new legal doctrine of franchisor immunity by which all franchisors are immunized from the conduct of their franchisees despite allegations the franchisor controlled the conduct of the franchisee, and before discovery reveals facts of franchisor control.  This is not

---

[17] *See Sheaffer v. Marriott Int'l, Inc.*, 826 S.E.2d 185, 188 (Ga. Ct. App. 2019) (plaintiff introduced no evidence to support existence of duty); *Hunter v. Ramada Worldwide, Inc.*, No. 1:04-cv-0062, 2005 WL 1490053, at *8 (E.D. Mo. June 23, 2005) (same); *Braucher v. Swagat Group, LLC*, 702 F. Supp. 2d 1032, 1043 (C.D. Ill. 2010) (same).

1830198.6

the law in Georgia, and, again, Choice fails to cite a single case to support such a proposition.  Rather, case law cited by Choice states the opposite.  As the court in *Hunter* stated, "the mere fact that a franchise agreement governs the parties' relationship does not automatically preclude a finding that an agency relationship exists," such that the franchisor may be held liable for the franchisee's conduct.  2005 WL 1490053, at *6.  Here, Plaintiff has alleged that Choice exercised day-to-day control over the operation of the SES by maintaining supervisory control and authority over the hotel, its employees, and contractors.  Am. Compl. ¶¶ 28, 174, 723–25.

Every case cited by Choice stands for the proposition that it is necessary to evaluate the evidence of a franchisor's control of its franchisee, either at summary judgment or trial, in order to determine whether a franchisor may be liable for its franchisee's conduct.[18]  Plaintiff has adequately alleged that Choice controlled the conduct of its franchisee and therefore its motion to dismiss her

---

[18] *See Brooks v. Collis Foods, Inc.*, 365 F. Supp. 2d 1342, 1350 (N.D. Ga. 2005) (plaintiff failed to offer evidence that franchisor exercised control of franchisee's operation); *New Star Realty, Inc.*, 816 S.E.2d at 508–09 (same);  *Daimler Chrysler Motors Co. v. Clemente*, 668 S.E.2d 737, 746 (Ga. Ct. App. 2008) (same); *Hyde*, 561 S.E.2d at 878 (same); *Anderson v. Turton Dev., Inc.*, 483 S.E.2d 597, 601 (Ga. Ct. App. 1997); *Baldino's Giant Jersey Subs, Inc. v. Taylor*, 454 S.E.2d 599, 600 (Ga. Ct. App. 1995) (same); *McGuire v. Radisson Hotels Int'l, Inc.*, 435 S.E.2d 51, 52 (Ga. Ct. App. 1993) (same); *McMullan v. Ga. Girl Fashions, Inc.*, 348 S.E.2d 748, 750 (Ga. Ct. App. 1986) (same); *Holiday Inns, Inc. v. Newton*, 278 S.E.2d 85, 86 (Ga. Ct. App. 1981) (same).

negligence claim must be denied.

## V.    Joint and Several Liability and Punitive Damages.

Federal common-law tort principles—not Georgia law—govern the

application of the TVPRA.  *See Wallace v. Kato,* 549 U.S. 384, 387 (2007) (federal

common law applies to federal statutory claim).  Federal common law provides

for joint and several liability for indivisible injuries, such as those suffered by

Plaintiff.[19]  "When two or more causes produce a single, indivisible harm, 'courts

have refused to make an arbitrary apportionment for its own sake, and each of

the causes is charged with responsibility for the entire harm.'"  *Burlington N. &*

*Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 614–15 (2009).

Plaintiff's injuries—particularly Plaintiff's ongoing mental, emotional, and

psychological injuries—have "no reasonable basis on which to determine the

relative contribution of [Choice's] conduct to the single harm."  *FTC v. WV*

*Universal Mgmt., LLC*, 877 F.3d 1234, 1242 (11th Cir. 2017).  Under federal law,

Plaintiff need not show individual tortfeasors were working in concert or

planned to inflict damage on Plaintiff. Doc. 133 at 21.  *See Whyte v. Alston*

*Mgmt., Inc.*, No. 10-81041-CIV, 2012 WL 11789773, at *1–2 (S.D. Fla. Apr. 11,

---

[19] *See also Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985) ("[It] is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury." (quoting the Restatement (Second) of Torts, §§ 875, 879).

2012) (joint and several liability proper on federal statutory claim where it is impossible to divide Plaintiff's emotional injury; concert of action not necessary).

Further, Choice may be held jointly and severally liable on Plaintiff's state-law claims if Plaintiff proves—as she has alleged—that Choice conspired with others to knowingly benefit from Plaintiff's trafficking. *FDIC v. Loudermilk*, 826 S.E.2d 116, 127-28 (Ga. 2019). And such proof will also entitle Plaintiff to punitive damages against Choice. O.C.G.A. § 51-12-5.1.

## CONCLUSION

Plaintiff has adequately alleged facts to support each element of her claims. Choice's motion to dismiss and motion to strike should be denied.

This 23rd day of December, 2019.

/s/ *Tiana S. Mykkeltvedt*

John E. Floyd
Georgia Bar No. 266413
floyd@bmelaw.com
Manoj S. Varghese
Georgia Bar No. 734668
varghese@bmelaw.com
Tiana S. Mykkeltvedt
Georgia Bar No. 533512
mykketlvedt@bmelaw.com
Amanda Kay Seals
Georgia Bar No. 502720
seals@bmelaw.com
Michael R. Baumrind
Georgia Bar No. 960296
baumrind@bmelaw.com

1830198.6

BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street, N.W., Suite 3900
Atlanta, GA  30309
(404) 881-4100- Telephone
(404) 881-4111 – Facsimile

                    Jonathan S. Tonge
                    jtonge@atclawfirm.com
                    Georgia Bar No. 303999
                    Patrick J. McDonough
                    Georgia Bar No. 489855
                    pmcdonough@atclawfirm.com
                    Trinity Hundredmark
                    Georgia Bar No. 140808
                    thundred@atclawfirm.com

ANDERSEN, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia  30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

              *Attorneys for Plaintiff Jane Doe 1*

## **CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing PLAINTIFF'S

RESPONSE TO DEFENDANT CHOICE HOTELS INTERNATIONAL, INC.'S

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN THE

ALTERNATIVE, TO STRIKE was prepared using 13-point Century Schoolbook

font and complies with the margin and type requirements of this Court, per L.R.

5.1 (N.D. Ga.)

This 23rd day of December, 2019.

/s/ Tiana S. Mykkeltvedt
Tiana S. Mykkeltvedt
Georgia Bar No. 533512

1830198.6

27

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of December, 2019, I filed

PLAINTIFF'S RESPONSE TO DEFENDANT CHOICE HOTELS

INTERNATIONAL, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED

COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE using the Court's

CM/ECF system, which will automatically email the document to all counsel of

record.

This 23rd day of December, 2019.

/s/ Tiana S. Mykkeltvedt
Tiana S. Mykkeltvedt
Georgia Bar No. 533512

1830198.6