**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JANE DOE 1 | Civil Action No. |
| Plaintiff, | 1:19-cv-03840 |
| v. | |
| RED ROOF INNS, INC., et al. | JURY TRIAL DEMANDED, |
| Defendants. | Pursuant to Fed. R. Civ. P. 38 |

### PLAINTIFF'S RESPONSE TO DEFENDANTS LA QUINTA WORLDWIDE, L.L.C. AND CPLG PROPERTIES, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants La Quinta Worldwide, L.L.C. ("LQW") and CPLG Properties, LLC ("CPLG") (collectively "Movants") are in the hotel business. At the La Quinta Inn in Alpharetta, Georgia, guests are welcomed with soft beds, free breakfast, and convenient amenities. Plaintiff Jane Doe 1 enjoyed none of these when, on over 20 separate occasions, from 2011 to 2013 she was trafficked out of that hotel—sold to as many as 20 buyers a day for commercial sex. Movants did more than look the other way, they facilitated her trafficking and they profited from the rental of every room in which she was trafficked. Plaintiff seeks to recover for the injuries caused by these Movants under the Trafficking Victims Protection Reauthorization Act, Georgia RICO, and negligence.

1830201.5

1

## STATEMENT OF FACTS

From 2011 to 2013, Movants profited from a sex trafficking venture operating out of the La Quinta Inn, in Alpharetta, Georgia.[1]  Plaintiff is one survivor of that sex trafficking venture.  Am. Compl. [Doc. 87] ¶¶ 2, 8–9.  La Quinta Inn employees intentionally placed victims and traffickers near the back exit of the hotel to hide the number of buyers of commercial sex—sometimes as many as 20 in one day for Plaintiff alone—who were coming and going for short periods of time, advising them to "use the back door."  *Id.* ¶¶ 8(c), 256, 257, 261. La Quinta Inn employees provided extra key cards to be left outside by the back door so buyers could let themselves in without being noticed.  *Id.* ¶ 257.

When Plaintiff's trafficker beat and raped her over a period of hours, La Quinta Inn employees who could hear the violent attack did nothing to help.  *Id.* ¶¶ 8(c), 258.  La Quinta Inn employees ignored the blood left on the walls following Plaintiff's violent beating much like they ignored the trash cans filled with condoms, the frequent requests for towels, and the absence of personal items in Plaintiff's possession—all well-established and readily observable indicators of sex trafficking.  *Id.* ¶¶ 89–91, 260.

This sex trafficking venture was not limited to the traffickers and the

---

[1] "La Quinta Inn" refers to the La Quinta Inn located at 1350 North Point Dr., Alpharetta, Georgia, 30022.

complicit employees at the La Quinta Inn, it extended to management, owners, and others.  *Id.* ¶ 250.  LQW and CPLG (the title holder of the La Quinta Inn), *id.* ¶ 54, among other things, owned, managed, supervised, and controlled the operation of the La Quinta Inn.  LQW and CPLG managers and inspectors sent to examine the hotel were aware of the open and obvious signs of Plaintiff's sex trafficking at the La Quinta Inn, including Plaintiff's and other victims' physical condition, the number of daily buyers, and the state of the rooms in which the trafficking occurred.  *Id.* ¶¶ 259–62.  These signs were readily observable, as evidenced by the graphic complaints of other guests who commented on blood found in rooms and criminal activity, including sex trafficking.  *Id.* ¶¶ 263–68.

Despite knowledge of sex trafficking in their hotels, LQW and CPLG failed to address the problem.  *Id.* ¶ 102.  The End Child Prostitution and Trafficking's Tourism Child-Protection Code of Conduct ("the Code") was launched in 2004.  Although LQW and CPLG were aware of the Code by 2010, they have still refused to sign it.  Movants have also failed to adequately train their employees and agents to maintain safe premises and protect their invitees.  *Id.* ¶ 796.  All the while, LQW and CPLG profited from the sex trafficking venture by receiving rental revenue from rooms in which Plaintiff and other victims were trafficked. *Id.* ¶ 428.

## LEGAL STANDARD

On a motion to dismiss, this Court must take the "factual allegations in the complaint as true and construe them in the light most favorable to" the plaintiff.  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).  That is, the Court must construe the Amended Complaint "broadly," such that it need only include "enough factual matter to . . . suggest the required element[s]" for a claim. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Plaintiff's claims may only be dismissed if "the facts as pled do not state a claim for relief that is plausible on its face." *Edwards*, 602 F.3d at 1291 (citations omitted).

## ARGUMENT & CITATION OF AUTHORITY

### I.   The Amended Complaint is not a Shotgun Pleading.

A complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Neither detailed factual allegations nor "technical forms of pleading . . . are required." *Crowe v. Coleman,* 113 F.3d 1536, 1539 (11th Cir. 1997).

