# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| JANE DOE 1 | Civil Action No. |
| Plaintiff, | 1:19-cv-03840 |
| v. | |
| RED ROOF INNS, INC., et al. | JURY TRIAL DEMANDED, |
| Defendants. | Pursuant to Fed. R. Civ. P. 38 |

## PLAINTIFF'S RESPONSE TO DEFENDANTS HILTON FRANCHISE HOLDINGS LLC'S, HILTON DOMESTIC OPERATING COMPANY, INC.'S AND HILTON WORLDWIDE HOLDINGS INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Hilton Franchise Holdings LLC, Hilton Domestic Operating Company Inc., and Hilton Worldwide Holdings Inc. (collectively "Hilton") are in the hotel business and their revenue is dependent upon the rental of hotel rooms.  At the Hampton Inn on North Druid Hills Road ("Hampton Inn NDH") guests are promised comfortable beds, free breakfast, and convenient amenities. Plaintiff Jane Doe 1 enjoyed none of these when, on over 20 separate occasions, from 2011 to 2016 she was trafficked out of that hotel.  Hilton facilitated her trafficking and profited from the rental of rooms in which she and other sex trafficking victims were trafficked.  Plaintiff seeks to recover for the injuries caused by Hilton under the Trafficking Victims Protection Reauthorization Act,

Georgia RICO, and negligence.

## STATEMENT OF FACTS

Hilton profited from a sex trafficking venture operating out of the Hampton Inn NDH.[1]  Plaintiff is one survivor of that sex trafficking venture. Am. Compl. [Doc. 87] ¶¶ 2, 8–9.  A male front desk employee at the Hampton Inn NDH worked as a lookout for Plaintiff's traffickers, providing discounts in exchange for drugs and money.  *Id.* ¶ 314.  Another front desk employee also accepted drugs to act as a "lookout" for Plaintiff's trafficker.  *Id.* ¶ 316.

Hampton Inn NDH ignored well-established and readily observable indicators of sex trafficking, such as trash cans filled with condoms, the frequent requests for towels, and the absence of personal items in Plaintiff's possession. *Id.* ¶¶ 317–18.  Foot traffic indicative of sex trafficking, with as many as 20 men a day visiting Plaintiff's room for short periods of time, was also ignored by Hilton.  *Id.* ¶ 319.

This sex trafficking venture was not limited to the traffickers and the complicit employees at the Hampton Inn NDH, it extended to management, owners, and others.  *Id.* ¶ 307.  Hilton, among other things, managed, supervised, and controlled the operation of the Hampton Inn NDH.   *Id.* ¶¶ 61,

---

[1] "Hampton Inn NDH " refers to the Hampton Inn located at 1975 North Druid Hills Road NE, Atlanta, Georgia 30329.

307.  Hilton's managers and inspectors sent to examine the hotel were aware of the open and obvious signs of sex trafficking at the Hampton Inn NDH, including Plaintiff's and other victims' physical condition, the number of daily buyers, and the state of the rooms in which the trafficking occurred.  *Id.* ¶ 320. These signs were readily observable, as evidenced by the guest complaints.  *Id.* ¶¶ 322–23.

Despite knowledge of sex trafficking in their hotels, Hilton failed to address the problem with regard to its franchisee-owned properties.  All the while, Hilton profited from the sex trafficking venture by receiving rental revenue from rooms in which Plaintiff and other victims were trafficked.  *Id.* ¶¶ 308, 326.

## **LEGAL STANDARD**

On a motion to dismiss, this Court must take the "factual allegations in the complaint as true and construe them in the light most favorable to" the plaintiff.  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).  That is, the Court must construe the Amended Complaint "broadly," such that it need only include "enough factual matter to . . . suggest the required element[s]" for a claim. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Plaintiff's claims may only be dismissed if "the facts as pled do not state a claim for relief that is

1830740.6

plausible on its face." *Edwards*, 602 F.3d at 1291 (citations omitted).

Further, if the Court considers any of Hilton's factual assertions not supported by Plaintiff's allegations, including its citations to evidence,[2] the Court must treat Hilton's motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  But converting Hilton's motion to one for summary judgment is not appropriate at this time because Plaintiff has not had an opportunity to obtain and present evidence in response to that submitted by Hilton.  *Id.*; *see also* Jane Doe No. 1 v. Fulton-DeKalb Hosp. Auth., No. 1:05-CV-2277-TWT, 2006 WL 1222289, at *2 (N.D. Ga. May 3, 2006) ("Discovery has not taken place, however, and the Plaintiffs have thus not had an opportunity to present all material pertinent to a motion for summary judgment.").

