**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| Jane Doe 1, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. |
| Red Roof Inns, Inc., *et al.*, | § | 1:19-cv-03840-WMR |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |
| | § | |

**DEFENDANTS HILTON FRANCHISE HOLDING LLC'S,
HILTON DOMESTIC OPERATING COMPANY INC.'S,
AND HILTON WORLDWIDE HOLDINGS INC.'S
REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS UNDER RULE 12(B)(6)**

# TABLE OF CONTENTS

**Page**

I.     PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE HILTON'S INDIRECT LIABILITY ..................................................1

II.    PLAINTIFF'S TVPRA CLAIMS FAIL .......................................5

    A.    Plaintiff has not plausibly alleged that Hilton is a perpetrator under Section 1591(a)(1)...................................................5

    B.    Plaintiff has not sufficiently alleged that Hilton is a knowing beneficiary under either Section 1591(a)(2) or Section 1595(a)..........6

III.    PLAINTIFF'S STATE LAW CLAIMS FAIL ............................................10

    A.    The negligence claim is both time-barred and insufficiently alleged................................................................10

    B.    The Georgia RICO claims are insufficiently alleged.........................12

CONCLUSION .........................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acharya v. 7-Eleven, Inc.*,
   No. 1:18-cv-08010-PAC, 2019 WL 6830203 (S.D.N.Y. Dec. 13,
   2019) .................................................................................................................3

*Akintoye v. State*,
   798 S.E.2d 720 (Ga. Ct. App. 2017)................................................................15

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ....................................................................3, 15

*Am. Gen. Life & Accident Ins. Co. v. Ward*,
   509 F. Supp. 2d 1324 (N.D. Ga. Mar. 12, 2007)................................................14

*Andrade v. Arby's Rest. Grp., Inc.*,
   2015 WL 6689475 (N.D. Cal. Nov. 3, 2015) .......................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................2, 15

*Bistline v. Parker*,
   918 F.3d 849 (10th Cir. 2019) ............................................................................6

*Bricker v. R&A Pizza, Inc.*,
   804 F. Supp. 2d 615 (S.D. Ohio 2011) ...............................................................3

*Cha v. Hooters of Am., LLC*,
   No. 12-CV-4523(DLI)(JMA), 2013 WL 5532745 (E.D.N.Y. Sept.
   30, 2013) ..............................................................................................................3

*Clark v. Sec. Life Ins. Co. of Am.*,
   270 Ga. 165 (1998) ...........................................................................................13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Duvall v. Cronic*,
    820 S.E.2d 780 (Ga. Ct. App. 2018) ...................................................................13

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) .........................................................7, 8, 10

*H.H. v. G6 Hospitality, LLC*,
    No. 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) ...............6, 8, 9

*Harrison v. McAfee*,
    788 S.E.2d 872 (Ga. Ct. App. 2016)....................................................................11

*Howell v. Chick-Fil-A, Inc.*,
    No. 92-30188-RV, 1993 WL 603296 (N.D. Fla. Nov. 1, 1993) ...........................3

*Karnauskas v. Columbia Sussex Corp.*,
    No. 09-cv-7104, 2012 WL 234377 (S.D.N.Y. Jan. 24, 2012).............................2

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
    No. 2:19-CV-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019) ................6, 8, 9

*N.T. v. Taco Bell Corp.*,
    No. 19-1028-JWB, 2019 WL 4168807 (D. Kan. Sept. 3, 2019).........................2

*Piedmont Hosp., Inc. v. Palladino*,
    580 S.E.2d 215 (Ga. 2003) ..................................................................................5

*Ricchio v. McLean*,
    853 F.3d 553 (1st Cir. 2017)..................................................................................6

*Rosemond v. United States*,
    572 U.S. 65 (2014)................................................................................................8

*Rosen v. Protective Life Ins. Co.*,
    817 F. Supp. 2d 1357 (N.D. Ga. 2011)...............................................................15

