# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JANE DOE 1,

          Plaintiff,

v.

RED ROOF INNS, INC., et al.,

          Defendants.

Civil Action No.
1:19-cv-03840-WMR

JURY TRIAL DEMANDED,
Pursuant to Fed. R. Civ. P. 38

## PLAINTIFF'S RESPONSE TO KUZZINS BUFORD, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

Binding Eleventh Circuit authority requires the motion for judgment on the pleadings filed by Defendant Kuzzins Buford, LLC ("Kuzzins") to be dismissed as procedurally premature because Kuzzins has not filed an answer to Plaintiff's Second Amended Complaint ("SAC").  Without an answer, the pleadings are not closed and the motion is improper.  *Lilian B. ex rel. Brown v. Gwinnett Cty. Sch. Dist.,* 631 F. App'x 851, 852–53 (11th Cir. 2015).  But even if the Court reached the merits of Kuzzins' arguments, it should deny the motion and permit Plaintiff to proceed with her claims under the Trafficking Victims Protection Act ("TVPRA"), Georgia RICO, and negligence.[1]

---

[1] The Court has already stayed this case during the pendency of Plaintiff's appeal of the Court's April 13, 2020 orders on Motions to Dismiss.  The Court's decision to stay this and related cases was a sound one, as the resolution of

## STATEMENT OF FACTS[2]

Plaintiff Jane Doe 1 was trafficked at Atlanta hotels from 2011 through 2016 where she was sold for commercial sex.  SAC, Doc. 305 ¶ 1.  Plaintiff's claims against Defendant Kuzzins Buford, LLC arise out of her trafficking at the Microtel Inn & Suites located at 1840 Corporate Boulevard NE, Atlanta, Georgia 30329 ("Microtel"), *id.* ¶ 172, which, at all relevant times was owned by Kuzzins. *Id.* ¶ 197

Kuzzins, a Georgia limited liability company, *id.* ¶ 23, entered into a management agreement with Essex, LLC ("Essex") for the day-to-day management, operation, and employment of staff at the Microtel.  *Id.* ¶¶ 198–99.  Acting as Kuzzins' agent, Essex employed the staff of the Microtel, *id.* ¶¶ 194, 198, 199, but Kuzzins contractually retained liability, agreeing that "[a]ll debts, obligations and other liabilities incurred by [Essex] in performance of its duties hereunder shall be incurred on behalf of Kuzzins." *Id.* ¶ 199.  That is, during the relevant time period, Kuzzins retained liability arising from the Microtel's ownership, operation, or management *and* the knowledge and actions of its managers and employees.

---

Plaintiff's appeal has the potential to moot or require the reconsideration of the issues now before the Court.

[2] Unless otherwise noted, pin citations to record refer to the page number affixed in the Court's CM/ECF heading and not to the numbers appearing in document footers.

As the owner of the Microtel, Kuzzins had, at a minimum, constructive knowledge of crimes there, including sex trafficking. *Id.* ¶¶ 188–89. Specific facts, the truth of which must be assumed at this stage, make this inference more than plausible. Microtel employees and managers knew of and assisted the sex trafficking ventures that operated there. *Id.* ¶ 175. For example, Microtel front desk employees acted as "look outs" and called Jane Doe 1's trafficker to alert him to police presence. *Id.* And Jane Doe's 1 trafficker (and others) used the computer in the lobby to post advertisements for commercial sex—all in full view of Microtel employees. *Id.* ¶ 176.

When at the Microtel, Plaintiff's presence and physical appearance to Microtel employees was suggestive of sex trafficking and dispelled any notion of prostitution alone. Bruises and other evidence of physical beatings often covered Plaintiff; she also appeared malnourished and sleep deprived and had poor hygiene. *Id.* ¶ 183. Her failure to make eye contact, her lack of control of any money, and close surveillance by her trafficker were all well-known signs of trafficking. *Id.* Other signs of trafficking were also inescapable to hotel staff: the excessive linens brought to her hotel room by Microtel housekeeping staff, the trash can overflowing with condoms, and a volume of cell phones that far outpaced the number of guests. *Id.* ¶ 184.