Movants' primary argument is their contention that by grouping LQW and CPLG with other named defendants, the Amended Complaint is insufficiently specific and therefore "fails to comply with the minimum standard of Rule 8." Mot. to Dismiss [Doc. 132-1] at 5.  *See Quality Auto Painting Ctr. of Roselle, Inc.*

1830201.5

*v. State Farm Indem. Co.,* 917 F.3d 1249, 1274 (11th Cir. 2019)("the gist of the problem with group pleading . . . is the failure to give fair notice to each named defendant of the claims against it.").

Movants' argument fails, however, because "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." *Crowe,* 113 F.3d at 1539; *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000)( Where complaint accuses defendants collectively, "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.").[2]  That is exactly what Plaintiff has done here with the factual allegations against the "La Quinta Defendants."  A bold-type heading titled

**"The La Quinta Defendants Participated in a Sex Trafficking Venture . . ."** provides clear notice to Movants of the facts and allegations against them. Am. Compl. at 77.  That section details how Plaintiff and Jane Doe 2 were trafficked out of the La Quinta Inn with the assistance of La Quinta employees—and how those employees assisted and facilitated that trafficking. *Id.* ¶¶ 256–58, *supra* at 2–3.

---

[2] *See also Crespo v. Coldwell Banker Mortg.,* 599 F. App'x 868, 872 (11th Cir. 2014) (applying post-*Iqbal*); *FTC v. Hornbeam Special Situations, LLC,* 308 F. Supp. 3d 1280, 1288 (N.D. Ga. 2018) (rejecting argument that group pleading rule did not apply following *Iqbal*).

The Amended Complaint further clarifies the facts by specifically defining "La Quinta Defendants" to include LQW and CPLQ.  Am. Compl. ¶ 49; *see Quality Auto Painting,* 917 F.3d at 1274 (finding group pleading acceptable where use of term "defendants" was defined).  These paragraphs, in addition to the detailed facts above, describe how Movants financially benefited by receiving a percentage of the room rental revenue of the trafficking operation.  *Id.* ¶¶ 251, 254, 261.  The Amended Complaint further describes how Movants controlled the policies and standards, the training of managers and employees at the La Quinta Inn and knew or should have known of the trafficking of Plaintiff.  *Id.* ¶¶ 252–53.  Movants' argument is contrary to the binding law of the Eleventh Circuit and any dismissal based on group pleading would be erroneous.

## II.    Plaintiff has alleged Movants' Liability under the TVPRA.

Plaintiff asserts claims against Movants under the civil remedy provision of the TVPRA.  18 U.S.C. § 1595.  Section 1595 provides damages and attorneys' fees for a victim of a violation of 18 U.S.C. § 1591 against (1) the perpetrator, or (2) "whoever knowingly benefits, financially or by receiving anything of value from participating in a venture which that person knew or should have known has engaged in a violation of [§ 1591]."

The plain language of the TVPRA refutes Movants' motion entirely.  Although the TVPRA presents issues of first impression in the Eleventh Circuit,

1830201.5

its text is plain and unambiguous and the Court's inquiry should cease there. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Further, Movants' arguments against hotel liability for sex trafficking claims under the TVPRA have been rejected in every federal case in which they were argued.[3]

### A.    Plaintiff Alleges a Perpetrator Claim under § 1591(a)(1).

Plaintiff alleges LQW and CPLG violated § 1591(a)(1), by (1) knowingly harboring (providing a place for), or maintaining (keeping in existence),[4] "by any means" a person (2) "knowing, or in reckless disregard of the fact" that the person is a victim of sex trafficking. 18 U.S.C. § 1591(a)(1). Knowingly harboring under the TVPRA has been found to consist of "continuing to rent [the trafficker] the room after [the trafficker's] conduct was manifest." *Ricchio v. McLean*, 853 F.3d at 557. Plaintiff has so alleged.

Maintaining—to keep in existence "by any means"—is a very broad statutory prohibition that by its plain meaning encompasses acts *and* omissions

---

[3] Movants' motion implies there is a body of binding case law requiring dismissal under the TVPRA. There is not. There are few cases on point, all of which were decided adversely to Movants' arguments. *See Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017); *Ricchio v. Bijal, Inc.*, 386 F. Supp. 3d 126 (D. Mass. 2019); *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019); *H.H, Plaintiff, v. G6 Hospitality, LLC,* No. 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019).

[4] To "harbor" is to "provide a place, home, or habitat for." HARBOR, The American Heritage Dictionary of the English Language (5th ed. 2016). To "maintain" is to "keep in existence." *Id.* at MAINTAIN.

that allow a person's sex trafficking to remain in existence after an entity knows about it.  Every TVPRA hotel sex trafficking case thus far has either cited omissions or explicitly found omissions to be actionable under the TVPRA.  *See Ricchio*, 853 F. 3d at 555 (citing hotel owner indifference and ignoring plea for help); *M.A.*, 2019 WL 4929297, at *3 ("Defendants were on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence."); *H.H*, 2019 WL 6682152, at *3 (same); *see also Bistline v. Parker*, 918 F.3d 849, 875 (10th Cir. 2019) (acceptance of funds with "awareness" of their origin in trafficking).