## ARGUMENT & CITATION OF AUTHORITY

## I.     Plaintiff has alleged Hilton's Liability under the TVPRA.

Plaintiff asserts claims against Hilton under the civil remedy provision of the TVPRA.  18 U.S.C. § 1595.  Section 1595 provides damages and attorneys' fees for a victim of a violation of 18 U.S.C. § 1591 against (1) the perpetrator, or (2) "whoever knowingly benefits, financially or by receiving anything of value

---

[2] *See e.g.*, Mot. to Dismiss [Doc. 160-1] at 22 (alleging it does not operate, manage, or control the Hampton Inn NDH); *id.* (citing 2019 franchise disclosure document).

from participating in a venture which that person knew or should have known
has engaged in a violation of [§ 1591]."

The plain language of the TVPRA defeats Hilton's motion.  Although the
TVPRA presents issues of first impression in the Eleventh Circuit, its text is
plain and unambiguous and the Court's inquiry should cease there.  *Robinson v.
Shell Oil Co.*, 519 U.S. 337, 340 (1997).  Further, Hilton's arguments against
hotel liability for sex trafficking claims under the TVPRA have been rejected in
every federal case in which they have been argued.[3]

### A.     Plaintiff alleges a Perpetrator Claim under § 1591(a)(1).

Plaintiff alleges Hilton violated § 1591(a)(1), by (1) knowingly harboring
(providing a place for), or maintaining (keeping in existence),[4] "by any means" a
person (2) "knowing, or in reckless disregard of the fact" that the person is a
victim of sex trafficking.  18 U.S.C. § 1591(a)(1).  Knowingly harboring under the
TVPRA has been found to consist of "continuing to rent [the trafficker] the room

---

[3] Hilton's motion implies there is a body of binding case law requiring dismissal
under the TVPRA.  There is not.  There are few cases on point, all of which were
decided adversely to Hilton's arguments.  *See Ricchio v. McLean*, 853 F.3d 553
(1st Cir. 2017); *Ricchio v. Bijal, Inc.*, 386 F. Supp. 3d 126 (D. Mass. 2019); *M.A.
v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-849, 2019 WL 4929297 (S.D.
Ohio Oct. 7, 2019); *H.H, Plaintiff, v. G6 Hospitality, LLC,* No. 2:19-CV-755, 2019
WL 6682152 (S.D. Ohio Dec. 6, 2019).

[4] To "harbor" is to "provide a place, home, or habitat for."  HARBOR, The
American Heritage Dictionary of the English Language (5th ed. 2016).  To
"maintain" is to "keep in existence." *Id.* at MAINTAIN.

after [the trafficker's] conduct was manifest." *Ricchio v. McLean*, 853 F.3d at 557. Plaintiff has so alleged.

Maintaining—to keep in existence "by any means"—is a very broad statutory prohibition that by its plain meaning encompasses acts and omissions that allow a person's sex trafficking to continue after an entity knows of the sex trafficking. Every TVPRA hotel sex trafficking case thus far has either cited omissions or explicitly found omissions to be actionable under the TVPRA. *See Ricchio*, 853 F.3d at 555 (citing hotel owner indifference and ignoring plea for help); *M.A.*, 2019 WL 4929297, at *3 (defendants on notice about "prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence"); *H.H*, 2019 WL 6682152, at *3 (same). *See also Bistline v. Parker*, 918 F.3d 849, 875 (10th Cir. 2019) (citing acceptance of funds with "awareness and acquiescence" of their origin in trafficking).

Though omissions are actionable under the TVPRA, Plaintiff has also alleged that Hilton, *inter alia*, supervised, oversaw, and controlled the operations of the Hampton Inn NDH. Am. Compl. ¶¶ 61, 307–10. Plaintiff has alleged that Hilton controlled the policies and standards at the Hampton Inn NDH and trained the hotel's management and employees. *Id.* ¶ 309. Plaintiff has alleged Hilton's knowledge of sex trafficking at the Hampton Inn NDH, and that Hilton inspected the hotel and that the sex trafficking activity at the hotel

was apparent to those inspectors. *Id.* ¶¶ 317–23.  In sum, Plaintiff has alleged that by its acts and omissions regarding the Hampton Inn NDH, Hilton harbored and maintained Plaintiff's sex trafficking and did so with actual knowledge.  Nothing more is required to state a claim under § 1591(a)(1).

## B.   Hilton Knowingly Benefitted from the Sex Trafficking of Plaintiff.

The "knowing benefit" element only applies to Counts 23 and 24.  Every court that has ruled on a TVPRA sex trafficking claim against a hotel company has concluded the "knowing benefit" element is satisfied by the rental of a room. *Ricchio*, 853 F.3d at 556 (knowing benefit satisfied by room rental); *M.A.*, 2019 WL 4929297, at *3 (same); *H.H*, 2019 WL 6682152, at *2 (same). Plaintiff has alleged that Hilton knew of the sex trafficking venture at the Hampton Inn NDH and that it received a percentage of the money for the room rental in which Plaintiff's trafficking occurred—allegations sufficient to allege Hilton knowingly benefited from this venture.  Am. Compl. ¶¶ 308, 320, 322–23.