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*SEC v. Edwards,*
    540 U.S. 389 (2004)................................................................8

*Stopanio v. Leon's Fence & Guardrail, LLC,*
    815 S.E.2d 232 (Ga. Ct. App. 2018)...................................11

*Summit Automotive Grp. v. Clark,*
    681 S.E.2d 681 (Ga. Ct. App. 2009)....................................4

*Texaco Inc. v. Dagher,*
    547 U.S 1 (2006) ................................................................8

*United States v. Afyare,*
    632 F. App'x 272 (6th Cir. 2016) .......................................8

*United States v. Bestfoods,*
    524 U.S. 51 (1998)...............................................................4

*Williams Gen. Corp. v. Stone,*
    632 S.E.2d 376 (2006) ......................................................13

**STATUTES**

18 U.S.C. § 1591(a)(1)..........................................................5, 6

18 U.S.C. § 1591(b) ..............................................................5, 6

O.C.G.A § 9-3-33................................................................10, 11

O.C.G.A. § 16-2-22(a)(2) ........................................................13

O.C.G.A. § 16-5-46..................................................................14

O.C.G.A. § 16-14-4..................................................................12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

O<span style="font-variant:small-caps">THER</span> A<span style="font-variant:small-caps">UTHORITIES</span>

*Joint Venture*, Black's Law Dictionary (11th ed. 2019)............................................8

Restatement (Second) of Torts § 491 cmt. c (1965)..................................................8

Federal Rule of Civil Procedure 12(b)(6) ................................................................12

COME NOW Hilton Franchise Holding LLC, Hilton Domestic Operating Company Inc., and Hilton Worldwide Holdings Inc. (collectively, "Hilton"), and file the following reply to Plaintiff Jane Doe 1's response to Hilton's Motion to Dismiss (Doc. 185).  Hilton neither owns nor operates the HI Druid Hills.  HI Druid Hills is an independently owned franchise.  The Amended Complaint does not contain any well-pleaded allegations that *Hilton* knew of Plaintiff's trafficking, actively facilitated it, or intended to benefit from it.  The Amended Complaint also lacks any well-pleaded allegations that justify departing from the general rule that a franchisee is not an agent of the franchisor.  As a matter of law, these deficiencies are fatal to Plaintiff's claims and the Amended Complaint should be dismissed.

## I.     PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE HILTON'S INDIRECT LIABILITY

Although Plaintiff insists that Hilton is directly liable, *see* Doc. 185 at 23, her focus on indirect liability illustrates that Hilton is only a proper defendant if it is liable through the HI Druid Hills, *id.* at 23–25.  "[W]hether an agency relationship exists [turns on] whether a principal controls the 'time, manner, and method of [the franchisee's] day-to-day operations,' 'as distinguished from the right merely to require results in conformity to the contract.'"  Doc. 160-1 at 23 (citations omitted).[1]  Hilton

---

[1] Plaintiff complains that "Georgia case law cited by Hilton does not apply to Plaintiff's claims under the TVPRA."  Doc. 185 at 11.  Both Georgia and federal common law

explained that Plaintiff has not adequately "allege[d] that Hilton exerted control over the method and manner by which the HI Druid Hills ran its day-to-day operations [or] . . . that Hilton supervised the front-desk employees." *Id.*

In response, Plaintiff asserts that she *has* sufficiently alleged as much, hinging her case on five conclusory statements that allege Hilton, among other defendants:

- "[O]wned, managed, supervised, operated, oversaw, controlled the operation of, **and/or** [was] inextricably connected to the renting of rooms at" the HI Druid Hills, Am. Compl. ¶ 61 (emphasis added).
- "[C]ontrolled the policies and standards applicable to and enforced (or not enforced) at the [HI Druid Hills], as well as the training of its managers and employees," *id.* ¶ 309.
- "[O]wned and/or managed and/or operated and/or oversaw and/or controlled the operation of" the HI Druid Hills, *id.* ¶ 775.
- "[H]ad supervisory control over" the HI Druid Hills, *id.* ¶ 776.
- "[H]ad supervisory control and authority over employees, contractors and others at" the HI Druid Hills, *id.* ¶ 777.