And trafficking at the Microtel was not sporadic; it was constant, open

and obvious. *Id.* ¶ 175. For example, Plaintiff was trafficked out of the Microtel more than 20 separate times, sometimes for two weeks at a time. *Id.* ¶ 172. Other victims, including Jane Doe 2 and Jane Doe 3, were sometimes trafficked out of the Microtel with her. *Id.* ¶ 173. Buyers of commercial sex, at least 10 men per day—just for Jane Doe 1—appeared, stayed for a brief time, and then left. *Id.* ¶ 174. The overall volume of foot traffic to the Microtel far exceeded this number, given the multiple victims present. *Id.* In sum, the presence of other traffickers, multiple victims, and the sheer number of buyers of commercial sex suggested to anyone present the likelihood of trafficking, not prostitution. *Id.*

And Kuzzins knew or should have known of the prevalence of sex trafficking at hotels in Atlanta and of its warning signs. *Id.* ¶¶ 190–92. The Microtel's own publicly available online reviews, and multiple arrests at the hotel, put Kuzzins on notice of the sex trafficking ventures operating there. *Id.* ¶ 187–89. Indeed, for a period while Plaintiff was trafficked, the Microtel's entire third floor was controlled by Quintavious Obie, a sex trafficker criminally convicted under the TVPRA who was sentenced to 21 years in *United States v. Obie*, 1:18-cr-0007-ODE. *Id.* ¶¶ 177–82. Obie trafficked seven or more victims from the Microtel third floor, and Microtel employees knew of and facilitated Obie's control. *Id.* ¶ 179.

Kuzzins knowingly benefitted from Plaintiff's trafficking by receiving a percentage of the revenue generated by Microtel's operation, including the rooms in which Plaintiff was trafficked. *Id.* ¶ 421.  Kuzzins participated in the sex trafficking venture by providing the venue for it. *Id.* ¶¶ 422–25.

## PROCEDURAL HISTORY

Plaintiff filed her original complaint on August 26, 2019 and the Amended Complaint on November 21, 2019, asserting claims arising out of sex trafficking at eight different hotel locations in the Atlanta area.  Plaintiff named both local owners and operators and the associated corporate hotel brands. Given the limited publicly available information, the complex corporate structure, and use of shell corporations within hotel groups, the Amended Complaint named around twenty-nine defendants. Doc. 87.

On February 7, 2020, the Court held a hearing on all the pending motions to dismiss.  At that hearing, the Court announced that it was dismissing Plaintiff's claims against certain corporate brand defendants.  Doc. 242.  By Order entered April 13, 2020, the Court dismissed the franchise defendants, struck portions of the Amended Complaint, and directed Plaintiff to replead her claims.  Doc. 282.  Plaintiff sought entry of a Rule 54(b) judgment, which the Court granted on May 6, 2020.  Doc. 295.  The Court stayed discovery but directed Plaintiff proceed with filing the SAC and permitted defendants to file

motions for judgment on the pleadings.  Doc. 294.  Plaintiff timely filed her SAC on May 8, 2020, narrowing her claims to four hotels and fourteen defendants.

## ARGUMENT AND CITATION OF AUTHORITY

Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Perez v. Wells Fargo N.A.,* 774 F.3d 1329, 1335 (11th Cir. 2014).  In determining whether a party is entitled to judgment on the pleadings, the Court must accept as true all material facts alleged in the non-moving party's pleading and view those facts in the light most favorable to the non-moving party.  *See Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir. 1998).  If a comparison of the competing pleadings reveals a material dispute of fact, the Court must deny judgment on the pleadings.  *Perez*, 774 F.3d at 1335.  Viewed through this lens, Kuzzins motion should be denied.

## I.     Kuzzins' Motion for Judgment on the Pleadings Must Be Dismissed as Procedurally Premature.

Plaintiff filed her SAC on May 8, 2020.  On June 29, 2020 Kuzzins filed this motion.  Doc. 332.  But because Kuzzins never answered the SAC, the pleadings are not "closed," and Kuzzins' motion must be denied.  Pursuant to Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed."  Fed. R. Civ. P. 12(c).  And pleadings are "closed" only when both a complaint and an answer have been filed.  631 F. App'x at 853.

Here, Kuzzins may point to the Court's direction, at the February 7, 2020 hearing, that answers to the SAC did not need to be filed or to the Court's April 13, 2020 Order, Doc. 282, inviting Defendants to file motions for judgment on the pleadings.  These instructions, however, cannot salvage Kuzzins' motion, because the Eleventh Circuit does not permit a District Court to waive Rule 12(c)'s statutory requirements.