CPLG is the title holder of the La Quinta Inn.  Am. Compl. ¶ 54.  Along with LQW and other La Quinta entities, CPLG owned, managed, supervised, and controlled the La Quinta Inn.  *Id.* ¶ 49.  Through their control of the La Quinta Inn and complicity with Plaintiff's trafficker, Movants provided a place for, and kept in existence, Plaintiff's sex trafficking venture, as Plaintiff has adequately alleged.[5]

---

[5] Additionally, the assault of Plaintiff at the La Quinta Inn does not have to be a "commercial sex act" for liability to attach. *United States v. Blake*, 868 F.3d 960, 977 (11th Cir. 2017) ("the commission of a sex act is ***not*** an element of § 1591."). Movants' knowledge of Plaintiff's beating, and the complicity of La Quinta employees with the trafficker plausibly allege that Movants' knew and should have known about the sex trafficking venture and their failure to help Plaintiff constituted harboring and maintaining Plaintiff for a sex trafficking venture. Am. Compl. ¶¶ 256–58.

**B.      Plaintiff Alleges a Perpetrator Financial Beneficiary Claim under § 1591(a)(2).**

Movants argue that they did not "knowingly benefit" or "participate in a sex trafficking venture".  As discussed above, Courts that have ruled on the viability of a TVPRA sex trafficking claim against hotel companies have all concluded the "knowing benefit" element is satisfied by the rental of a room. *Ricchio*, 853 F.3d at 556 (knowing benefit satisfied by room rental); *M.A.*, 2019 WL 4929297, at *3 (same); *H.H*, 2019 WL 6682152, at *2 (same).  Money paid to Movants for the rooms "in which Plaintiff and other victims were trafficked," Am. Compl. ¶ 251, was a benefit paid in order to receive a place or venue for (harboring) and keeping in existence (maintaining) the sex trafficking venture at the La Quinta Inn.  Movants knowingly benefitted from this venture.

Furthermore, Plaintiff has adequately alleged that Movants participated in a sex trafficking venture in violation of § 1591(a)(2) based on the same facts showing that Movants knowingly harbored and maintained Plaintiff's sex trafficking under § 1591(a)(1).  *Supra* at 7–8.  Those allegations alone— providing a sex trafficking venue to Plaintiff's sex trafficker in exchange for a portion of the room fee—are also sufficient to allege participation.  Movants' hotel rooms are essential to the sex trafficking venture because they provide the venue, the crime scene, without which sex trafficking cannot occur.  The

1830201.5

business of the La Quinta Inn is harboring, including knowingly providing a place for sex trafficking.  At minimum, Movants assisted, supported, and facilitated the rental of rooms for sex trafficking at the La Quinta Inn in exchange for a portion of the money from those room rentals.  Am. Compl. ¶¶ 54, 251–52, 256–62.

Again, the courts that have ruled on this issue under the TVPRA are unanimous.  *See Ricchio*, 853 F. 3d at 556 (renting room to trafficker after his conduct was manifest constitutes harboring); *M.A.*, 2019 WL 4929297, at *9 (plaintiff's allegation that defendants rented rooms to people it knew or should have known were engaged in sex trafficking sufficient to show defendant "participated in a venture" under § 1595); *H.H*, 2019 WL 6682152, at *5 (same).

There is no "actual participation requirement" in the TVPRA, but even if there were, Plaintiff has alleged direct acts of trafficking by Movants and complicity with Plaintiff's trafficker at the La Quinta Inn.  Am. Compl. ¶¶ 54, 251–52, 256–62.  Movants' citation to *Afyare*, the Harvey Weinstein cases, and *Ratha* do not change this analysis.[6]  Mot. to Dismiss at 11–13.  Unlike the

---

[6] *Ratha* is particularly problematic for Movants because it relied on an opinion that was subsequently reversed on the question of whether participation requires an overt act. *See Gilbert v. United States Olympic Comm.*, No. 18-CV-00981, 2019 WL 4727636, at *17 (D. Colo. Sept. 27, 2019) (discussing *Ratha* and the reversal of *Bistline v. Jeffs*, No. 2:16-CV-788, 2017 WL 108039 (D. Utah Jan. 11, 2017), *aff'd in part, rev'd in part and remanded sub nom. Bistline*, 918 F.3d

defendants in those cases—and the sex-trafficking-sponsored-soccer-team hypothetical in *Afyare*—Movants are not in business together to make movies or play soccer.  They are in business to directly profit from the rental of hotel rooms, including (as alleged) the rental of hotel rooms for sex trafficking.  In exchange for a portion of the sex trafficker's money, Movants owned, managed, supervised, operated, oversaw, and controlled the operations of the La Quinta Inn where staff was complicit in Plaintiff's sex trafficking.  Am. Compl. ¶¶ 54, 251–52, 256–62.