## C.   Hilton's "Participation in a Venture" Caused Plaintiff's Injuries.

Plaintiff has adequately alleged that Hilton knowingly harbored and maintained Plaintiff's sex trafficking under § 1591(a)(1). *Supra* at 5-7. Those allegations alone—providing a venue to Plaintiff's sex trafficker in exchange for a percentage of the room fee—are sufficient to allege participation in a venture,

because a much lower standard applies to the two financial beneficiary claims under §1591(a)(2) and § 1595(a).

Sex trafficking cannot occur without a place for sex.  Hilton's provision of hotel rooms further—and are essential to—the sex trafficking venture because they provide the venue without which sex trafficking cannot occur.  Knowingly providing a place for sex trafficking to occur is part of the Hampton Inn NDH's business.  At minimum, Hilton assisted, supported, and facilitated the provision of rooms for sex trafficking at the Hampton Inn NDH in exchange for a percentage of the money from the rooms used for sex trafficking.[5]  Am. Compl. ¶¶ 61, 307–10, 313.

Hotel brands have tried and lost the argument Hilton makes here.  *M.A.*, 2019 WL 4929297, at *9 (denying brands' motions to dismiss and finding plaintiff "alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendants rented rooms to people it knew or

---

[5] The definition of "participation in a venture" in § 1591 cited by Hilton did not exist in the statute prior to May 29, 2015. The post-2015 definition also does *not* apply to the use of "participation in a venture" in § 1595(a) because the definition is explicitly limited to § 1591 and because applying the definition to § 1595(a) would render meaningless the "should have known" standard provided for in § 1595(a). *M.A.*, 2019 WL 4929297 at * 7.  Nonetheless, Plaintiff's allegations satisfy even that definition, as she has alleged that Hilton assisted, supported, and facilitated the operations of the Hampton Inn, including the sex trafficking venture that victimized Plaintiff.

should have known where engaged in sex trafficking"); *see also H.H,* 2019 WL 6682152, at *5 (same).

Unlike the defendants in *Afyare* and the Harvey Weinstein cases, Hilton is not in business with the other Hampton Inn NDH Defendants to make movies or play soccer.  They are in the business of directly profiting from the rental of hotel rooms, including the rental of hotel rooms for sex trafficking.  Hilton, *inter alia*, managed, supervised, operated, oversaw, and controlled the operations of the Hampton Inn NDH in exchange for a portion of the revenue generated by the sex trafficking venture.  Am. Compl. ¶¶ 61, 307–10.  Plaintiff has properly asserted claims under § 1595 for Hilton's knowing violation and negligent violation of § 1591(a)(2).[6]

### D.    The Knowledge Standard of § 1595(a) is Negligence.

Though § 1595(a) uses the constructive knowledge standard of negligence, it does not sweep in the whole of negligence law.[7]  Section § 1595 says nothing

---

[6] Hilton's causation argument is without merit for the same reasons. Hilton participated by operating and controlling the venue for Plaintiff's sex trafficking and providing that venue to Plaintiff's sex trafficker, without which Plaintiff's sex trafficking could not occur. Hilton's knowing provision of a venue for sex trafficking caused injury to Plaintiff. Am. Compl. ¶¶ 61, 307–10.

[7] Of the courts that have considered TVPRA claims against hotels, all have agreed that the "should have known" knowledge standard is equivalent to that of negligence.

about duty or control.  It requires only a benefit, participation in a venture, and constructive knowledge.

Section 1595 explicitly does *not* require a showing of "reckless disregard." "Reckless disregard" and "should have known" are not interchangeable.[8] Reckless disregard is conscious indifference, while "should have known" is the well-established knowledge standard of negligence, also referred to as constructive knowledge. *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1497 (11th Cir. 1985) ("appellants had actual or constructive knowledge (i.e., they knew or should have known in the exercise of ordinary care)"). Constructive knowledge is the "[k]nowledge that one ***using reasonable care or diligence*** should have, and therefore that is attributed by law to a given person."  CONSTRUCTIVE KNOWLEDGE, Black's Law Dictionary (11th ed. 2019) (emphasis added).  Thus, the legal standard applicable to § 1595 presents a classic jury question: whether a reasonable person in Hilton's position, using reasonable care, would have known that Hilton profited from sex trafficking.