Doc. 185 at 23; *see also id.* at 2, 6, 8, 9, 21, 24 (invoking the same paragraphs).

These paragraphs are no more than "labels and conclusions," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and on a motion to dismiss, courts must "eliminate

---

apply the same treatment to franchisor-franchisee relationships. *See, e.g.*, *N.T. v. Taco Bell Corp.*, No. 19-1028-JWB, 2019 WL 4168807, at *3–4 (D. Kan. Sept. 3, 2019) (collecting case law throughout the United States and noting that it "requires a finding that a franchisor retained control over the particular aspect of the business that caused harm before a franchisor will be found liable"); *Karnauskas v. Columbia Sussex Corp.*, No. 09-cv-7104, 2012 WL 234377, at *3 (S.D.N.Y. Jan. 24, 2012) (same).

any allegations in the complaint that are merely legal conclusions," *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).  These allegations are also in tension with the essence of franchise relationships.  *See, e.g.*, *Howell v. Chick-Fil-A, Inc.*, No. 92-30188-RV, 1993 WL 603296, at *2 (N.D. Fla. Nov. 1, 1993).  In addition, paragraphs 61 and 775—on which Plaintiff heavily relies—provide Hilton with no notice of which of the many defendants Plaintiff alleges owned "and/or" managed "and/or" operated "and/or" oversaw "and/or" controlled "and/or" supervised" and/or "were inextricably connected to" the HI Druid Hills.  None of the paragraphs alleges control over the day-to-day operations at the HI Druid Hills.  Courts routinely dismiss complaints for exactly these types of deficient allegations.[2]  Plaintiff "is not required to prove her allegations at this stage, but she must allege facts to show plausible claims against" Hilton.  *Andrade*, 2015 WL 6689475, at *4.  She has not done so.

---

[2] *See, e.g.*, *Bricker v. R&A Pizza, Inc.*, 804 F. Supp. 2d 615, 621–622 (S.D. Ohio 2011) (conclusory statement that defendants were agents was insufficient); *Cha v. Hooters of Am., LLC*, No. 12-CV-4523(DLI)(JMA), 2013 WL 5532745, at *3 (E.D.N.Y. Sept. 30, 2013) (allegations that a franchisor "controls the employment training aspect of the operations of its franchisees" and provides "initial and on-going support" were insufficient); *Andrade v. Arby's Rest. Grp., Inc.*, 2015 WL 6689475, at *3 (N.D. Cal. Nov. 3, 2015) (conclusory allegations that defendants were agents of each other and controlled employee work conditions were insufficient); *Acharya v. 7-Eleven, Inc.*, No. 1:18-cv-08010-PAC, 2019 WL 6830203, at *3 (S.D.N.Y. Dec. 13, 2019) (allegations that a franchisor created and implemented policies at franchise location and had the right to train the franchisee's employees were insufficient).

Seeking other ways to establish agency, Plaintiff relies on Georgia law to suggest that ratification occurred because "Hilton knowingly received and retained the benefit of a sex trafficking venture in the form of a portion of the room rental fees generated by that venture."   Doc. 185 at 24.   But the Amended Complaint never alleges ratification.   And if this new theory were correct, every franchisee would be the franchisor's agent because the franchisor generally receives and retains royalty payments generated by the franchisee's business.   *Cf. Summit Automotive Grp., LLC v. Clark*, 681 S.E.2d 681, 687 (Ga. Ct. App. 2009) ("A franchisor does not become liable for the acts of its franchisee merely because of the franchisor/franchisee relationship.").[3]   That is not the law.