In *Lilian B. ex Rel. Brown v. Gwinnett County School District,* following the plaintiff's complaint, instead of filing an answer, the defendant twice filed motions to dismiss, which the district court denied.  *Id.* at 852.  The district court then invited the defendant to file a motion for judgment on the pleadings, which the district court granted.  On appeal, the Eleventh Circuit reversed, holding that the district court erred by granting the motion because, at that time, the defendant had not yet answered.  Thus, the pleadings were not closed. The district court should have instead "denied the [Defendant's] Rule 12(c) motion as procedurally premature." *Id.*

Though the *Lilan B.* defendant argued that even if the motion were premature, the district court could permit it thanks to its "inherent authority to manage its own docket," the Eleventh Circuit rejected that argument.  The Circuit Court reasoned that "the district court's inherent authority does not authorize it to disregard express limitations or conditions contained in the

#3061686v7

Federal Rules of Civil Procedure." *Id.*

> As the Supreme Court has explained, those rules are as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard [a Rule's] mandate than they do to disregard constitutional or statutory provisions.

*Id.* Even were a complaint "deficient on its face," as the Eleventh Circuit made clear, "a defendant [must] file an answer before the district court may dismiss the complaint under Rule 12(c) . . . because that's what Rule 12(c) unambiguously requires. *Id.* (internal quotations and citations omitted).

Because Kuzzins has not filed an answer to the SAC, the pleadings are not closed as required by Rule 12(c). Kuzzins' motion for judgment on the pleadings, therefore, is—as a matter of binding Eleventh Circuit law—premature. It must be dismissed.

## II.    The Second Amended Complaint is Not a Shotgun Pleading.

While the Eleventh Circuit disapproves of shotgun pleadings and affirms dismissals on that basis, the SAC does not fit any description of a prohibited shotgun pleading recognized by the Eleventh Circuit. In *Weiland v. Palm Beach County Sheriff's Office*, the Eleventh Circuit described four general categories of shotgun pleadings. 792 F.3d 1313, 1322–23 (11th Cir. 2015). Not one describes Plaintiff's SAC. Kuzzins admits that the SAC is not included in the first category, where each count adopts the allegations of all preceding counts." *Id.* at 1322. The second category involves conclusory, vague, and

immaterial facts not obviously connected to any particular cause of action, while
the third consists of pleadings that fail to separate "into a different count each
cause of action or claim for relief." *Id.* at 1323.  And finally, the fourth category
consists of complaints asserting multiple claims against multiple defendants
without specifying which defendants are responsible for which acts or
omissions.  *Id.*

Though none of these categories apply to the SAC, Kuzzins still seeks
dismissal of the SAC as an impermissible shotgun pleading, because—it
claims—the SAC includes "mass-incorporated paragraphs" and seeks to lump
together the three corporate owners and managers of the Microtel.  Doc. 332-1
at 7.  Kuzzins is wrong on both fronts.

### A. The incorporation of other paragraphs by reference does not render the SAC a shotgun pleading.

As Kuzzins admits, Plaintiff's complaint does not contain counts that
incorporate each preceding paragraph by reference.  Doc. 332-1 at 7.  Instead,
the SAC asserts claims arising out of trafficking at four hotels—Microtel,
Suburban Extended Stay, Smyrna Red Roof Inn, and Atlanta Red Roof Inn—
and its factual allegations are organized by hotel location.  For example, Part IV
describes trafficking at the Microtel including specific factual allegations
against Kuzzins, its owner.  The specific counts for each hotel incorporate only
those paragraphs with facts relating to that hotel.  Thus, Plaintiff incorporated

*only* the facts relating to the Microtel into the SAC's Counts against Kuzzins, a point Kuzzins admits. *E.g.*, Doc. 332-1 at 7.[3]  Far from rendering it impossible to discern "which allegations of fact are intended to support which claims of relief," *id.*, this means each substantive count specifically identifies—as if by chapter and verse—the factual allegations supporting it.

Nor is Judge Boulee's decision, *Clifford v. Federman*, 1:18-CV-01953, to the contrary.  There, the plaintiff's complaint fell squarely in the first category, incorporating the "vast majority" of preceding paragraphs into each of fifty-two counts.  *Id.* at 5.  Further, alleging a "diabolical" fraud, the *Clifford* plaintiff asserted claims against forty-two defendants and ignored the Court's admonition to correct the deficiency.  *Id.* at 2, 5.  By contrast, Plaintiff's claims against Kuzzins arise out Kuzzins' ownership, operation, and management (along with CC&S and Essex) of the Microtel.  And unlike the *Clifford* defendants, Kuzzins cannot feign ignorance or confusion about Plaintiff's claims against it because all knowledge and actions of Microtel employees are imputable to Kuzzins.

Though Kuzzins appears to complain mostly about the number of paragraphs or pages, length and complexity do not render a complaint a shotgun pleading. No Eleventh Circuit precedent would authorize dismissing

---

[3] *See* Counts XIII–XVI, Doc. 305 ¶¶ 398–417.

the SAC on that basis.