## C.   Plaintiff Alleges a Negligent Financial Beneficiary Claim.

In addition to a claim based on Movants' knowing violation of § 1591(a)(2), § 1595(a) also imposes civil liability on participants who "should have known." Plaintiff plausibly alleges the complicity of hotel staff at the La Quinta Inn, Am. Compl. ¶¶ 256–62, which is sufficient to state a clam of actual or constructive knowledge against Movants.  *See, e.g.*, *Ricchio*, 853 F.3d at 556–57 (claim stated against company through complicity of "agents for renting out [motel's] space"). In *M.A.*, the Court found plaintiff met the negligence knowledge standard but did not meet the *actual* knowledge standard because plaintiff did "not allege any

---

849 (10th Cir. 2019)). The Tenth Circuit noted the mere acceptance of funds with "awareness and acquiescence" of their origin in trafficking could provide a "basis for civil liability that could survive the motion to dismiss." *Bistline*, 918 F.3d at 875.

behavior that indicated the staff knew trafficking that was taking place other than that the trafficker paid for the room in cash." 2019 WL 4929297, at *6. Here, Plaintiff has alleged specific facts showing the hotel staff not only knew trafficking was taking place but actively participated in it. Am. Compl. ¶¶ 54, 251–52, 256–62. *See also H.H,* 2019 WL 6682152, at *3 (acts and omissions of "specific incidents in which hotel staff observed her abuse and failed to report it" sufficient.). Plaintiff has alleged Movants knew and should have known of Plaintiff's trafficking.[7]

Plaintiff's use of "aiding and abetting" in paragraph 420 is not intended to expand liability to any entity not already encompassed by the plain language of § 1591(a)(2) and as alleged in the rest of paragraph 420.

## III. The Amended Complaint States Claims Under Georgia RICO.

### A. Plaintiff's Georgia RICO Claims are not Barred by the Statute of Limitations.

Plaintiff's RICO claims are not barred by the governing statute of limitations. O.C.G.A. § 16-14-8. A statute of limitations bar is an affirmative defense which Plaintiff was not required to negate in her complaint. *La Grasta*

---

[7] Plaintiff also notes, contrary to Movants' assertion, that *M.A.* and *H.H.* were both decided under the dismissal standards of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), citation by the court to a pre-*Twombly* case notwithstanding. *M.A.*, 2019 WL 4929297, at *1 (citing *Twombly* and *Iqbal*); *H.H.* 2019 WL 6682152, at *1 (same).

*v. First Union Secs., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004).  Consequently, a

Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it

is apparent from the face of the complaint that the claim is time-barred.  *Id.*

Because the face of the complaint does not establish that the RICO claims are

time-barred, dismissal on limitations grounds is inappropriate.

Dismissal is also inappropriate because Movants incorrectly measure the

limitations period.  Unlike its federal counterpart, Georgia's RICO Act contains

a statutory limitations provision, O.C.G.A. § 16-14-8.  That provision, which

governs both criminal and civil cases, remained the same from the statute's

enactment in 1980 until 2015, when the General Assembly amended the first

sentence of § 16-14-8 as follows:

> Notwithstanding any other provision of law setting forth a statute of
> limitations, a criminal proceeding or civil action brought pursuant to
> Code Section 16-14-6 shall be commenced up until five years after
> the conduct in violation of a provision of this chapter terminates ~~or
> the cause of action accrues~~.

2015 Ga. Laws 693.  Prior to 2015, the limitations period for civil RICO

cases began to run when a plaintiff discovered, or reasonably should have

discovered, that she had been injured and that her injury was part of a

pattern.  *Blalock v. Anneewakee, Inc.,* 426 S.E.2d 165, 167 (Ga. Ct. App.

1992).  In criminal cases, however, the limitations period commenced

running upon the termination of the violation.[8]

The 2015 Amendment eliminated the different applications of § 16-14-8 in criminal and civil cases by striking the words "or the cause of action accrues," leaving the words "after the conduct in violation of a provision of this chapter terminates" as the sole point of measurement for both kinds of cases.[9]  Thus, the limitations period is now measured solely by reference to the defendant's conduct, not the plaintiff's injury.[10]

The 2015 amendment did not revive RICO claims that became time-barred before the amendment became effective, i.e., claims that had accrued prior to July 1, 2010.  *Glock, Inc. v. Harper*, 796 S.E. 2d 304, 306 (Ga. Ct. App. 2017).  But because Plaintiff's RICO claims are based on injuries that occurred after July 1, 2010, they are not governed by *Glock*.  Am. Compl. ¶ 254 (Plaintiff was

---

[8] *Harper v. State*, 738 S.E. 2d 584, 587 (Ga. 2013) ("Generally prosecutions for RICO violations must begin within five years of the termination of any violation, O.C.G.A. § 16-14-8 . . ."); *Jannuzzo v. State*, 746 S.E. 2d 238, 242 (Ga. Ct. App. 2013)(five-year statute of limitations "runs from the last overt act during the existence of the conspiracy.") (citation omitted).