---

[8] Reckless disregard is a "[c]oncious indifference to the consequences of an act . . . [t]he intentional commission of a harmful act ***or failure to do a required act*** when the actor knows or has reason to know of facts that would lead a reasonable person to realize that the actor's conduct both creates an unreasonable risk of harm to someone and involves a high degree of probability that substantial harm will result."  RECKLESS DISREGARD, Black's Law Dictionary (11th ed. 2019) (emphasis added).

1830740.6

On appeal, *Ricchio* merely held that the plaintiff "at least" alleged reckless disregard, but did not address the question of whether the knowledge standard of § 1595 was negligence. *Ricchio*, 853 F.3d at 556. However, in a subsequent decision the district court held the standard was negligence. *Ricchio v. Bijal, Inc.*, No. CV 15-13519-FDS, 2019 WL 6253275, at *9 (D. Mass. Nov. 22, 2019) ("The phrase 'knew or should have known,' echoes common language used in describing an objective standard of negligence."). Faced with the same question, the district court in *M.A.* and *H.H.* explicitly held the standard of § 1595 is the knowledge standard of negligence. *M.A.*, 2019 WL 4929297, at *4; *H.H.*, 2019 WL 6682152, at *3.

Finally, Georgia case law cited by Hilton does not apply to Plaintiff's claims under the TVPRA. Hilton has cited Georgia law to argue that it cannot be vicariously liable under the TVPRA, that certain actions were outside the scope of hotel staff's employment, and that Georgia negligence law imposes no duty on Hilton under the TVPRA. Mot. to Dismiss at 6, 15. However, Georgia law does not apply to the TVPRA, which is a federal statute governed by federal common law and the common law of agency. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992) (adopting common-law test to define terms under federal statute and citing the Restatement (Second) of Agency); *see also*

*Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1492 (11th Cir. 1993) (applying

*Darden*).  Hilton's arguments are therefore unavailing.

## II.    The Amended Complaint States Claims Under Georgia RICO.

### A.    Hilton's Challenge to the Alleged Predicates Fails.

Hilton ignores the elements of the predicate acts themselves and of RICO

generally.  Plaintiff alleges that Hilton violated O.C.G.A. § 16-14-4(a) and also §

16-14-6(c), by conspiring to violate subsection (a).[9]  A person violates O.C.G.A. §

16-14-4(a) when they obtain money, directly or indirectly, through a pattern of

racketeering activity.  Evidence of two related predicate acts is sufficient to

constitute a pattern.  *Dorsey v. State,* 615 S.E.2d 512, 518-19 (Ga. 2005).

Acts of racketeering activity are related if they are in furtherance of one or

more incidents, schemes, or transactions that have the same or similar intents,

results, accomplices, victims, or methods of commission or otherwise are

interrelated by distinguishing characteristics and are not isolated.  *Cotman v.*

*State,* 804 S.E.2d 672, 684 (Ga. Ct. App. 2017).

If the predicate acts are related to each other, a violation of O.C.G.A. § 16-

---

[9] A person can be liable for a substantive RICO violation directly or as a party to a crime.  *Whaley,* 808 S.E.2d at 92 (affirming RICO conviction where defendant was found guilty both individually and as a party to a crime); O.C.G.A. § 16-2-21 ("Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto . . .").

1830740.6

14-4(a) occurs if one or more of the acts which form the pattern results in the defendant acquiring or maintaining control over property, in this case money. *Dorsey*, 615 S.E.2d at 519.  A person engages in a RICO conspiracy "if they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." *Cotman,* 804 S.E.2d at 684.

Here, it is clear that Plaintiff has alleged acts of racketeering activity from which Hilton is not insulated.  For example, a person commits the offense of trafficking an individual for sexual servitude when they knowingly benefit financially or by receiving anything of value from the sexual servitude of another.  O.C.G.A. § 16-5-46(c)(3).  Financial gain is sufficient to link acts of racketeering activity into a pattern, *Overton v. State,* 671 S.E.2d 507, 517–18 (Ga. Ct. App. 2008), and Plaintiff alleges that Hilton benefitted financially from her sexual servitude.  Am. Compl. ¶¶ 680, 682, 690.

A corporation has liability if its agent knew or should have known that the illegal activity was occurring.  O.C.G.A. § 16-5-46(j).  Similarly to O.C.G.A. § 16-5-46, 18 U.S.C. § 1591 creates liability for anyone who financially benefits from participation in a venture which, *inter alia*, harbors, provides, or maintains persons who are coerced into engaging in commercial sex acts.  18 U.S.C. § 1591(a).  Liability may be based upon actual knowledge or reckless disregard. *Id*.  Plaintiff alleges that Hilton knew or should have known of the illegal

activity.  Am. Compl. ¶¶ 320–26.