Finally, Plaintiff insists that the two rogue HI Druid Hills employees acted within the scope of their employment and furthered Hilton's business when they took money and drugs as bribes in exchange for concealing her trafficking or providing discounted rooms.   Doc. 185 at 24–25.   Plaintiff ignores that Hilton is injured, not benefited, by trafficking that occurs at Hilton franchise hotels and by the provision of discounted rooms.   Doc. 160-1 at 10–11.   But more fundamentally, Plaintiff misses the point: improper conduct "for purely personal reasons," such as accepting money and drugs to

---

[3] Indeed, every subsidiary would be the parent company's agent for the same reason. *Cf. United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (the general rule is that "a parent corporation . . . is not liable for the acts of its subsidiaries").

cover up trafficking, is "entirely disconnected from the scope of . . . employment" and cannot be the basis for an employer's liability. *Piedmont Hosp., Inc. v. Palladino*, 580 S.E.2d 215, 217 (Ga. 2003). Plaintiff has failed to adequately allege that Hilton is indirectly liable. All claims against Hilton should therefore be dismissed.

## II.   PLAINTIFF'S TVPRA CLAIMS FAIL

In any event, Plaintiff has not plausibly alleged TVPRA claims against Hilton.

### A.   Plaintiff has not plausibly alleged that Hilton is a perpetrator under Section 1591(a)(1).

Plaintiff spends only three paragraphs defending what would be an unprecedented application of 18 U.S.C. § 1591(a)(1), which is a *criminal* provision designed to target *actual* perpetrators (and their co-conspirators) of trafficking—as relevant here, "[w]hoever knowingly . . . harbors [or] maintains . . . by any means" a person "knowing" or "in reckless disregard of the fact that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act." A violation carries a mandatory prison term of 15 years to life. 18 U.S.C. § 1591(b).

Plaintiff has not plausibly alleged an actual perpetrator claim. Significantly, Plaintiff does not explain how Hilton could be deemed to actually know of or recklessly disregard *her* trafficking, when she stayed at the HI Druid Hills an average of *four times* a year. Am. Compl. ¶ 311; Doc. 160-1 at 8. And assuming Hilton inspectors visited

the HI Druid Hills *while she was there*, Plaintiff does not allege that they would have entered guest rooms (with guests present) to witness the red flags of *her* trafficking. *Id.* at 8 n.4.  Moreover, Plaintiff ignores that the rogue HI Druid Hills employees and traffickers worked to *hide* the trafficking from public view.  *Id.  See also* Am. Compl. ¶ 314. Taking these deficiencies together, there is no plausible allegation that Hilton *knew* or *recklessly disregarded* that Plaintiff would be forced to engage in commercial sex acts, much less that Hilton knowingly harbored and maintained Plaintiff.[4]

**B.     Plaintiff has not sufficiently alleged that Hilton is a knowing beneficiary under either Section 1591(a)(2) or Section 1595(a).**

Neither has Plaintiff adequately alleged that Hilton (1) knowingly benefited from

---

[4] The dictionary definitions and case law that Plaintiff invokes are wholly inapposite. Plaintiff asserts that "harbor" means to "provide a place, home, or habitat for," and "maintain" means to "keep in existence."  Doc. 185 at 5 n.4.  Those definitions are overbroad and inapt because they would threaten to criminalize the Good Samaritan who takes in a victim knowing full well that her trafficker will attempt yet again to force the victim to commit commercial sex acts.  Moreover, Plaintiff's argument based on these definitions ignores the intent requirement in the statute.  As for the cited case law, neither *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019), nor *H.H. v. G6 Hospitality, LLC*, No. 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019), involved an actual perpetrator claim under Section 1591(a)(1).  And this case is nothing like the two remaining cases.  *See Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) (plaintiff alleged that defendants exchanged high-fives while referring to "getting this thing going again," and ignored plaintiff's plea for help in escaping while being aware of her obvious physical deterioration and abuse); *Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019) (plaintiffs alleged that the defendant lawyers were specifically retained to—and did in specific instances—enable and shield Warren Jeffs' child rape and forced labor).