## B. The SAC permissibly defines groups of defendants.

Although Kuzzins protests that Plaintiff fails to specify which Defendants allegedly took which specific actions pled in the SAC, in reality, the SAC specifically defines the "Microtel Defendants" to include Kuzzins, CC&S and Essex.  Doc. 305 ¶ 24.  Moreover, the SAC also alleges facts supporting an inference that Kuzzins is liable for the actions of CC&S and Essex as its agents and/or alter egos.  Doc. 305 ¶¶429–31.  Agency allegations, like these, are sufficient at a motion to dismiss stage, as the existence of agency relationship involves fact questions ill-suited to resolution on the pleadings, particularly where facts lie in the defendants' control.  *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1357 (N.D. Ga. 2018); *Pizza K, Inc. v. Santagata*, 249 Ga. App. 36, 37 (2001) (a franchisor remains liable for acts of a franchisee who is "a mere agent or alter ego of the franchisor").  As the owner and party that retained liability, Kuzzins cannot escape liability through corporate shell games nor can it complain that it does not have "adequate notice of the claims against it."  Doc. 332-1 at 7.

In any case, Kuzzins is also wrong about the permissibility of pleading facts against multiple defendants.  Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint provide "a short and plain statement of the claim

showing" entitlement to relief.  Neither detailed factual allegations nor "technical forms of pleading . . . are required."  *Crowe v. Coleman,* 113 F.3d 1536, 1539 (11th Cir. 1997).  Thus, when a complaint names multiple defendants, "the allegations can be and usually are to be read" as if the allegations are "made about [each defendant] individually."  *Id.* at 1539.  In short, allegations against defendants collectively can "be fairly read to aver that all defendants are responsible for the alleged conduct."  *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000).  Ample authority confirms that this remains the standard post *Twombly* and *Iqbal*.  *E.g., Crespo v. Coldwell Banker Mortg.,* 599 F. App'x 868, 872 (11th Cir. 2014) (applying post-*Iqbal*); *FTC v. Hornbeam Special Situations, LLC,* 308 F. Supp. 3d 1280, 1288 (N.D. Ga. 2018) (rejecting argument that group pleading rule did not apply following *Iqbal*).

What's more, the Eleventh Circuit's 2019 ruling in *Quality Auto Painting*—another post-*Iqbal* decision—is fatal to the argument that defining Defendant groups and pleading allegations against them is impermissible.  In *Quality Auto Painting*, the district court dismissed based on a purported violation of the group pleading doctrine, where "Defendants" was specifically defined.  *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.,* 917 F.3d 1249, 1274 (11th Cir. 2019).  The Eleventh Circuit reversed, and did so even though the *Quality Auto Painting* complaint defined "Defendants" to

"mean each and every Defendant named in the caption above." *Id.* at 1275.

Because the *Quality Auto Painting* complaint employed a definition far broader

than the SAC's, binding law of the Eleventh Circuit defeats any argument that

the convention is improper.  Any dismissal based on it would be erroneous.

## III.   Plaintiff has alleged Kuzzins' liability under the TVPRA.[4]

Under Kuzzins' theory of the TVPRA, a civil plaintiff must carry the same

burden of proof as if she were prosecuting a crime.  That argument fails for at

least two reasons: It runs afoul of Congress's intent in creating the TVPRA's

civil remedy, 18 U.S.C. § 1595, and it ignores the SAC's well-pled facts.

### A. Plaintiff's TVPRA claim is subject to a civil—rather than criminal—liability standard.

Originally passed as a criminal statute, Congress amended the TVPRA in

2003 to give victims a civil cause of action "against the perpetrator" of a

violation of certain criminal provisions.  18 U.S.C. § 1595(a).  In 2008, Congress

expanded the civil action by allowing victims to sue **not only** the criminal

perpetrator, but also "whoever knowingly benefits, financially or by receiving

anything of value from participation in a venture which that person knew or

should have known has engaged in an act in violation of this chapter[,]." *Id.*

This expansion of civil liability includes Kuzzins, because it (1) knowingly

---

[4] As noted above, the interpretation the TVPRA's civil cause of action is on appeal before the Eleventh Circuit.

benefits (2) from participation in a venture and it (3) knew or should have known the venture "engaged in an act in violation of this chapter."  *Id.*[5] Because Congress intended § 1595(a) to be a broad remedial provision "it is possible for a defendant to be civilly liable without having violated any of the criminal portions of the TVPA."  *Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 194 (D. Mass. 2019).