[9] This uniformity between criminal and civil cases is consistent with RICO's role as a private attorney general statute.  *See Williams Gen. Corp. v. Stone*, 614 S.E. 2d 758, 760 (Ga. 2005) (recognizing RICO's "goal of compensating victims and providing incentive for 'private attorney generals' to initiate actions against those in violation of the Act.").

[10] While a plaintiff in a civil action under RICO must still establish standing under O.C.G.A. § 16-14-6(c)—that she has been "injured by reason of any violation of Code Section 16-14-4"—that is a separate inquiry from the limitations period.

trafficked at La Quinta Inn from 2011–2013).  Instead, the amended version of §

16-14-8 applies, because the time for Plaintiff to bring her RICO claims had not

expired at the time the new version was enacted (2015) and her complaint was

filed after that enactment (2019).  Because a new statute of limitation was in

effect at the time the action was filed, application of that new statute is not

retroactive.[11]  This means that claims based on conduct occurring after July 1,

2010 became subject to the limitations period set forth by amended § 16-14-8,

and do not become time-barred until five years after the conduct in violation of

RICO terminates.

Plaintiff alleges both substantive and conspiracy violations of RICO.  Am.

Compl. ¶¶ 611–27.  In a substantive RICO case, the limitations period runs from

the time the conduct in violation of the statute terminates, i.e., last act of

racketeering activity in the pattern of racketeering activity.  O.C.G.A. § 16-14-8.

That act does not have to involve the plaintiff, because the definition of pattern

encompasses acts committed against *similar* victims, i.e., other victims of

---

[11] *See, e.g., Huggins v. Powell*, 726 S.E. 2d 730, 733-34 (Ga. Ct. App. 2012)
(where the new statute of limitations is in effect at the time the action was filed,
there is no question of retroactivity); *Beneke v. Parker*, 667 S.E. 2d 97, 102 (Ga.
Ct. App. 2008) (same); *Atlanta Country Club v. Smith*, 458 S.E. 2d 136, 137 (Ga.
Ct. App. 1995) (suit filed after effective date of amendment does not involve
retroactive application of statute of limitation).

1830201.5

trafficking.  O.C.G.A. § 16-14-3(4).[12]

Similarly, in a RICO conspiracy case, the limitations period runs from the last overt act during the existence of the conspiracy.  *State v. Conzo*, 666 S.E. 2d 404, 406 (Ga. 2008).  Because a conspirator is responsible for all acts committed in furtherance of the criminal endeavor, *Pasha v. State,* 616 S.E. 2d 135, 138 (Ga. 2005),[13] there is no requirement that each conspirator personally commit an overt act.  Instead, the limitations period is measured from the last overt act committed by *any* conspirator or party to the crime.  *Whaley v. State,* 808 S.E. 2d 88, 93 (Ga. Ct. App. 2017).[14]

Nowhere does Plaintiff allege that Movants' conduct in violation of a provision of RICO has ever terminated, much less that it terminated more than five years prior to the filing of this action.  As to LQW and CPLG, Plaintiff alleges that those Movants' conduct in violation of O.C.G.A. § 16-14-4 has not terminated, Am. Compl. ¶ 617, and that it has continued to within five years of

---

[12] The Amended Complaint references the trafficking of multiple victims, including a plaintiff in another case before the Court, at the La Quinta Inn.  Am. Compl. ¶¶ 255, 259–60.

[13] *See also, Akintoye v. State,* 798 S.E. 2d 720, 724 (Ga. Ct. App. 2017)("[i]t is well settled that when individuals associate themselves in an unlawful enterprise, any act done in pursuance of the conspiracy by any one or more of the conspirators is in legal contemplation the act of all.").

[14] *Harper*, 738 S.E. 2d at 590 (RICO count was timely where there was evidence showing that one or more of the alleged conspirators committed acts of racketeering activity within five years of the indictment).

the filing of this action.  *Id.* ¶ 623.  Because it is not apparent from the face of the complaint that Plaintiff's RICO claims are time-barred, the motions must be denied.