Plaintiff's allegations are supported by facts sufficient to establish liability under both O.C.G.A § 16-5-46 and 18 U.S.C. § 1591, among other predicate offenses.  Indeed, the complaint in this case and in the cases brought by Jane Doe 2, Jane Doe 3, and Jane Doe 4[10] allege a long history of frequent sex trafficking at two Hampton Inn locations.  Taken chronologically, Jane Doe 3 alleges that she was trafficked at the Hampton Inn NDH during more than 10 separate stays between 2010 and 2012.  Jane Doe 3 Am. Compl. [Doc. 70] ¶ 185. Substantially overlapping with Jane Doe 3's allegations, Jane Doe 2 alleges that she was trafficked at the same Hampton Inn during more than 20 separate stays between 2011 and 2014.  Jane Doe 2 Am. Compl. [Doc. 90] ¶ 310.  Also, overlapping with both Jane Doe 2 and 3, Jane Doe 1 alleges that she was also trafficked at the same Hampton Inn during roughly 20 separate stays between 2011 and 2016.  Am. Compl. ¶ 311.  And Jane Doe 1 and Jane Doe 2 also allege that they were often both trafficked at that hotel at the same time.  *Id.* ¶ 312; Jane Doe 2 Am. Compl. ¶¶ 311, 314.

---

[10]*Jane Doe 2 v. Red Roof Inns, Inc., et al.*, Case No. 1:19-cv-03841, Doc. 90 (N.D. Ga.  Nov. 22, 2019); *Jane Doe 3 v. Red Roof Inns, Inc., et al.*, Case No. 1:19-cv-03843, Doc. 70 (N.D. Ga.  Nov. 21, 2019); *Jane Doe 4 v. Red Roof Inns, Inc., et al.*, Case No. 1:19-cv-03845, Doc. 75 (N.D. Ga.  Nov. 21, 2019).

During her stays at the Hampton Inn NDH, Jane Doe 1 was trafficked for sex to as many as 20 men a day, Am. Compl. ¶ 319, while Jane Doe 2 was trafficked to as many as 10 men a day.  Jane Doe 2 Am. Compl. ¶ 318.

Jane Doe 3 alleges that she was also trafficked for sex at the Hampton Inn CP during more than 20 separate stays between 2010 and 2012.[11]  Jane Doe  3, Am. Compl. ¶¶ 205–06.  Jane Doe 4 also alleges that she was trafficked at the same Hampton Inn on multiple separate stays between 2010 and 2013.  Jane Doe 4 Am. Compl. [Doc. 75] ¶ 202.  Jane Doe 3 and Jane Doe 4 were trafficked at that Hampton Inn on several of the same occasions, often with two other victims, both of whom were minors at the time.  *Id.* ¶ 203.  Jane Doe 3 and Jane Doe 4 were each trafficked to as many as 10 men a day at the Hampton Inn CP. Jane Doe 3 Am. Compl. ¶ 193; Jane Doe 4 Am. Compl. ¶ 210.

It is neither a speculative nor a conclusory allegation that Hilton knew or should have known that sex trafficking was taking place at the Hampton Inn NDH when three different victims allege that they were trafficked at that facility during more than 50 separate stays between 2010 and 2016.  This is especially so given that during many of those stays multiple victims and multiple traffickers were at the Hampton Inn NDH at the same time, with each

---

[11] "Hampton Inn CP" refers to the Hampton Inn located at 2775 Cumberland Parkway, Atlanta, Georgia 30339.

victim forced to have sex with 10 or more men a day.  The same is true for the

Hampton Inn CP, at which Jane Doe 3, Jane Doe 4 and two minors were

trafficked on dozens of occasions between 2010 and 2013.

In sum, Plaintiff has alleged a pattern of racketeering activity lasting at

least six years and including hundreds of occasions on which she and other

victims were forced to engage in commercial sex acts during dozens of stays at

these Hampton Inns and under circumstances in which Hilton knew the acts

were occurring, should have known those acts were occurring, or acted in

reckless disregard of their occurrence.

### B.    Hilton Argues the Wrong Standard for Corporate Liability.

The standard for corporate criminal liability is set forth in O.C.G.A. § 16-

2-22.  But that standard does not govern this civil RICO case.  In fact, *Williams*

*General Corporation v. Stone,* 632 S.E.2d 376 (2006) rejected the exact argument

that Hilton asserts:

> Appellees argue for application of OCGA § 16-2-22 which addresses
> criminal responsibility for corporations. . . . However, to construe the
> statute in the manner proposed by appellees would mandate that
> OCGA § 16-2-22 and other criminal statutes that limit imposition of
> corporation criminal liability would now be applied to civil suits
> which stem from criminal violations.  ***We have not previously***
> ***applied OCGA § 16-2-22 or any other criminal statutes to civil***
> ***suits brought by individuals, and we decline to do so here.***