(2) its participation in a venture that (3) Hilton knew or recklessly disregarded (§ 1591(a)(2)) or knew or should have known (§ 1595(a)) had engaged in trafficking.

*First*, Plaintiff has failed to establish that Hilton participated in a venture with her trafficker.  This element "requires an overt act that furthers the sex trafficking aspect of the venture, not mere negative acquiescence."  Doc. 160-1 at 13–14 (quoting *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)) (quotation marks omitted).  "The participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture."  *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019).  Because Plaintiff does not allege that Hilton committed "any overt acts in furtherance of sex trafficking," Hilton did not participate in a venture with Plaintiff's traffickers.  Doc. 160-1 at 14.  Plaintiff offers no adequate response.  She reprises her allegation that Hilton knowingly harbored and maintained her, Doc. 185 at 7–8, which fails for the reasons discussed above, *see* Section II.A, *supra*.  Plaintiff then claims that Hilton assisted, supported, and facilitated the provision of rooms for trafficking at the HI Druid Hills "in exchange for" a percentage of the rental fee.  *Id.* at 8.  But none of the cited paragraphs alleges such an agreement, nor do they plausibly allege that Hilton had a role in guest room rentals or any role in the day-to-day operations of the HI Druid Hills, *see* Section I,

*supra*.  Plaintiff also attempts to distinguish *Afyare* and *Geiss* on the ground that, "[u]nlike the defendants in *Afyare* and the Harvey Weinstein cases, Hilton is not in business with the other [Hilton-related defendants] to make movies or play soccer." *Id.* at 9.  But neither decision turned on soccer and movies.  In each case, the court relied on the statutory text and principles of statutory interpretation.

Lastly, Plaintiff invokes *M.A.* and *H.H.* to suggest that a franchisee's rental of a hotel room to a trafficker constitutes participation in a venture with that trafficker. *Id.* at 8–9.  But those cases incorrectly depart from the ordinary meaning of those terms. To *participate* in a venture—commonly defined as an agreement with a common purpose—a defendant must (as held in *Afyare* and *Geiss*) perform an overt act with the intent to carry out that common purpose. *See Joint Venture*, Black's Law Dictionary (11th ed. 2019); *see also* Restatement (Second) of Torts § 491 cmt. c (1965).[5]

---

[5] That participation in a venture involves an overt act in furtherance of an agreement to pursue a common purpose is familiar in federal law. *See, e.g.*, *Rosemond v. United States*, 572 U.S. 65, 72–75, 77–78 (2014) (aiding and abetting liability); *Texaco Inc. v. Dagher*, 547 U.S 1, 5–6 (2006) (Sherman Act); *SEC v. Edwards*, 540 U.S. 389, 395 (2004) (securities laws).  Plaintiff suggests that requiring a defendant to knowingly participate in a venture with the trafficker would nullify the requirement that the defendant only "should have known" that the venture engaged in sex trafficking. Doc. 185 at 8 n.5.  That is incorrect.  For a defendant to have participated in a venture, it must have (1) entered into an agreement with a common purpose, and (2) performed an overt act with the intent to further that agreement.  If the defendant enters into an agreement with the common purpose of trafficking (and performs an overt act to that end), the defendant will automatically fall within the "knew or should have known" requirement.  But if—as here—there are no well-pleaded, plausible allegations that the

Moreover, even those cases acknowledged that, "[i]n the absence of a direct association, Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 2019 WL 4929297, at *8; *H.H.*, 2019 WL 6682152, at *4. Roughly four stays per year, Am. Compl. ¶ 311, do not show such a relationship.

*Second*, Plaintiff has not sufficiently alleged that Hilton actually or constructively knew of, or recklessly disregarded, her trafficking. Doc. 160-1 at 13–15. As described above, *see* Section II.A, *supra*, there are numerous reasons why this is so, not the least of which is that Plaintiff alleges that the rogue employees and traffickers endeavored to *hide* the trafficking.