### 1. The SAC alleges that Kuzzins benefited from Plaintiff's trafficking.

The "knowing benefit" element is satisfied by the rental of a room. *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (knowing benefit satisfied by room rental); *M.A. v. Wyndham Hotels & Resorts, Inc.,* 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (same); *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio 2019) (same); *A.B. v. Marriott Int'l, Inc.*, No. CV 19-5770, 2020 WL 1939678, at *15 (E.D. Pa. Apr. 22, 2020)(same).  In *H.H. v. G6 Hospitality, LLC*, the district court explained "The first element merely requires that Defendant knowingly receive a financial benefit" and "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard."  *H.H.,* 2019 WL 6682152, at *2;

---

[5] Although it is not a requirement under § 1595(a) that Kuzzins have any particularized knowledge of the Plaintiff's trafficking or knowledge of a specific instance of force, fraud, or coercion, Plaintiff has so alleged.  *See infra,* III.B.

*M.A.,* 425 F. Supp. 3d at 965 ("This Court finds that the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard.").  For example, showing that the defendant had a financial stake in the success of the hotel, or even renting a single room for a short period could constitute a "benefit" within the meaning of the statute.  *Ricchio v. Bijal*, 386 F. Supp. 3d at 131 (benefit is not required to reach a certain threshold, even a *de minimis* benefit is sufficient).

The SAC easily satisfies that standard.  Specifically, it alleges that "Kuzzins . . . controlled the operation of, and [was] inextricably connected to the renting of rooms at the Microtel," *id.* ¶ 195, and thereby "benefited financially from" the Microtel's operation, "including from the room revenue generated from Plaintiff's sex trafficking." *Id.* ¶ 196.  Plaintiff alleged that Kuzzins accepted this benefit knowing the money was exchanged to provide a venue for the sex trafficking venture that victimized Plaintiff.  *Id.* ¶ 425.  This is all the statute requires to establish a benefit.

### 2. The SAC alleges that Kuzzins "participated in a venture" in violation of the TVPRA.

Kuzzins argues that the SAC does not adequately allege that Kuzzins "participated in a venture," but it wrongly imposes elements of a criminal violation onto the civil cause of action.  That is not the standard for civil liability, and Plaintiff has alleged facts sufficient for the applicable standard.

*First*, by the statute's express terms, contrary to Kuzzins' argument, the TVPRA's definition of "participation in a venture" in its criminal provisions, 18 U.S.C. § 1591(e)(4),[6] does not limit a civil cause of action under § 1595.  Section 1591's definitions apply only to that section; the definition section begins, "In this section . . . ." *Id.* § 1591(e).

*Second*, interpreting the statute's plain language differently would render much of § 1595(a) meaningless and thereby violate the canon of statutory construction that prohibits "adopt[ing] an interpretation that would render a term meaningless." *Darrisaw v. Penn. Higher Educ. Assistance Agency*, 949 F.3d 1302, 1306 (11th Cir. 2020).  Importing the definition of "participation in a venture" from § 1591—which requires that a defendant act "knowingly"—would leave Congress's addition of the words "should have known" in § 1595(a) without meaning.

While Kuzzins contends the standard is one of reckless disregard, Doc. 332-1 at 20, the statute's plain language dispels this argument.  Reckless disregard, which denotes conscious indifference,[7] is a higher standard than "knew or should have known," as used in 18 U.S.C. § 1595(a), which denotes negligence.  "[K]new or should have known in the exercise of ordinary care" is

---

[6] 18 U.S.C. § 1591(e)(4) states: "The term 'participation in a venture' means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)."
[7] RECKLESS DISREGARD, Black's Law Dictionary (11th ed. 2019).

the well-established knowledge standard of negligence, also referred to as "constructive knowledge." *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1497 (11th Cir. 1985). Put differently, constructive knowledge is the "[k]nowledge that one using reasonable care or diligence should have," it is therefore the knowledge law "attribute[s] . . . to a given person."[8]

The legal standard applicable to § 1595, therefore, presents a classic jury question: whether a reasonable person in a Kuzzins' position, using reasonable care and diligence, should have known that it was profiting from sex trafficking. Courts considering this standard under the TVPRA have overwhelmingly applied a negligence standard. *M.A.*, 425 F. Supp. 3d at 966; *H.H.*, 2019 WL 6682152, at *3. *But see Doe v. Indyke,* No. 19Civ7773(ER), 2020 WL 3073219, at *8 (June 9, 2020 S.D.N.Y.). In *Ricchio,* the Court noted that the plaintiff "at least" alleged reckless disregard but ultimately explicitly held that negligence, not reckless disregard, was the applicable standard. *Ricchio*, 424 F. Supp. 3d at 194. Following reversal of the district court's dismissal, and consistent with the First Circuit's decision, the district court explicitly held the applicable standard was negligence and that no intentional conduct was required. *Id.* at 556.