### B.    Movants' Proximate Cause Argument Fails.

Movants contend that Plaintiff has failed to properly allege proximate cause.  But these arguments really challenge the allegations of predicate acts, asserting Plaintiff fails to allege predicate acts directly committed by Movants. In so doing, Movants ignore the elements of the predicate acts themselves and of RICO generally.  As noted above, Plaintiff alleges that each Movant violated O.C.G.A. § 16-14-4(a) and also § 16-14-6(c), by conspiring to violate subsection (a).[15]  A person violates O.C.G.A. § 16-14-4(a) when they obtain money, directly or indirectly, through a pattern of racketeering activity.  Evidence of two related predicate acts is sufficient to constitute a pattern.  *Dorsey v. State,* 615 S.E. 2d 512, 518-19 (Ga. 2005).

Acts of racketeering activity are related if they are in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents,

---

[15] A person can be liable for a substantive RICO violation directly or as a party to a crime.  *Whaley,* 808 S.E. 2d at 92 (affirming RICO conviction where defendant was found guilty both individually and as a party to a crime); O.C.G.A. § 16-2-21 ("Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto . . .")

results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated. *Cotman v. State,* 804 S.E. 2d 672, 684 (Ga. Ct. App. 2017). Financial gain is sufficient to link acts of racketeering activity into a pattern. *Overton v. State,* 671 S.E. 2d 507, 517–18 (Ga. Ct. App. 2008).

If the predicate acts are related to each other, a violation of O.C.G.A. § 16-14-4(a) occurs if one or more of the acts which form the pattern results in the defendant acquiring or maintaining control over property, in this case money. *Dorsey*, 615 S.E. 2d at 519. A person engages in a RICO conspiracy "if they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." *Cotman,* 804 S.E. 2d at 684.

Movants ignore the fact that, as members of conspiracies to violate RICO, they are responsible for all acts committed in furtherance of the criminal endeavor.[16] There is no requirement that each movant commit a predicate act, only that an overt act be committed by a member of the conspiracy of which they were a part. *Pasha*, 616 S.E. 2d at 138. ("Thus, Pasha's argument is unavailing, since there is no requirement in a conspiracy case that the State prove that Pasha personally committed the underlying predicate offenses.").

---

[16] *Akintoye,* 798 S.E.2d at 724; *Pasha*, 616 S.E. 2d at 138.

1830201.5

Here, it is clear that Plaintiff has alleged acts of racketeering activity from which Movants are not insulated. For example, a person commits the offense of trafficking an individual for sexual servitude when they knowingly benefit financially or by receiving anything of value from the sexual servitude of another. O.C.G.A. § 16-5-46(c)(3). Plaintiff alleges that Movants benefitted financially from her sexual servitude. Am. Compl. ¶ 614.

A corporation has liability if its agent knew or should have known that the illegal activity was occurring. O.C.G.A. § 16-5-46(j). Plaintiff alleges that LQW and CPLG knew or should have known of the illegal activity. Am. Compl. ¶¶ 262–68. As relevant to LQW and CPLG, Plaintiff alleges that she was trafficked at the La Quinta Inn on around 20 separate occasions. *Id*. ¶ 254. Plaintiff also alleges that the La Quinta Defendants which include LQW and CPLG, received revenue generated by the rental of rooms in which plaintiff and other victims were trafficked. *Id*. ¶ 251.

Similarly to O.C.G.A. § 16-5-46, 18 U.S.C. § 1591 creates liability for anyone who financially benefits from participation in a venture which, *inter alia*, harbors, provides, or maintains persons who are coerced into engaging in commercial sex acts. 18 U.S.C. § 1591(a). Liability may be based upon actual knowledge or reckless disregard. *Id*. Plaintiff's allegations regarding violations of O.C.G.A. § 16-5-46 and 18 U.S.C. § 1591 are sufficient to allege that Movants

engaged in acts of racketeering activity that injured Plaintiff.  In sum, Plaintiff has alleged predicate acts and RICO violations for which Movants can be found liable based on facts that could be proven consistent with those allegations.

### C.    Movants Argue the Wrong Standard for Corporate Liability.

The standard for corporate criminal liability is set forth in O.C.G.A. § 16-2-22.  But that standard does not govern this civil RICO case.  In representing that *Clark v. Security Life Insurance Co. of America,* 509 S.E.2d 602, 604-05 (Ga. 1998) adopted the § 16-2-22 standard, Movants inaccurately suggest in a parenthetical that *Clark* was disapproved of on other grounds by *Williams General Corporation v. Stone,* 632 S.E.2d 376 (2006).  In fact, *Williams General* rejected the exact argument that Movants assert:

> Appellees argue for application of OCGA § 16-2-22 which addresses criminal responsibility for corporations. . . . However, to construe the statute in the manner proposed by Appellees would mandate that OCGA § 16-2-22 and other criminal statutes that limit imposition of corporation criminal liability would now be applied to civil suits which stem from criminal violations.  ***We have not previously applied OCGA § 16-2-22 or any other criminal statutes to civil suits brought by individuals, and we decline to do so here.***

632 S.E. 2d at 378 (emphasis added).  The unanimous Supreme Court also made it clear that it was disapproving *Clark* on the precise question at issue:

> Furthermore, in reaching its conclusion, the Court of Appeals relied heavily on language contained in footnote (11) of *Clark v. Sec. Life Ins. Co.,* 270 Ga. 165(2), (n.11), 590 S.E. 2d 602 (1998) that:

1830201.5

> A corporation may also face prosecution under O.C.G.A.
> § 16-2-22(a)(1) . . . RICO, however, is not such a statute
> because O.C.G.A. § 16-4-4(sic) prohibits only 'persons'
> from engaging in racketeering activity.