632 S.E.2d at 378 (emphasis added).  The unanimous Supreme Court also made

1830740.6

16

it clear that it was disapproving language *Clark v. Security Life Insurance Co. of America,* 509 S.E.2d 602, 604–05 (Ga. 1998) on the precise question at issue:

> Furthermore, in reaching its conclusion, the Court of Appeals relied heavily on language contained in footnote (11) of *Clark v. Security Life Insurance Co.,* 270 Ga. 165(2), (n.11), 590 S.E.2d 602 (1998) that:
>
>> A corporation may also face prosecution under O.C.G.A. § 16-2-22(a)(1) . . . RICO, however, is not such a statute because O.C.G.A. § 16-4-4(sic) prohibits only 'persons' from engaging in racketeering activity.
>
> This language, whether considered dicta or, as appellees argue, part of the holding in *Clark*, adds confusion to a straightforward interpretation of the RICO statute.  In accordance with our holding and in an effort to further clarify O.C.G.A. § 16-14-1 et seq., we hereby disapprove the language in footnote (11) relied upon by the Court of Appeals.

632 S.E.2d at 378.

The footnote in *Clark* cited *Cobb County v. Jones Group P.L.C.,* 460 S.E.2d 516 (Ga. Ct. App. 1995), the case relied upon by Hilton.  It is clear that, in disapproving of the language in *Clark*, *Williams General* likewise disapproved of *Jones Group*.

Hilton's argument concerning corporate liability fails because it is based upon a standard that has been rejected by the Supreme Court of Georgia and therefore has no application to this civil RICO suit.

## C.    Hilton's Conspiracy Argument is Unavailing.

Hilton ignores the fact that, as members of conspiracies to violate RICO, they are responsible for all acts committed in furtherance of the criminal endeavor, including those of co-conspirators.[12]  In fact, there is no requirement that each conspirator commit a predicate act, only that an overt act be committed by one member of the conspiracy of which they were a part.  *Pasha*, 616 S.E.2d at 138. ("Thus, Pasha's argument is unavailing, since there is no requirement in a conspiracy case that the State prove that Pasha personally committed the underlying predicate offenses.").

Hilton relies heavily upon a federal RICO case, *American Dental Association v. Cigna Corporation*, 605 F.3d 1283 (11th Cir. 2010), to argue that Plaintiff does not sufficiently allege a conspiracy.  *American Dental,* however, is inapposite.  In that case, the Plaintiff alleged a conspiracy between various dental insurance companies, each of which was a competitor of the other.  *Id*. at 1286.  In rejecting the conspiracy allegations in *American Dental*, the court noted that nothing more than parallel conduct by the competing insurance companies was alleged, and that such conduct could have been both lawful and independently adopted.  *Id.* at 1295.  That is not the case here.  First, the sex

---

[12] *Akintoye,* 798 S.E.2d at 724; *Pasha*, 616 S.E.2d at 138.

trafficking alleged here could not be lawful.  Second, the conspiracy alleged here is not between Hilton and its competitors, it is between Hilton and the sex traffickers who operated for years at its facilities.  Third, Plaintiff alleges details sufficient establishing that Hilton knew the sex trafficking was occurring, citing not only its frequency and duration but also complaints to Hilton and the knowledge of Hilton's own inspectors.

Fourth, Hilton argues based on *American Dental* that a "meeting of the minds" is required for a RICO conspiracy.  But Georgia law is directly to the contrary.  *Kilgore v. State,* 305 S.E.2d 82, 90 (Ga. 1983)("The type of agreement necessary to form a conspiracy is not the 'meeting of the minds' necessary to form a contract and may be a 'mere tacit understanding between two or more people that they will pursue a particular criminal objective.'").  This rule applies to RICO conspiracies.  *Akintoye,* 798 S.E.2d at 780–81 (quoting *Kilgore).*

## III.    Plaintiff has Properly Alleged a Negligence Claim Against Hilton.

### A.    Plaintiff's Negligence Claim is Timely.

From 2011 to 2016, Plaintiff was trafficked at the Hampton Inn NDH on around 20 separate occasions.  Am. Compl. ¶ 311.  Hilton asserts that because the statute of limitation for a negligence claims is two years, O.C.G.A. § 9-3-33, Plaintiff's negligence claim is time-barred.  Hilton fails to recognize, however, that the limitations period for Plaintiff's claim was tolled by O.C.G.A. § 9-3-99

for six years because it arises out of crimes committed against her.[13]   As a result, Plaintiff had eight years to timely assert her negligence claim.