*Third*, Plaintiff has not sufficiently established that Hilton knowingly benefited from her trafficking. A knowing benefit requires "a causal relationship" between a defendant's "affirmative conduct furthering the sex-trafficking venture and receipt of

---

defendant did so, then the plaintiff must show that the defendant knowingly participated in some other venture that the defendant knew or should have known engaged in sex trafficking. In that scenario, to be liable under Section 1595(a), the defendant must have knowingly entered into an agreement with a common purpose, and must have performed an overt act in furtherance of that purpose that also advances what the defendant knew or should have known is sex trafficking (and must have knowingly benefited). And there, the "knew or should have known" requirement has substantial work to do.

a benefit, with actual or . . . constructive knowledge of that causal relationship." *Geiss*, 383 F. Supp. 3d at 169.   That standard is not met here: Hilton does not benefit from trafficking because Hilton must expend significant resources to combat trafficking; trafficking risks guest safety and loss of reputation; and in this case, Hilton actually *lost* money because rogue employees discounted rates in exchange for drugs and money.  Doc. 160-1 at 10–11.  Any possible benefit that might have flowed through the franchise contract "came *in spite* of trafficking, not because of it."  *Id.* at 12. Plaintiff ignores these facts and asserts in conclusory fashion that it is sufficient that "Hilton knew of the sex trafficking venture at the [HI Druid Hills] and that it received a percentage of the money for the room rental in which Plaintiff's trafficking occurred." Doc. 185 at 7.   But Plaintiff has not plausibly alleged that Hilton actually or constructively knew of her trafficking.  And Hilton did not benefit *at all*.

## III.   PLAINTIFF'S STATE LAW CLAIMS FAIL

Plaintiff's negligence and RICO claims also are not plausibly alleged.

### A.    The negligence claim is both time-barred and insufficiently alleged.

Plaintiff's negligence claim is barred by a two-year statute of limitations, and is not cognizable because Hilton did not owe Plaintiff a duty.  Doc. 160-1 at 21. Plaintiff's responses on both issues miss the mark.

*First*, Plaintiff does not dispute that, if the limitations period in O.C.G.A § 9-3-33 applies, it bars her negligence claim.  Instead, she asserts that her claim was tolled

under Section 9-3-99.  Doc. 185 at 19–21.  Section 9-3-99 provides tolling (up to six years) for a tort action brought by a crime victim arising from the circumstances of the crime, "until the prosecution of such crime or act has become final or otherwise terminated."  "By its plain language, the statute contemplates extending the time in which a victim may file a tort action where there are *pending criminal charges* arising out of the same facts or circumstances."  *Stopanio v. Leon's Fence & Guardrail, LLC*, 815 S.E.2d 232, 236 (Ga. Ct. App. 2018) (emphasis added).[6]  Plaintiff has not alleged that there are pending criminal charges or even a pending criminal investigation.  *See also* Transcript of Proceedings at 34 (Oct. 23, 2019), Dkt. 63 ("I understand from plaintiff's counsel . . . that there is no parallel criminal proceeding.").  Section 9-3-99 therefore does not apply, and Section 9-3-33 bars Plaintiff's negligence claim.

*Second*, as to whether the negligence claim is cognizable, Plaintiff insists that Hilton owed her a duty because "Hilton managed, supervised, oversaw, and/or controlled the operation of the [HI Druid Hills], and 'controlled the policies and standards applicable to and enforced (or not enforced)' at that hotel."  Doc. 185 at 21.