To the extent that Kuzzins argues the benefit it received must have been received "because of" the facilitation of sex trafficking—it was. "Kuzzins

---

[8] CONSTRUCTIVE KNOWLEDGE, Black's Law Dictionary (11th ed. 2019).

participated in the sex trafficking ventures at the Microtel by providing the venue, the physical location where Plaintiff's sex trafficking was allowed to occur." *Id.* ¶ 425.  And Microtel employees both knew of the trafficking ventures and helped them operate and evade police by acting as "look outs"—all of which lined Microtel's pockets in additional room rental revenue.  *Id.* ¶¶ 175 (employees), 196 (rental revenue), 425 (venue).  Sex trafficking cannot occur without a place for sex.  Plaintiff's sex traffickers chose the Microtel and paid Kuzzins because, and only because, they were allowed to operate sex trafficking ventures there.

### B. The SAC plausibly alleges that Kuzzins knew or should have known of sex trafficking ventures at the Microtel.

Read in a light most favorable to Plaintiff, the SAC plausibly alleges Kuzzins' knowledge of the sex trafficking ventures that harmed Plaintiff.  The knowledge of Microtel employees was the knowledge of Kuzzins, including the employees who alerted traffickers—including Jane Doe 1's trafficker—when police were at the hotel and allowed a known sex trafficker to control the Microtel's entire third floor.  *Id.* ¶¶ 175, 178.  Unwitting visitors unlucky enough to book a room at the Microtel observed the open and obvious crime, including prostitution and other signs of sex trafficking.  *Id.* ¶ 187.  Microtel employees (and therefore Kuzzins) observed the sheer volume of men—buyers—coming and going and the open use of the lobby computer to advertise for

commercial sex, all indicative of sex trafficking.  *Id.* ¶¶ 174, 176.

While Kuzzins euphemistically refers to "the alleged use of the third floor for sexual activity," Doc. 332-1 at 21, that is not what Plaintiff alleges.  The SAC alleges that a *sex trafficker* was convicted of *sex trafficking* after *trafficking* seven or more women at a time *for sex* from the third floor of the Microtel, which the sex trafficker controlled to such an extent that "Microtel employees only rented rooms on the third floor with [the sex trafficker's] prior permission." Doc. 305 ¶¶ 177–79.  These allegations more than support an inference that sex trafficking is so essential to Microtel's business that its employees gave deference to Obie, and other sex traffickers operating there.

Yet Kuzzins would have this Court infer that Microtel employees heard nothing and saw nothing of the violence accompanying the brazen sex trafficking that occupied the Microtel's entire third floor.  Confirming the presence of force, fraud, or coercion, Plaintiff alleges that "violent incidents were audible and visible" to employees.  *Id.* ¶ 181.  Kuzzins re-writes Plaintiff's allegation to say, "Violent incidents c*ould have been audible and visible* to employees at the hotel," arguing that "Plaintiff never alleged that any employees of the Hotel actually heard or saw these alleged incidents."  Doc. 332-1 at 22.  But Kuzzins cannot rewrite Plaintiff's allegations to suit itself.  The Court draws reasonable inferences in favor of Plaintiff's allegations, not against

them.

Finally, Kuzzins argues that "[t]he mere fact that prostitution may have been going on is insufficient" to allege knowledge of sex trafficking. Doc. 332-1 at 18. Kuzzins is wrong for two reasons. *First*, prostitution is a crime in Georgia,[9] and Kuzzins' knowledge of prostitution, without more, at the Microtel is sufficient to allege Plaintiff's claims for violation of Georgia RICO and negligence. The SAC alleges that Kuzzins "kept a place of prostitution" in violation of O.C.G.A. § 16-6-10, and that Kuzzins "engaged in pimping" in violation of O.C.G.A. § 16-6-11(5). Doc. 305 ¶¶ 215–18. Both keeping a place of prostitution and pimping constitute racketeering. *Id.* ¶¶ 216, 218. And allegations that Microtel employees knew of and assisted in prostitution—criminal activity on its premises—are sufficient to allege Kuzzins' violation of its duty of care to keep its premises safe. *Id.* ¶ 436-47.

*Second*, to the extent Kuzzins argues that Plaintiff must allege force, fraud, or coercion under the TVPRA to allege sex trafficking, the SAC does just that. Implicit in Kuzzins' argument is the presumption that while both involve criminal commercial sex acts, "prostitution" is consensual and therefore

---

[9] O.C.G.A. § 16-6-9 ("A person, 18 years of age or older, commits the offense of prostitution when he or she performs or offers or consents to perform a sexual act, including, but not limited to, sexual intercourse or sodomy, for money or other items of value.")