> This language, whether considered dicta or, as Appellees argue, part
> of the holding in *Clark*, adds confusion to a straight forward
> interpretation of the RICO statute.   In accordance with our holding
> and in an effort to further clarify O.C.G.A. § 16-14-1 et seq., we
> hereby disapprove the language in footnote (11) relied upon by the
> Court of Appeals.

*Id.* Movants' argument concerning corporate liability fails because it is

based upon a standard that has been rejected by the Supreme Court of

Georgia and therefore has no application to this civil RICO suit.

## IV.   Plaintiff has Properly Alleged a Negligence Claim Against Movants.

### A.   Plaintiff's Negligence Claim is Timely.

From 2011 to 2013, Plaintiff was trafficked at the La Quinta Inn on

around 20 separate occasions.  Am. Compl. ¶ 254.  Movants assert that because

the statute of limitation for a negligence claim is two years, O.C.G.A. § 9-3-33,

Plaintiff's negligence claim is time-barred.  Movants fail to recognize, however,

that the limitations period for Plaintiff's claim was tolled by O.C.G.A. § 9-3-99

for six years because it arises out of crimes committed against her.[17]  As a result,

---

[17] O.C.G.A. § 9-3-99 provides that:

Plaintiff had eight years to timely assert her negligence claim.

The Court of Appeals of Georgia examined the scope of O.C.G.A. § 9-3-99 tolling in *Harrison v. McAfee*, 788 S.E. 2d 872, 873 (Ga. Ct. App. 2016). In that case, an unknown perpetrator shot the plaintiff in the arm while he was at the defendant's bar. *Id.* More than two years later the plaintiff filed a premises liability lawsuit against the bar. *Id.* The *Harrison* court held the plaintiff's claim was timely because he was a victim of an alleged crime and his lawsuit asserted a tort claim arising out of the facts and circumstances related to the commission of that crime. *Id.* at 876, 878–79. The court held that § 9-3-99 tolled the limitation period even though the defendant was not the perpetrator of the crime, *id.* at 876, and even though there was no prosecution of the crime. *See id.* at 873 (unknown perpetrator had "yet to be arrested or prosecuted").

Here, Plaintiff is the "victim of [] alleged crime[s]," O.C.G.A. § 9-3-99, at the La Quinta Inn and her cause of action "arises out of the facts and circumstances relating to the commission of such alleged crime[s]." *Id.* The

---

The running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years.

limitation period for her negligence claim was tolled for six years because no

prosecution of those crimes has yet become final.  *Id.*  Therefore, her negligence

claim is time-barred only to the extent it relates to crimes occurring more than

eight years prior to filing this action.  Plaintiff's negligence claim arising out of

crimes committed at the La Quinta Inn in 2012 and 2013, as well as some

crimes committed in 2011, are timely.

### B.   Plaintiff's Injuries were caused by Movants' Negligence.

Plaintiff's injuries were not only the foreseeable result of Movants'

negligence, but are precisely the types of injuries that Movants were warned

would occur if they failed to exercise proper care.  Years before Plaintiff was

trafficked at their hotel, Movants knew or should have known of the epidemic of

hotel sex trafficking and its prevalence in metro Atlanta hotels.[18]  *Id.* ¶ 81; *see*

*also id.* ¶ 92 (Defendants were repeatedly warned not to turn a blind eye to sex

trafficking).  Despite knowing "what signs to look for and which policies to

implement in order to prevent, identify, and deter sex trafficking in their

hotel[]," *id.* ¶ 94, and despite sex trafficking at the La Quinta Inn being open,

obvious, and apparent to Movants' agents, *id.* ¶ 262, Movants refused to take

---

[18] Despite being aware of the Code designed to prevent sex trafficking at hotels
for a decade or more, LQW has refused to adopt it.  Am. Compl. ¶ 97.  "Indeed,
[LQW] has never taken any steps to publicly address or even comment on the
frequent sex trafficking at its hotels."  *Id.*

remedial action "so that they could continue to profit from the sex trafficking ventures in which they participated." *Id.* ¶ 94.