The Court of Appeals of Georgia examined the scope of O.C.G.A. § 9-3-99 tolling in *Harrison v. McAfee*, 788 S.E.2d 872, 873 (Ga. Ct. App. 2016).   In that case, an unknown perpetrator shot the plaintiff in the arm while he was at the defendant's bar.   *Id.*   More than two years later the plaintiff filed a premises liability lawsuit against the bar.   *Id.*   The *Harrison* court held the plaintiff's claim was timely because he was a victim of an alleged crime and his lawsuit asserted a tort claim arising out of the facts and circumstances related to the commission of that crime.   *Id.* at 876, 878–79.   The court held that § 9-3-99 tolled the limitation period even though the defendant was not the perpetrator of the crime, *id.* at 876, and even though there was no prosecution of the crime.   *See id.* at 873 (unknown perpetrator had "yet to be arrested or prosecuted").

Here, Plaintiff is the "victim of [] alleged crime[s]," O.C.G.A. § 9-3-99, at the Hampton Inn NDH and her cause of action "arises out of the facts and

---

[13] O.C.G.A. § 9-3-99 provides that:

> The running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years.

1830740.6

circumstances relating to the commission of such alleged crime[s]." *Id.* The

limitation period for her negligence claim was tolled for six years because no

prosecution of those crimes has yet become final. *Id.* Therefore, her negligence

claim is time-barred only to the extent it relates to crimes occurring more than

eight years prior to filing this action. Plaintiff's negligence claim arising out of

crimes committed at the Hampton Inn NDH from 2012 to 2016 as well as some

crimes committed in 2011, are timely.

**B.      Hilton Owed a Duty of Care to Protect Plaintiff against an
         Unreasonable Risk of Harm.**

Hilton managed, supervised, oversaw, and/or controlled the operation of

the Hampton Inn NDH, and "controlled the policies and standards applicable to

and enforced (or not enforced)" at that hotel. Am. Compl. ¶¶ 61, 309, 775.

Hilton had supervisory control and authority over the hotel, its employees, and

contractors. *Id.* ¶¶ 776–77. Because Hilton had control over the premises, it

had a duty to exercise ordinary care to keep the premises and approaches safe.

*Westmoreland v. Williams*, 665 S.E.2d 30, 32 (Ga. Ct. App. 2008) ("Liability

under O.C.G.A. § 51-3-1 may arise when an occupier of land has personal charge

of or exercises the right of management or control over the property in

question."); *see also Stelly v. WSE Prop. Mgmt., LLC*, 829 S.E.2d 871, 875 (Ga.

Ct. App. 2019) (trial court erred by concluding defendant owed no duty to

1830740.6

plaintiff because issue of fact remained as to whether defendant exercised sufficient control over premises).

Plaintiff has also alleged that Hilton breached its duty to properly train employees at the Hampton Inn NDH to observe and report potential threats to the safety of invitees.  Am. Compl. ¶ 783.  Because Plaintiff alleged that Hilton controlled the manner in which its franchisee executed its work, Hilton "can be held liable for the negligent training and supervision of franchisee employees." *New Star Realty, Inc. v. Jungang PRI USA, LLC*, 816 S.E.2d 501, 513 (Ga. Ct. App. 2018) (citing *Hyde v. Scholtzsky's, Inc.*, 561 S.E.2d 876 (Ga. Ct. App. 2002)).

Hilton asks this Court to ignore Plaintiff's allegations, and to instead adopt Hilton's assertion that "Hilton does not . . . operate, manage, or control the [Hampton Inn NDH]," Mot. to Dismiss at 22, and rule that as a matter of law Plaintiff cannot present evidence establishing that Hilton owed her a duty.  Yet Hilton fails to cite a single case that would support such a holding.  What the evidence in this case will establish cannot be assessed on a motion to dismiss.

Hilton also contends that because the Hampton Inn NDH was a franchised location, Hilton cannot be liable for the conduct of its franchisee.  *Id.* Of course, the existence of a franchise agreement does not immunize Hilton for the conduct of its franchisees as a matter of law, and Hilton cites no case to support such a position.

1830740.6

22

**IV.   Hilton is Responsible for its Conduct and the Conduct of its Agents and Co-Conspirators.**

Hilton incorrectly contends that all of Plaintiff's claims against it rely on "indirect liability." Mot. to Dismiss at 21. Hilton again attempts to rewrite Plaintiff's allegations. Plaintiff has alleged that Hilton managed, supervised, oversaw, and/or controlled the operation of the Hampton Inn NDH. Am. Compl. ¶¶ 61, 309, 775. As discussed above, Plaintiff has also alleged that Hilton—both knowingly and negligently—directly benefitted from a sex trafficking venture in violation of both the TVPRA and Georgia RICO.