---

[6] Plaintiff misconstrues *Harrison v. McAfee*, 788 S.E.2d 872 (Ga. Ct. App. 2016), to suggest that tolling applies "even [where] there was no prosecution of the crime."  Doc. 185 at 20.  The only question presented was whether the tort defendant had to be the alleged perpetrator of the underlying crime.  *Harrison*, 788 S.E.2d at 399.  The court was not presented with, and did not render judgment on, the question of whether tolling applies where a criminal prosecution was never pending.  *Id.* at 402–03.

But this argument rests on the same conclusory paragraphs that, as explained above, do not satisfy the Rule 12(b)(6) standard. *See* Section I, *supra*. Plaintiff also cites case law that says an occupier of land may owe a duty when it exercises a right of control. Doc. 185 at 21–22. But Plaintiff does not allege—nor could she—that Hilton occupies the HI Druid Hills. Finally, Plaintiff says that Hilton's position is that "Hilton cannot be liable for the conduct of its franchisee." *Id.* at 22. Not so. Hilton has explained the circumstances in which a franchisor can be liable. The flaw in the Amended Complaint is it fails to plausibly allege that any of those circumstances exist in this case.

### B.   The Georgia RICO claims are insufficiently alleged.

Plaintiff's Georgia RICO claims fare no better. Under Georgia RICO, it is "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a). A "racketeering activity," or "predicate act," is the commission of, the attempt to commit, or the solicitation or coercing of another to commit, a "crime which is chargeable by indictment" under a category of offenses. *Id.* § 16-14-3(5)(A)(i)-(xlii). It is also unlawful to conspire to violate the substantive provisions of Georgia RICO. *Id.* § 16-14-4(c). Hilton identified three flaws in Plaintiff's RICO claims, and Plaintiff either abandons her allegations or offers inadequate responses.

*First*, Plaintiff fails to allege that it is civilly liable under RICO.  Doc. 160-1 at 17.  A company can be held civilly liable for a RICO violation only if "[t]he commission of the crime is authorized, requested, commanded, performed, or recklessly tolerated by the board of directors or by a managerial official who is acting within the scope of his employment in [sic] behalf of the corporation."  O.C.G.A. § 16-2-22(a)(2); *Clark v. Sec. Life Ins. Co. of Am.*, 270 Ga. 165, 167 (1998), disapproved of in part on other grounds by *Williams Gen. Corp. v. Stone*, 632 S.E.2d 376  (2006).

Plaintiff relies on *Williams* to suggest the Georgia Supreme Court has overturned this settled law.  Doc. 185 at 16–17.  But *Williams* addressed only the "narrow" question of whether a corporation is a "person" under Georgia RICO that can "be held directly liable for conspiring with its officers."  632 S.E.2d at 631.  That question is unrelated to the issue in this case, which is whether Hilton may be civilly liable for a RICO violation in the first place.  "Such liability attaches if the employer's board of directors or managerial official, acting within the scope of that person's employment, authorized, requested, commanded, performed, or recklessly tolerated the employee's acts."  *Duvall v. Cronic*, 820 S.E.2d 780, 790 (Ga. Ct. App. 2018) (describing Georgia RICO after *Williams*).  "There is simply no allegation in the Amended Complaint that any agent of Hilton—let alone a *director* or *manager* as required by statute— committed any of the predicate criminal offenses."  Doc. 160-1 at 18.  And that

-13-

requirement is especially important here where *no Hilton employee has ever interacted with Plaintiff or her traffickers*.  Hilton therefore cannot be liable under Georgia RICO.