#3061686v7

distinguishable from "sex trafficking."[10]  But it beggars belief that Kuzzins'

knowledge of *consensual* criminal commercial sex at the Microtel would fail to

give rise to Kuzzins' knowledge of (or that it should have known of) *forced*

criminal commercial sex there.

In any event, the SAC specifically alleges facts—known to Microtel

employees and Kuzzins—showing that Plaintiff was subject to force, fraud, and

coercion.  At the Microtel, the bruises covering Plaintiff evidenced physical

beatings by her trafficker, but she was also malnourished and sleep deprived.

*Id.* ¶ 183.  Plaintiff was monitored by her traffickers, *id.*, and when Microtel

employees wanted to warn of police presence, they called Plaintiff's *trafficker*—

not Plaintiff.  Plaintiff  failed to make eye contact with employees and lacked

money and lacked control over money.  *Id.*  The absence of money is particularly

indicative of trafficking—even if one could presume any person would

*voluntarily* engage in 10 commercial sex transactions per day, that person

would have or control money, unlike Jane Doe 1.  Further, the sheer number of

buyers, at least 10 per day, along with the overflowing trash can of condoms are

further suggestive of force, fraud or coercion.  *Id.* ¶¶ 174, 184.  These allegations

all support a reasonable inference that Plaintiff was under her trafficker's

---

[10] As defined under Georgia law, prostitution is not limited to voluntary acts,
but includes one who "performs, offers or consents to perform to a sexual act . .
. . for money or other items of value." O.C.G.A. § 16-6-9.

control, and Microtel had—at a minimum—every reason to know it.

Whether a factfinder ultimately decides these facts are sufficient to show that Kuzzins' constructive knowledge of sex trafficking is yet to be determined, but at the pleadings stage, Plaintiff is entitled to all reasonable inferences. Plaintiff has alleged each element of a claim for TVPRA's civil cause of action, and Kuzzins' motion should be denied.

## IV. The Amended Complaint States Claims Under Georgia RICO.

Kuzzins' argument that corporations cannot be held liable unless the crime is authorized by the board of directors or a managerial official, Doc. 332-1 at 23, fails because that is the standard for corporate criminal liability set forth in O.C.G.A. § 16-2-22. It does not govern this civil RICO case.

In fact, in *Williams General Corporation v. Stone*, 632 S.E.2d 376 (Ga. 2006), the Georgia Supreme Court rejected the exact argument Kuzzins now makes. After noting that it had "not previously applied O.C.G.A. § 16-2-22 or any other criminal statutes to civil suits brought by individuals," the Court confirmed that "O.C.G.A. § 16-2-22 does not pertain to civil suits brought under the Georgia civil RICO Act." *Id.* Kuzzins' argument therefore fails because it depends upon a standard which does not apply to civil RICO cases.

Additionally, although Kuzzins contends that Plaintiff insufficiently alleged a conspiracy, Kuzzins ignores that—as members of conspiracies to

violate RICO—they are responsible for all acts committed in furtherance of the criminal endeavor.  *Pasha v. State*, 616 S.E. 2d 135, 138 (Ga. App. 2005). A person engages in a RICO conspiracy "if they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts."  *Cotman,* 804 S.E. 2d at 684.   There is "no requirement" that a defendant "personally commit[] the underlying predicate offenses," only that some member of the conspiracy do so.  *Pasha*, 616 S.E. 2d at 138.

Here, it is clear that Plaintiff has alleged acts of racketeering activity against Kuzzins.  For example, a person commits the offense of trafficking an individual for sexual servitude, itself a predicate act, when the person knowingly benefits financially or receives anything of value from the sexual servitude of another.  O.C.G.A § 16-5-46(c)(3).  Plaintiff alleges that Kuzzins benefitted financially from her sexual servitude.  Doc. 305 ¶¶ 209–10.  Financial gain, meanwhile, is sufficient to link acts of racketeering activity into a pattern.  *Overton v. State,* 671 S.E. 2d 507, 517–18 (Ga. Ct. App. 2008).

And a corporation has liability for sexual servitude if *any* of its agents knew *or should have known* that the illegal activity was occurring.  O.C.G.A § 16-5-46(j).   As described above, Plaintiff alleges that Kuzzins knew or should have known of the illegal activity and alleges specific facts supporting that actual or constructive knowledge.  *See supra* III.B.