And even assuming Movants did not assist, facilitate, or conspire with the criminal actors who operated a sex trafficking venture out of their hotel as Plaintiff has alleged, *id.* ¶ 250, those perpetrators' criminal acts were nonetheless the reasonably foreseeable results of Movants' negligence and do not break the causal connection between them and Plaintiff's injuries. "The general rule that the intervening criminal act of a third person will insulate a defendant from liability for an original act of negligence does not apply when it is ***alleged*** that the defendant had reason to anticipate the criminal act." *Atlantic Coast Line R. v. Godard*, 86 S.E.2d 311, 315 (Ga. 1955). Knowledge of previous similar crimes can render criminal conduct foreseeable. *FPI Atlanta, L.P. v. Seaton*, 524 S.E. 2d 524, 528 (Ga. Ct. App. 1999). So, too, can "[k]nowledge of conditions which are likely to result in [criminal conduct], or which constitute a source of potential danger." *Walker v. MARTA*, 487 S.E.2d 498, 501 (Ga. Ct. App. 1997). As Plaintiff has alleged, Movants not only had reason to anticipate criminal sex trafficking at their hotel and were aware of the conditions that would result in such crime, they affirmatively knew of such conduct at their hotel.

Further, whether criminal conduct is a foreseeable consequence of intentional or negligent conduct is a question to be answered after fully

developing the factual record, not on a motion to dismiss. *Days Inns of Am., Inc. v. Matt*, 454 S.E.2d 507, 508 (Ga. 1995); *Walker v. Aderhold Props., Inc.*, 694 S.E.2d 119, 122 (Ga. Ct. App. 2010). The cases cited by Movants confirm this point as each cited decision followed the full development of the factual record through discovery and/or at trial.[19] Plaintiff has adequately alleged not only that Movants had reason to anticipate the kinds of wrongful conduct that injured Plaintiff, but that individuals like Plaintiff would be injured as result of Movants' failure keep their hotel safe and adequately protect invitees. In other words, Plaintiff is prepared to show that the results of criminal sex trafficking at the La Quinta Inn were not just foreseeable, they were foreseen by Movants.

## **CONCLUSION**

Plaintiff has adequately alleged facts to support each element of her claims. Movants' motion to dismiss should be denied.

This 23rd day of December, 2019.

---

[19] *See Avis Rent A Car System, LLC v. Johnson*, No. A19A0928, A19A0929, 2019 WL 5616683 at *4 (Ga. Ct. App. Oct. 31, 1999) (at ***trial*** evidence was insufficient to show intervening criminal conduct was not proximate cause of her injury); *Goldstein, Garber & Salama, LLC v. J.B.*, 797 S.E.2d 87, 90 (Ga. 2017) (same); *Brown v. All-Tech Inv. Group, Inc.*, 595 S.E. 2d 517, 523 (Ga. Ct. App. 2003) (at summary judgment "testimony illustrates vividly" that "acts of violence were so unusual, contrary to ordinary experience, and rare" no reasonable jury could find it should be guarded against); *Gordon v. Starwood Hotels & Resorts Worldwide, Inc.*, 821 F. Supp. 2d 1308, 1313 (N.D. Ga. 2011).

/s/ *Tiana S. Mykkeltvedt*
John E. Floyd
Georgia Bar No. 266413
floyd@bmelaw.com
Manoj S. Varghese
Georgia Bar No. 734668
varghese@bmelaw.com
Tiana S. Mykkeltvedt
Georgia Bar No. 533512
mykketlvedt@bmelaw.com
Amanda Kay Seals
Georgia Bar No. 502720
seals@bmelaw.com
Michael R. Baumrind
Georgia Bar No. 960296
baumrind@bmelaw.com

BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street, N.W., Suite 3900
Atlanta, GA  30309
(404) 881-4100 – Telephone
(404) 881-4111 – Facsimile

Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Trinity Hundredmark
Georgia Bar No. 140808
thundred@atclawfirm.com

ANDERSEN, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia  30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff Jane Doe 1*

1830201.5

## CERTIFICATION

The undersigned counsel hereby certifies that the foregoing PLAINTIFF'S

RESPONSE TO DEFENDANTS LA QUINTA WORLDWIDE, L.L.C. AND

CPLG PROPERTIES, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED

COMPLAINT was prepared using 13-point Century Schoolbook font and

complies with the margin and type requirements of this Court, per L.R. 5.1

(N.D. Ga.)

This 23rd day of December, 2019.

*/s/ Tiana S. Mykkeltvedt*
Tiana S. Mykkeltvedt
Georgia Bar No. 533512

1830201.5

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of December, 2019, I filed

PLAINTIFF'S RESPONSE TO DEFENDANTS LA QUINTA WORLDWIDE,

L.L.C. AND CPLG PROPERTIES, LLC'S MOTION TO DISMISS PLAINTIFF'S

AMENDED COMPLAINT using the Court's CM/ECF system, which will

automatically email the document to all counsel of record.

This 23rd day of December, 2019.

*/s/ Tiana S. Mykkeltvedt*
Tiana S. Mykkeltvedt
Georgia Bar No. 533512

1830201.5