Further, beyond actions taken directly by Hilton, it may also be held liable for the conduct of its agents. As Hilton acknowledges, an agency relationship can arise where a principal controls the "time, manner, and method of the franchisee's day-to-day operations." Mot. to Dismiss at 23 (quoting *DaimlerChrysler Motors Co., LLC v. Clemente*, 668 S.E.2d 737, 745 (Ga. Ct. App. 2008)). Here, Plaintiff has alleged that Hilton exercised day-to-day control over the operation of the Hampton Inn NDH by maintaining supervisory control and authority over the hotel, its employees, and contractors. Am. Compl. ¶¶ 61, 309, 775–77. And Hilton fails to cite a single case in which a court has determined on a motion to dismiss that such allegations are insufficient to establish agency or vicarious liability.

1830740.6

Further, an agency relationship also arises when a person "subsequently ratifies the acts of another in his behalf."  O.C.G.A. § 10-6-1.

> Whether a ratification occurred is generally a question of fact for the jury. Ratification may occur if a business entity accepts the benefits of an act done by another on its behalf, although that person had no actual or apparent authority to act for the business.
> . . .
> A presumption of ratification can arise from slight acts of confirmation, or from mere silence or acquiescence, or where the principal receives and holds the fruits of the agent's act.

*Multi-Media Holdings, Inc. v. Piedmont Ctr., 15 LLC*, 583 S.E.2d 262, 264 (Ga. Ct. App. 2003) (internal punctuation, citation and footnotes omitted).  Plaintiff has alleged that Hilton knowingly received and retained the benefit of a sex trafficking venture in the form of a portion of the room rental fees generated by that venture.

Hilton also contends that even if an agency relationship existed between it and others that facilitated the sex trafficking venture at the Hampton Inn NDH, Plaintiff has not alleged that Hilton's agents were acting within the scope of its business and in furtherance of its business.  Mot. to Dismiss at 23.  That is precisely what Plaintiff has alleged.  Hilton is in the business of renting hotel rooms.  Am. Compl. ¶ 61.  It does not derive revenue from rooms sitting empty. Sex trafficking at the Hampton Inn NDH furthered Hilton's business through the rental of rooms, from which Hilton directly obtained revenue.  *Id.* ¶¶ 308,

1830740.6

326.  The cases on which Hilton relies—in which the businesses at issue received no benefit from its agent's improper conduct—are inapposite.  *See Piedmont Hosp., Inc. v. Palladino*, 580 S.E.2d 215, 216 (Ga. Ct. App. 2003) (employee's actions "did nothing to further the employer's business").  As Plaintiff has alleged, the sex trafficking venture at the Hampton Inn NDH directly benefitted Hilton's bottom line.

## CONCLUSION

Plaintiff has adequately alleged facts to support each element of her claims.  Hilton's motion to dismiss should be denied.

This 30th day of December, 2019.

/s/ *Tiana S. Mykkeltvedt*
John E. Floyd
Georgia Bar No. 266413
floyd@bmelaw.com
Manoj S. Varghese
Georgia Bar No. 734668
varghese@bmelaw.com
Tiana S. Mykkeltvedt
Georgia Bar No. 533512
mykketlvedt@bmelaw.com
Amanda Kay Seals
Georgia Bar No. 502720
seals@bmelaw.com
Michael R. Baumrind
Georgia Bar No. 960296
baumrind@bmelaw.com

1830740.6

BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street, N.W., Suite 3900
Atlanta, GA  30309
(404) 881-4100 – Telephone
(404) 881-4111 – Facsimile

Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Trinity Hundredmark
Georgia Bar No. 140808
thundred@atclawfirm.com

ANDERSEN, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia  30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff Jane Doe 1*

## **CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing PLAINTIFF'S

RESPONSE TO DEFENDANTS HILTON FRANCHISE HOLDINGS LLC'S,

HILTON DOMESTIC OPERATING COMPANY, INC.'S AND HILTON

WORLDWIDE HOLDINGS INC.'S MOTION TO DISMISS PLAINTIFF'S

AMENDED COMPLAINT was prepared using 13-point Century Schoolbook font

and complies with the margin and type requirements of this Court, per L.R. 5.1

(N.D. Ga.)

This 30th day of December, 2019.

*/s/ Tiana S. Mykkeltvedt*
Tiana S. Mykkeltvedt
Georgia Bar No. 533512

1830740.6

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of December, 2019, I filed

PLAINTIFF'S RESPONSE TO DEFENDANTS HILTON FRANCHISE

HOLDINGS LLC'S, HILTON DOMESTIC OPERATING COMPANY, INC.'S

AND HILTON WORLDWIDE HOLDINGS INC.'S MOTION TO DISMISS

PLAINTIFF'S AMENDED COMPLAINT using the Court's CM/ECF system,

which will automatically email the document to all counsel of record.

This 30th day of December, 2019.

/s/ Tiana S. Mykkeltvedt
Tiana S. Mykkeltvedt
Georgia Bar No. 533512