*Second*, "there is not a single well-pleaded allegation that Hilton committed a predicate act of racketeering activity."  Doc. 160-1 at 16.  In response, Plaintiff abandons any defense of the entire list of predicate acts alleged in the Amended Complaint.  Am. Compl. ¶¶ 534–552.  Instead, Plaintiff only specifically defends her allegation that Hilton is liable under the TVPRA and O.C.G.A. § 16-5-46 (Georgia's version of the TVPRA).  Doc. 185 at 13–16.  But in mounting her defense, Plaintiff attempts to bring in three pages of factual allegations concerning third parties not contained in her Amended Complaint.  *See id.*  A RICO plaintiff, however, "can only recover for injuries incurred as a result of predicate acts directed towards [herself], as opposed to predicate acts directed towards third parties."  *Am. Gen. Life & Accident Ins. Co. v. Ward*, 509 F. Supp. 2d 1324, 1331 (N.D. Ga. Mar. 12, 2007).  What is more, all of these new allegations describe trafficking in the abstract with no factual support, much less evidence that Hilton actually or constructively knew of the trafficking.  And if the allegations could be construed as anything more, they would fail for the same reasons that the TVPRA claims fail.  *See* Section II, *supra*.

*Third*, there are significant problems with Plaintiff's RICO conspiracy claim.  Doc. 160-1 at 18–20.  A person is liable for RICO conspiracy if they "knowingly and

willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." *Rosen v. Protective Life Ins. Co.*, 817 F. Supp. 2d 1357, 1382 (N.D. Ga. 2011). "[A]llegations of parallel conduct, accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy, [and] 'without [a] further circumstance pointing to a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory.'" *Am. Dental Ass'n*, 605 F.3d at 1294–95 (quoting *Twombly*, 550 U.S. at 557).[7]  There are no factual allegations that Hilton *knowingly* and *willfully* engaged in a common plan—a meeting of the minds—with traffickers.  Doc. 160-1 at 20.  At most, Plaintiff describes two rogue non-Hilton employees independently pursuing their own self-interests.  *Id.*  Because Plaintiff never alleges one interaction between Hilton and her traffickers, she has not sufficiently alleged that Hilton engaged in a RICO conspiracy.  *Rosen*, 817 F. Supp. 2d at 1382.

## CONCLUSION

For all of these reasons, Hilton respectfully asks that the Court dismiss Counts 22, 23, 24, 39, 40, and 47 against Hilton.

---

[7] Plaintiff argues *American Dental* is distinguishable because it refers to lawful independent conduct, and "the sex trafficking alleged here could not be lawful."  Doc. 185 at 18–19.  But *American Dental* said that the above principles are "especially true"—not only true—where the actions suggest "lawful, independent conduct."  605 F.3d at 1295.  Plaintiff also says that no meeting of the minds is required under Georgia RICO.  Doc. 185 at 19.  However, Plaintiff relies on a case that did not involve a RICO conspiracy.  *See Akintoye v. State*, 798 S.E.2d 720, 724–25 (Ga. Ct. App. 2017).

Dated: January 13, 2020

Respectfully submitted,

*/s/ Jamila M. Hall*

Jamila M. Hall
Georgia Bar No. 319053
JONES DAY
1420 Peachtree Street NE
Suite 800
Atlanta, GA 30309
Telephone:  +1.404.581.8465
Facsimile:  +1.404.581.8330
Email:  jhall@jonesday.com

Nicole M. Perry*
Texas State Bar No. 24056367
JONES DAY
717 Texas Street
Suite 3300
Houston, TX  77002
Telephone:  +1.832.239.3939
Facsimile:  +1.832.239.3600
Email:  nmperry@jonesday.com

Bethany K. Biesenthal*
Illinois Bar No. 6282529
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, IL 60601
Telephone:  +1.312.782.3939
Facsimile:  +1.312.782.8585
Email:  bbiesenthal@jonesday.com

*Admitted pro hac vice*

ATTORNEYS FOR DEFENDANTS HILTON FRANCHISE HOLDING LLC, HILTON DOMESTIC OPERATING COMPANY INC., AND HILTON WORLDWIDE HOLDINGS INC.

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia, that the foregoing document complies with the font and point selections approved by the Court in L.R. 5.1B. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

Prepared this 13th day of January, 2020.

*/s/ Jamila M. Hall*
Jamila M. Hall

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all attorneys of record in the above-captioned case.

*/s/ Jamila M. Hall*
Jamila M. Hall