## V.    Plaintiff's Negligence Claims are Timely.

This Court should not dismiss Plaintiff's negligence claims against Kuzzins based on the statute of limitations because Plaintiff's claims were tolled and are therefore timely.  "A dismissal for failure to state a claim on statute of limitations grounds is appropriate 'only if it is apparent from the face of the complaint that the claim is time-barred.'"  *United State ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1085 (11th Cir. 2018) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)).  A statute of limitation bar is an affirmative defense, which plaintiffs are not required to negate in their complaint.  *La Grasta*, 358 F.3d at 845.

Kuzzins insists that because the statute of limitation for a negligence claim is two years, *see* O.C.G.A. § 9-3-33, Plaintiff's negligence claims are time-barred.  It fails to recognize, however, that O.C.G.A. § 9-3-99 tolled the negligence limitations period for six years because Plaintiff's claims arise out of crimes committed against her.  Plaintiff therefore had eight years to timely assert her negligence claim.

Section "9-3-99 provides for tolling as to 'any cause of action in tort' brought by a crime victim that 'arises out of the facts and circumstances relating to the commission of such alleged crime[.]'."  *Harrison v. McAfee*, 788 S.E.2d 872, 876 (Ga. Ct. App. 2016) (quoting O.C.G.A. § 9-3-99).  In *Harrison*,

an unknown perpetrator shot the plaintiff while he was at the defendant's bar. *Id.* More than two years later, the plaintiff filed a premises liability lawsuit against the bar. *Id.* The *Harrison* court held the plaintiff's claim was timely because he was a victim of an alleged crime and his lawsuit asserted a tort claim arising out of that crime. *Id.* at 876, 878–79. In fact, § 9-3-99 tolled the limitation period even though the defendant was not the perpetrator, *id.* at 878–79, and the unknown perpetrator had "yet to be arrested or prosecuted." *Id.* at 873.

Similarly, Plaintiff is the "victim of [] alleged crime[s]," at Kuzzins' hotel and her cause of action "arises out of the facts and circumstances relating to the commission of such alleged crime[s]." O.C.G.A. § 9-3-99. The limitation period for her negligence claim was tolled for six years because no prosecution of those crimes has yet become final, nor has the time elapsed to pursue a prosecution for those crimes.[11] Plaintiff's negligence claims are time-barred only to the extent they relate to crimes occurring more than eight years prior to filing this action. Plaintiff's negligence claims arising out of crimes committed at the Microtel from 2011 through 2016 are timely.

---

[11] If the legislature had intended to limit the application of O.C.G.A. § 9-3-99 to cases in which a prosecution had been initiated, it could have done so. "It did not, and any undesirable result is a matter properly addressed by the General Assembly rather than the courts." *Harrison*, 788 S.E.2d at 879.

Respectfully submitted this 27th day of July, 2020.

/s/ *Tiana S. Mykkeltvedt*
John E. Floyd
Georgia Bar No. 266413
floyd@bmelaw.com
Manoj S. Varghese
Georgia Bar No. 734668
varghese@bmelaw.com
Tiana S. Mykkeltvedt
Georgia Bar No. 533512
mykketlvedt@bmelaw.com
Amanda Kay Seals
Georgia Bar No. 502720
seals@bmelaw.com
Michael R. Baumrind
Georgia Bar No. 960296
baumrind@bmelaw.com

BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street, N.W., Suite 3900
Atlanta, GA  30309
(404) 881-4100 – Telephone
(404) 881-4111 – Facsimile

Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Trinity Hundredmark
Georgia Bar No. 140808
thundred@atclawfirm.com

ANDERSEN, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia  30097
(770) 822-0900 – Telephone

#3061686v7

26

(770) 822-9680 – Facsimile

*Attorneys for Plaintiff Jane Doe 1*

## <u>CERTIFICATION</u>

The undersigned counsel hereby certifies that **PLAINTIFF'S**

**RESPONSE TO KUZZINS BUFORD, LLC'S MOTION FOR JUDGMENT**

**ON THE PLEADINGS** was prepared using 13-point Century Schoolbook font

and complies with the margin and type requirements of this Court, per L.R. 5.1

(N.D. Ga.).

This 27th day of July, 2020.

/s/ *Tiana S. Mykkeltvedt*
Tiana S. Mykkeltvedt
Georgia Bar No. 533512

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 27, 2020, I served a true and correct copy of

**PLAINTIFF'S RESPONSE TO KUZZINS BUFORD, LLC'S MOTION FOR**

**JUDGMENT ON THE PLEADINGS** using the Court's CM/ECF system, which

will automatically email the document to all counsel of record.


This 27th day of July, 2020.


<u>/s/ *Tiana S. Mykkeltvedt*</u>
Tiana S. Mykkeltvedt
Georgia Bar No. 533512