IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JANE DOE 1,<br><br>          Plaintiff,<br><br>v.<br><br>RED ROOF INNS, INC., et al.,<br><br>          Defendants. | Civil Action No.<br>1:19-cv-03840-WMR<br><br><br>JURY TRIAL DEMANDED,<br>Pursuant to Fed. R. Civ. P. 38 |

## PLAINTIFF'S RESPONSE TO ESSEX HOTEL MANAGEMENT, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

From 2011 through 2017, Defendant Essex Hotel Management, LLC ("Essex") operated the Microtel and employed the staff who worked there. Essex's Answer, Doc. 340 ¶ 195 (Essex admits that it had a role in managing and operating the Microtel from before 2011 until early 2017). Essex employed the staff at the Microtel, *id.* ¶ 198, and "admits that it benefited financially" from the operation of the Microtel." *Id.* ¶ 196. At most, Essex's motion for judgment on the pleadings argues that because other corporations may also be responsible for Plaintiff's injuries at the Microtel—it should be dismissed at the pleading stage. But Essex cannot escape responsibility for Plaintiff's injuries caused at the Microtel—a hotel run by Essex. *See* O.C.G.A. § 51-2-2 (a person

1

shall be liable for torts committed . . . in the prosecution and within the scope of his business"). There is simply no basis to dismiss Essex on the pleadings.[1]

## STATEMENT OF FACTS[2]

Plaintiff Jane Doe 1 was trafficked at Atlanta hotels from 2011 through 2016 where she was sold for commercial sex. SAC, Doc. 305 ¶ 1; Doc. 340 ¶¶ 195, 198. Plaintiff's claims against Essex arise out of her trafficking at the Microtel Inn & Suites located at 1840 Corporate Boulevard NE, Atlanta, Georgia 30329 ("Microtel"), *id.* ¶ 172.

Essex manages the Microtel and employs its staff. *Id.* ¶ 198; Doc. 340 ¶ 198. That is, employees at the Microtel worked for Essex. Essex was also the company that marketed, advertised, and recruited corporate accounts for the Microtel. *Id.* ¶ 194; Doc. 340 ¶ 194 (admitting the allegations of paragraph 194). And Essex was the company that managed the day-to-day operations of the Microtel, including supervising employees, directing employee pay, maintaining the hotel property, and monitoring hotel safety and security procedures and

---

[1] The Court has already stayed this case during the pendency of Plaintiff's appeal of the Court's April 13, 2020 orders on Motions to Dismiss. The Court's decision to stay this and related cases was a sound one, as the resolution of Plaintiff's appeal has the potential to moot or require the reconsideration of the issues now before the Court.
[2] Unless otherwise noted, pin citations to record refer to the page number affixed in the Court's CM/ECF heading and not to the numbers appearing in document footers.

crime reports.  Doc. 305 ¶ 201; Doc. 340 ¶ 201.

As the company responsible for the day-to-day operation of the Microtel, Essex had, at a minimum, constructive knowledge of crimes there, including sex trafficking.  *Id.* ¶¶ 188–189.  Specific facts, the truth of which must be assumed at this stage, make this inference more than plausible.  Microtel employees and managers knew of and assisted the sex trafficking ventures that operated there. *Id.* ¶ 175.  For example, Microtel front desk employees acted as "look outs" and called Jane Doe 1's trafficker to alert him to police presence.  *Id.*  And Jane Doe 1's trafficker (and others) used the computer in the lobby to post advertisements for commercial sex—all in full view of Microtel employees.  *Id.* ¶ 176.

When at the Microtel, Plaintiff's presence and physical appearance to Microtel employees was suggestive of sex trafficking and dispelled any notion of prostitution alone.  Bruises and other evidence of physical beatings often covered Plaintiff; she also appeared malnourished and sleep deprived and had poor hygiene.  *Id.* ¶ 183.  Her failure to make eye contact, her lack of control of any money, and close surveillance by her trafficker were all well-known signs of trafficking.  *Id.*  Other signs of trafficking were also inescapable to hotel staff: the excessive linens brought to her hotel room by Microtel housekeeping staff, the trash can overflowing with condoms, and a volume of cell phones that far outpaced the number of guests.  *Id.* ¶ 184–185.

3

And trafficking at the Microtel was not sporadic; it was constant, open and obvious.  *Id.* ¶ 175.  For example, Plaintiff was trafficked out of the Microtel more than 20 separate times, sometimes for two weeks at a time.  *Id.* ¶ 172. Other victims, including Jane Doe 2 and Jane Doe 3, were sometimes trafficked out of the Microtel with her.  *Id.* ¶ 173.  Buyers of commercial sex, at least 10 men per day—just for Jane Doe 1—appeared, stayed for a brief time, and then left.  *Id.* ¶ 174.  The overall volume of foot traffic to the Microtel far exceeded this number, given the multiple victims present.  *Id.*  In sum, the presence of other traffickers, multiple victims, and the sheer number of buyers of commercial sex suggested to anyone present the likelihood of trafficking, not prostitution.  *Id.*

Essex knew or should have known of the prevalence of sex trafficking at hotels in Atlanta and of its warning signs.  *Id.* ¶¶ 190–192.  The Microtel's own publicly available online reviews, and multiple arrests at the hotel, put Essex on notice of the sex trafficking ventures operating there.  *Id.* ¶ 187–189.  Indeed, for a period while Plaintiff was trafficked, the Microtel's entire third floor was controlled by Quintavious Obie, a sex trafficker criminally convicted under the TVPRA who was sentenced to 21 years in *United States v. Obie*, 1:18-cr-0007-ODE.  *Id.* ¶¶ 177–181.  Obie trafficked seven or more victims from the Microtel third floor, and Microtel employees facilitated Obie's control.  *Id.*¶ 179.

4

Essex knowingly benefitted from Plaintiff's trafficking by receiving a percentage of the revenue generated by Microtel's operation, including the rooms in which Plaintiff was trafficked.  *Id.* ¶¶ 421, 398, 427, 442; Doc. 340 ¶ 196 ("Essex admits that it benefitted financially from the operation of the Microtel . . .").  Essex participated in the sex trafficking venture by providing the venue for it.  *Id.* ¶¶ 422–425, 427.

## PROCEDURAL HISTORY

Plaintiff filed her original complaint on August 26, 2019 and the Amended Complaint on November 21, 2019, asserting claims arising out of sex trafficking at eight different hotel locations in the Atlanta area.  Plaintiff named both local owners and operators and the associated corporate hotel brands. Given the limited publicly available information, the complex corporate structure, and use of shell corporations within hotel groups, the Amended Complaint named around twenty-nine defendants. Doc. 87.

On February 7, 2020, the Court held a hearing on all the pending motions to dismiss.  At that hearing, the Court announced that it was dismissing Plaintiff's claims against certain corporate brand defendants.  Doc. 242.  By Order entered April 13, 2020, the Court dismissed the franchise defendants, struck portions of the Amended Complaint, and directed Plaintiff to replead her claims.  Doc. 282.  Plaintiff sought entry of a Rule 54(b) judgment, which the

Court granted on May 6, 2020.  Doc. 298.  The Court stayed discovery but directed Plaintiff proceed with filing the SAC and permitted defendants to file motions for judgment on the pleadings.  Doc. 294.  Plaintiff timely filed her SAC on May 8, 2020, narrowing her claims to four hotels and fourteen defendants.

<u>**ARGUMENT AND CITATION OF AUTHORITY**</u>

Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Perez v. Wells Fargo N.A.,* 774 F.3d 1329, 1335 (11th Cir. 2014).  In determining whether a party is entitled to judgment on the pleadings, the Court must accept as true all material facts alleged in the non-moving party's pleading and view those facts in the light most favorable to the non-moving party.  *See Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir. 1998).  If a comparison of the competing pleadings reveals a material dispute of fact, the Court must deny judgment on the pleadings.  *Perez*, 774 F.3d at 1335.  Viewed through this lens, Essex's motion should be denied.

**I.      The Second Amended Complaint is Not a Shotgun Pleading.**

While the Eleventh Circuit disapproves of shotgun pleadings and affirms dismissals on that basis, the SAC does not fit any description of a prohibited shotgun pleading recognized by the Eleventh Circuit.  In *Weiland v. Palm Beach County Sheriff's Office*, the Eleventh Circuit described four general categories of

shotgun pleadings.  792 F.3d 1313, 1322–23 (11th Cir. 2015).  Not one describes

Plaintiff's SAC.  None of these categories apply to the SAC, and Essex does not

contend that they do.  Instead, Essex still seeks dismissal of the SAC as an

impermissible shotgun pleading, because of the "collective allegations against

'Kuzzins, CC&S, Essex . . .".  Doc. 349–1 at 11, and because it contends that

Plaintiff's allegations are "conclusory."  *Id.* at 12.  Essex is wrong on both fronts.

### A. The incorporation of other paragraphs by reference does not render the SAC a shotgun pleading.

The SAC asserts claims arising out of trafficking at four hotels—Microtel,

Suburban Extended Stay, Smyrna Red Roof Inn, and Atlanta Red Roof Inn—and

its factual allegations are organized by hotel location.  For example, Part IV

describes trafficking at the Microtel including specific factual allegations against

Essex, the Microtel's operator and day-to-day manager.  The specific counts for

each hotel incorporate only those paragraphs with facts relating to that hotel.

Thus, Plaintiff incorporated *only* the facts relating to the Microtel into the SAC's

Counts against Essex.  *See* Doc. 305 ¶¶ 398–417 (Georgia RICO), 418–434

(TVPRA), 435–447 (Negligence).  Far from rendering it impossible to discern

"which allegations of fact are intended to support which claims of relief,"

*Weiland*, 792 F.3d at 1325, this means each substantive count specifically

identifies—as if by chapter and verse—the factual allegations supporting it.  No

Eleventh Circuit precedent would authorize dismissing the SAC on this basis.

**B. The SAC permissibly defines groups of defendants.**

Although Essex protests that Plaintiff fails to specify which Defendants allegedly took which specific actions pled in the SAC, in reality, the SAC specifically defines the "Microtel Defendants" to include Kuzzins, CC&S and Essex.  Doc. 305 ¶ 24.  In fact, in its answer, Essex admits that it employed the staff of the Microtel and operates the hotel.  Doc. 340 ¶¶ 195, 198; *see* Doc. 305 ¶¶ 194, 198, 201.  And while Plaintiff has alleged that other corporate entities are also responsible for actions taken by Essex, including Defendants Kuzzins Buford, LLC and CC&S, that is not grounds to dismiss Essex.

Essex is wrong about the permissibility of pleading facts against multiple defendants.  Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint provide "a short and plain statement of the claim showing" entitlement to relief.  Neither detailed factual allegations nor "technical forms of pleading . . . are required."  *Crowe v. Coleman,* 113 F.3d 1536, 1539 (11th Cir. 1997).  Thus, when a complaint names multiple defendants, "the allegations can be and usually are to be read" as if the allegations are "made about [each defendant] individually."  *Id.* at 1539.  In short, allegations against defendants collectively can "be fairly read to aver that all defendants are responsible for the alleged conduct."  *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000).

Ample authority confirms that this remains the standard post *Twombly* and *Iqbal*. *E.g., Crespo v. Coldwell Banker Mortg.,* 599 F. App'x 868, 872 (11th Cir. 2014) (applying post-*Iqbal*); *FTC v. Hornbeam Special Situations, LLC,* 308 F. Supp. 3d 1280, 1288 (N.D. Ga. 2018) (rejecting argument that group pleading rule did not apply following *Iqbal*).

### C. Plaintiff's allegations are not "conclusory."

Essex's selective quotation of three partial paragraphs of the SAC does not establish that Plaintiff's allegations are "conclusory." Not only do the quoted portions ignore the detailed facts about sex trafficking actually alleged by Plaintiff, but under Rule 8(a)(2), imposing a burden on Plaintiff to plead with specificity would be in error. *In re Se. Banking Corp.,* 69 F.3d 1539, 1551 (11th Cir. 1995) (The Federal Rules of Civil Procedure simply "do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can."). Courts must "give attention to the whole body of allegations" in a complaint, rather than viewing allegations in isolation to render them "meaningless," explained Justice Souter, sitting by designation, in a TVPRA civil action. *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (Souter, J.).

For example, Essex quoted as conclusory the assertion that "The volume of foot traffic of buyers to the hotel room . . . evidenced trafficking," but omitted the specific allegation in the same paragraph detailing how *at least 10 men per day*

9

came to the room, stayed for a short period of time, then left and how the presence of other victims only multiplied the number of men present.  Doc. 305 ¶ 174.  And while Essex describes paragraph 192 as conclusory—it omits any reference to the preceding *twenty* paragraphs, *see id.* ¶¶ 172–191, each of which details the specific facts about open and obvious sex trafficking at the Microtel. Plaintiff alleged twenty stays over five years, some lasting for two weeks.  *Id.*  ¶ 172.   Jane Doe 1, Jane Doe 2 and Jane Doe 3 were all trafficked there, sometimes at the same time, and usually while other trafficking victims were present with other traffickers.  *Id.* ¶ 173.  All of this took place while a convicted sex trafficker controlled the entire third floor of the Microtel, for the purpose of trafficking women, *id.* ¶ 177, and while a steady stream of male buyers— unregistered "guests"—circulated on the Microtel property.  *Id.*  ¶ 174.

## II.    Plaintiff has Alleged Essex's Liability Under the TVPRA.[3]

Under Essex's theory of the TVPRA, a civil plaintiff must carry the same burden of proof as if she were prosecuting a crime.  That argument fails for at least two reasons: It runs afoul of Congress's intent in creating the TVPRA's civil remedy, 18 U.S.C. § 1595, and it ignores the SAC's well-pled facts.

---

[3] As noted above, the interpretation the TVPRA's civil cause of action is on appeal before the Eleventh Circuit.

## A. Plaintiff's TVPRA claim is subject to a civil—rather than criminal—liability standard.

Originally passed as a criminal statute, Congress amended the TVPRA in 2003 to give victims a civil cause of action "against the perpetrator" of a violation of certain criminal provisions.  18 U.S.C. § 1595(a).  In 2008, Congress expanded the civil action by allowing victims to sue **not only** the criminal perpetrator, but also "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter[,]." *Id.*

This expansion of civil liability includes Essex, because it (1) knowingly benefits (2) from participation in a venture and it (3) knew or should have known the venture "engaged in an act in violation of this chapter." *Id.*[4]  Because Congress intended § 1595(a) to be a broad remedial provision "it is possible for a defendant to be civilly liable without having violated any of the criminal portions of the TVPA." *Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 194 (D. Mass. 2019).

---

[4] Although it is not a requirement under § 1595(a) that Essex have any particularized knowledge of the Plaintiff's trafficking or knowledge of a specific instance of force, fraud, or coercion, Plaintiff has so alleged.  *See infra,* II.B.

### 1. The SAC alleges that Essex benefited from Plaintiff's trafficking.

Essex admits that it benefited financially from the operation of the Microtel.  Doc. 340 ¶ 196.  The "knowing benefit" element is satisfied by the rental of a room.  *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (knowing benefit satisfied by room rental); *M.A. v. Wyndham Hotels & Resorts, Inc.,* 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (same); *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio 2019) (same); *A.B. v. Marriott Int'l, Inc.*, No. CV 19-5770, 2020 WL 1939678, at *15 (E.D. Pa. Apr. 22, 2020)(same); *see also Ricchio v. Bijal*, 386 F. Supp. 3d at 131 (benefit is not required to reach a certain threshold, even a *de minimis* benefit is sufficient).

In addition to Essex's admission that it benefited from the operation of the Microtel, the SAC alleged that "Essex . . . controlled the operation of, and [was] inextricably connected to the renting of rooms at the Microtel," Doc. 305 ¶ 195, and thereby "benefited financially from" the Microtel's operation, "including from the room revenue generated from Plaintiff's sex trafficking."  *Id.* ¶ 196.  Plaintiff alleged that Essex accepted this benefit knowing the money was exchanged to provide a venue for the sex trafficking venture that victimized Plaintiff.  *Id.*¶ 425.  This is all the statute requires to establish a benefit.

### 2. The SAC alleges that Essex "participated in a venture" in violation of the TVPRA.

Essex argues that "association alone" is insufficient to allege liability under the TVPRA and asserts Plaintiff must allege "some participation in the sex trafficking act itself."  Doc. 349–1 at 11.  Essex's argument wrongly imposes elements of a criminal violation onto the civil cause of action.

*First*, by the statute's express terms, contrary to Essex's argument, the TVPRA's definition of "participation in a venture" in its criminal provisions, 18 U.S.C. § 1591(e)(4),[5] does not limit a civil cause of action under § 1595.  Section 1591's definitions apply only to that section; the definition section begins, "In this section . . . ." *Id.* § 1591(e).

*Second*, interpreting the statute's plain language differently would render much of § 1595(a) meaningless and thereby violate the canon of statutory construction that prohibits "adopt[ing] an interpretation that would render a term meaningless." *Darrisaw v. Penn. Higher Educ. Assistance Agency*, 949 F.3d 1302, 1306 (11th Cir. 2020).  Importing the definition of "participation in a venture" from § 1591—which requires that a defendant act "knowingly"—would leave Congress's addition of the words "should have known" in § 1595(a) without

---

[5] 18 U.S.C. § 1591(e)(4) states: "The term 'participation in a venture' means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)."

meaning.

The plain language of § 1595(a) establishes a negligence standard. "[K]new or should have known in the exercise of ordinary care" is the well-established knowledge standard of negligence, also referred to as "constructive knowledge." *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1497 (11th Cir. 1985). Constructive knowledge is the "[k]nowledge that one using reasonable care or diligence should have," it is therefore the knowledge law "attribute[s] . . . to a given person."[6] The legal standard applicable to § 1595, therefore, presents a classic jury question: whether a reasonable person in a Essex's position, using reasonable care and diligence, should have known that it was profiting from sex trafficking. Courts considering this standard under the TVPRA have overwhelmingly applied a negligence standard. *M.A.*, 425 F. Supp. 3d at 966; *H.H.*, 2019 WL 6682152, at *3. *But see Doe v. Indyke,* No. 19Civ7773(ER), 2020 WL 3073219, at *8 (June 9, 2020 S.D.N.Y).

To the extent that Essex argues the benefit it received must have been received "because of" the facilitation of sex trafficking—it was. "Essex participated in the sex trafficking ventures by managing the property in such a manner as to permit sex trafficking to occur and by renting rooms to sex

---

[6] CONSTRUCTIVE KNOWLEDGE, Black's Law Dictionary (11th ed. 2019).

traffickers for sex trafficking at the Microtel with actual or constructive knowledge." Doc. 305 ¶ 427. And Microtel employees both knew of the trafficking ventures and helped them operate and evade police by acting as "look outs"—all of which lined Microtel's pockets in additional room rental revenue. *Id.* ¶¶ 175 (employees), 196 (rental revenue), 425 (venue). Sex trafficking cannot occur without a place for sex. Plaintiff's sex traffickers chose the Microtel and paid Essex because, and only because, they were allowed to operate sex trafficking ventures there.

## B. The SAC plausibly alleges that Essex knew or should have known of sex trafficking ventures at the Microtel.

Read in a light most favorable to Plaintiff, the SAC plausibly alleges Essex's knowledge of the sex trafficking ventures that harmed Plaintiff. The knowledge of Microtel employees was the knowledge of Essex, including the employees who alerted traffickers—including Jane Doe 1's trafficker—when police were at the hotel and allowed a known sex trafficker to control the Microtel's entire third floor. *Id.* ¶¶ 175, 177. Unwitting visitors unlucky enough to book a room at the Microtel observed the open and obvious crime, including prostitution and other signs of sex trafficking. *Id.* ¶ 187. Microtel employees (and therefore Essex) observed the sheer volume of men—buyers—coming and going and the open use of the lobby computer to advertise for commercial sex, all

indicative of sex trafficking.  *Id.* ¶¶ 174, 176.

The SAC alleges that a *sex trafficker* was convicted of *sex trafficking* after *trafficking* seven or more women at a time *for sex* from the third floor of the Microtel, which the sex trafficker controlled to such an extent that "Microtel employees only rented rooms on the third floor with [the sex trafficker's] prior permission."  Doc. 305 ¶¶ 177–179.  These allegations more than support an inference that sex trafficking is so essential to Microtel's business that its employees gave deference to Obie, and other sex traffickers operating there. The SAC also alleges that Microtel employees heard and saw the sex trafficking taking place right under their noses.  Confirming the presence of force, fraud, or coercion, Plaintiff alleges that "violent incidents were audible and visible" to employees.  *Id.* ¶ 181.

Finally, Essex argues that allegations that customers complained of prostitution is insufficient to allege knowledge of sex trafficking. Doc. 349–1 at 13.  Essex is wrong for two reasons.  *First*, prostitution is a crime in Georgia,[7] and Essex's knowledge of prostitution, without more, at the Microtel is sufficient to allege Plaintiff's claims for violation of Georgia RICO and negligence.  The

---

[7] O.C.G.A. § 16-6-9 ("A person, 18 years of age or older, commits the offense of prostitution when he or she performs or offers or consents to perform a sexual act, including, but not limited to, sexual intercourse or sodomy, for money or other items of value.")

SAC alleges that Essex "kept a place of prostitution" in violation of O.C.G.A. § 16-6-10, and that Essex "engaged in pimping" in violation of O.C.G.A. § 16-6-11(5).  Doc. 305 ¶¶ 215–218.  Both keeping a place of prostitution and pimping constitute racketeering.  *Id.* ¶¶ 216, 218.  And allegations that Microtel employees knew of and assisted in prostitution—criminal activity on its premises—are sufficient to allege Essex's violation of its duty of care to keep its premises safe.  *Id.* ¶ 436–447.

*Second*, to the extent Essex argues that Plaintiff must allege force, fraud, or coercion under the TVPRA to allege sex trafficking, the SAC does just that. Implicit in Essex's argument is the presumption that while both involve criminal commercial sex acts, "prostitution" is consensual and therefore distinguishable from "sex trafficking."[8]  But Essex's knowledge of *consensual* criminal commercial sex at the Microtel would give rise to Essex's knowledge of (or that it should have known of) *forced* criminal commercial sex there.

In any event, the SAC specifically alleges facts—known to Microtel employees and Essex—showing that Plaintiff was subject to force, fraud, and coercion.  At the Microtel, the bruises covering Plaintiff evidenced physical

---

[8] As defined under Georgia law, prostitution is not limited to voluntary acts, but includes one who "performs, offers or consents to perform to a sexual act . . .. for money or other items of value." O.C.G.A. § 16-6-9.

beatings by her trafficker, but she was also malnourished and sleep deprived. *Id.* ¶ 183. Plaintiff was monitored by her traffickers, *id.*, and when Microtel employees wanted to warn of police presence, they called Plaintiff's *trafficker*— not Plaintiff. Plaintiff failed to make eye contact with employees and lacked money and lacked control over money. *Id.* The absence of money is particularly indicative of trafficking—even if one could presume any person would *voluntarily* engage in 10 commercial sex transactions per day, that person would have or control money, unlike Jane Doe 1. Further, the sheer number of buyers, at least 10 per day, along with the overflowing trash can of condoms are further suggestive of force, fraud or coercion. *Id.* ¶¶ 174, 184. These allegations all support a reasonable inference that Plaintiff was under her trafficker's control, and Microtel had—at a minimum—every reason to know it.

Whether a factfinder ultimately decides these facts are sufficient to show that Essex's constructive knowledge of sex trafficking is yet to be determined, but at the pleadings stage, Plaintiff is entitled to all reasonable inferences. Plaintiff has alleged each element of a claim for TVPRA's civil cause of action, and Essex's motion should be denied.

## III. The Amended Complaint States Claims Under Georgia RICO.

Essex contends that Plaintiff did not allege predicate acts under Georgia RICO and seeks judgment on the pleadings on Plaintiff's RICO claims. Essex's

motion should be denied, because Plaintiff alleged predicate acts for, among others, prostitution,[9] keeping a place of prostitution, and sexual servitude[10] against Essex.  Plaintiff's Georgia RICO claim against Essex is Counts 13 and 14 of the SAC.  In Paragraph 398, Plaintiff specifically incorporates "Part IV.A.-B.," paragraphs 172–201 and paragraphs 202–226.  Part I.V.A.-B. describes the facts relating to the trafficking of Plaintiff and others at the Microtel and the relationship among the various corporate entities that own, control and operated the Microtel.  Paragraphs 202–226 describe how the Essex and other defendants engaged in a pattern of racketeering activity, or predicate acts.  All of these paragraphs are incorporated into Counts 13 and 14.  *Id*. ¶¶ 398, 410.

Under O.C.G.A. § 16-14-6(c), "[a]ny person who is injured by reason of any violation of [O.C.G.A. §] 16-4-4 shall have a cause of action" against the violator.  A person violates O.C.G.A § 16-14-4(a) when it obtains money, directly or indirectly, through a pattern of racketeering activity.  A defendant may commit an act of racketeering activity individually or as a party to the crime.  *Akintoye v. State*, 798 S.E.2d 720, 724-25 (Ga. Ct. App. 2017);[11]  *Whaley v. State*, 808 S.E.2d 88, 92 (Ga. Ct. App. 2017) (A defendant may violate RICO itself as a

---

[9] O.C.G.A.  §§ 16-6-10 and 16-6-11.
[10] O.C.G.A. § 16-5-46(c)(3).
[11] *See* O.C.G.A. § 16-2-21 (party to a crime).

party to the crime.)  Evidence of two related acts of racketeering activity
(defined in O.C.G.A. § 16-14-3(5)(A) and commonly referred to as "predicate
acts") is sufficient to constitute a pattern.  *Dorsey v. State*, 615 S.E.2d 512, 518-
19 (Ga. 2005).  Financial gain is sufficient to link acts of racketeering activity
into a pattern.  *Overton v. State*, 671 S.E.2d 507, 517-18 (Ga. Ct. App. 2008); *see
also* O.C.G.A. § 16-14-2(b).

Plaintiffs easily alleged at least two predicate acts against Essex,
including violations of Georgia's prostitution and sexual servitude statutes.  A
person who exercises control over a place commits the offense of keeping a place
of prostitution if he "knowingly grants or permits the use of such place for the
purpose of prostitution."  O.C.G.A.§ 16-6-10.  That knowledge may be actual or
implied.  *Frazier v. State,* 91 S.E.2d 85, 87 (Ga. Ct. App. 1956); *Smith v. State,*
182 S.E. 816, 818 (Ga. Ct. App. 1935).  And the defendant need only indirectly
contribute to the prohibited use.  *Clifton v. State,* 53 Ga. 241, 243 (1874); *Kessler
v. State,* 46 S.E. 408 (Ga. 1904).

Plaintiff alleged that Essex exercised control over the Microtel and
knowingly allowed it to be used for prostitution.  Doc. 305 ¶¶ 172–192.
Plaintiffs were prostituted at both hotels on hundreds of occasions and they
personally witnessed others being prostituted at the same hotels at the same
time.  *Id.*  Essex cannot on the one hand, acknowledge Plaintiff's prostitution

20

allegations (for purposes of alleging they are insufficient to allege knowledge of sex trafficking), and on the other hand completely ignore them for purposes of Plaintiff's RICO claim.

Similarly, Plaintiff alleged Essex violated Georgia's sexual servitude statute. The sexual servitude statute is violated when a person knowingly benefits financially or receives anything of value from the sexual servitude of another. O.C.G.A. § 16-5-46(c)(3). Sexual servitude under O.C.G.A. § 16-5-46(a)(8), similar to sex trafficking under the TVPRA, includes sexually explicit conduct in exchange for anything of value where the conduct "is induced or obtained …. [b]y coercion or deception." O.C.G.A. § 16-5-46(a)(8). Essex received pecuniary gain from the sexual servitude of Plaintiffs and others. Plaintiffs alleged that the Microtel employees, Essex employees, who knowingly accepted room rental payments derived from the sexual servitude of the Plaintiffs and others were acting within the scope of their employment and were aware of and participated in the racketeering activity. Moreover, Plaintiff alleged that accepting rental payments from known sex trafficking operations was a regular occurrence at the Microtel.

Plaintiff's allegations relating to the frequency and length of stays, the number of buyers, and Essex's knowledge of online reviews, direct customer complaints, and the open and obvious conduct viewed its inspectors allege

violations of Georgia law that qualify as RICO predicate acts.  For example,

Plaintiff also alleged Essex was aware of online complaints and direct guest

complaints, allegations included the date and content of some complaints.  Doc.

305 ¶ 187.  But they were not just aware of trafficking and prostitution, they

jointly ventured with a trafficker who was allowed to operate an entire floor of

the hotel as a place of prostitution.  *Id*. ¶ 177–182.  And because these

allegations do not sound in fraud, they are not subject to the particularity

requirements of Rule 9(b).  Plaintiffs' allegations are more than sufficient to

state a substantive Georgia RICO claims against Essex.

Plaintiffs also sufficiently alleged that Essex engaged in a RICO

conspiracy in violation of O.C.G.A. § 16-14-4(c).  Essex contends that Plaintiff

has not alleged a RICO conspiracy claim against it because they were

conclusory, and do not allege an overt act by Essex.  A person engages in RICO

conspiracy when "together with one or more persons [he] conspires to violate

[O.C.G.A. § 16-14-4(a)] and any one or more of such persons commits any overt

act to effect the object of the conspiracy."  O.C.G.A. § 16-14-4(c)(1); *see also,*

*Cotman v. State,* 804 S.E.2d 672, 684 (Ga. Ct. App. 2017).

Under Georgia RICO conspiracy law, "The type of agreement necessary to

form a conspiracy is not the 'meeting of the minds' necessary to form a contract

and may be a 'mere tacit understanding between two or more people that they

will pursue a particular criminal objective.'"  *Kilgore v. State*, 305 S.E.2d 82, 90

(Ga. 1983); *Akintoye*, 798 S.E.2d at 724 (applying *Kilgore* to an alleged RICO

conspiracy).

Plaintiffs have alleged facts plausibly showing years of rampant sex

trafficking, sexual servitude and prostitution at the Microtel.  This is sufficient,

at the pleading stage, to support an inference that there was a tacit

understanding to permit and facilitate criminal conduct and retain the economic

benefits of that conduct.  *Williamson v. State*, 685 S.E.2d 784, 792–93 (Ga. Ct.

App. 2009) (finding sufficient evidence of tacit understanding to sell

methamphetamine from defendant's house, noting defendant's statement that "I

don't see because I don't want to"); *Aquilera v. State*, 667 S.E.2d 378, 381 (Ga.

Ct. App. 2008) (tacit understanding can be inferred from the nature of the acts

done in the relationship of the parties, the interest of the alleged conspirators,

and other circumstances).  Having entered into such an understanding, Essex is

liable for the acts of its co-conspirators.  *Akintoye*, 798 S.E.2d at 724 ("It is well

settled that when individuals associate themselves in an unlawful enterprise,

any act done in pursuance of the conspiracy by one or more of the conspirators is

in legal contemplation the act of all.").

## IV.   Plaintiff's Negligence Claims are Timely.

Plaintiff's alleged claims for negligence against Essex, the company that

employed the individuals who worked at the Microtel, who assisted, facilitated and were complicit in Plaintiff's trafficking.  And even if Microtel employees were not engaged in the sex trafficking itself, they knew or should have known of rampant criminal activity taking place at the Microtel—they had constructive knowledge.  And despite Essex's assertions, specificity is not required to plead a negligence claim.  *In re Se. Banking Corp.,* 69 F.3d at 1551.

This Court should not dismiss Plaintiff's negligence claims against Essex based on the statute of limitations because Plaintiff's claims were tolled and are therefore timely.  "A dismissal for failure to state a claim on statute of limitations grounds is appropriate 'only if it is apparent from the face of the complaint that the claim is time-barred.'"  *United State ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1085 (11th Cir. 2018) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)).  A statute of limitation bar is an affirmative defense, which plaintiffs are not required to negate in their complaint.  *La Grasta*, 358 F.3d at 845.

Essex contends that because the statute of limitation for a negligence claim is two years, *see* O.C.G.A. § 9-3-33, Plaintiff's negligence claims are time-barred.  It fails to recognize, however, that O.C.G.A. § 9-3-99 tolled the negligence limitations period for six years because Plaintiff's claims arise out of crimes committed against her.  Plaintiff therefore had eight years to timely

24

assert her negligence claim.  Section "9-3-99 provides for tolling as to 'any cause of action in tort' brought by a crime victim that 'arises out of the facts and circumstances relating to the commission of such alleged crime[.]'."  *Harrison v. McAfee*, 788 S.E.2d 872, 876 (Ga. Ct. App. 2016) (quoting O.C.G.A. § 9-3-99).  In *Harrison*, an unknown perpetrator shot the plaintiff while he was at the defendant's bar.  *Id.*  More than two years later, the plaintiff filed a premises liability lawsuit against the bar.  *Id.*  The *Harrison* court held the plaintiff's claim was timely because he was a victim of an alleged crime and his lawsuit asserted a tort claim arising out of that crime.  *Id.* at 876, 878–79.  In fact, § 9-3-99 tolled the limitation period even the unknown perpetrator had "yet to be arrested or prosecuted."  *Id.* at 873.

Similarly, Plaintiff is the "victim of [] alleged crime[s]," at Essex's hotel and her cause of action "arises out of the facts and circumstances relating to the commission of such alleged crime[s]."  O.C.G.A. § 9-3-99.  The limitation period for her negligence claim was tolled for six years because no prosecution of those crimes has yet become final, nor has the time elapsed to pursue a prosecution for those crimes.[12]  Plaintiff's negligence claims are time-barred only to the extent

---

[12] If the legislature had intended to limit the application of O.C.G.A. § 9-3-99 to cases in which a prosecution had been initiated, it could have done so.  "It did not, and any undesirable result is a matter properly addressed by the General Assembly rather than the courts."  *Harrison*, 788 S.E.2d at 879.

they relate to crimes occurring more than eight years prior to filing this action.

Plaintiff's negligence claims arising out of crimes committed at the Microtel

from 2011 through 2016 are timely.

Respectfully submitted this 25th day of August, 2020.

/s/ *Tiana S. Mykkeltvedt*
John E. Floyd
Georgia Bar No. 266413
floyd@bmelaw.com
Manoj S. Varghese
Georgia Bar No. 734668
varghese@bmelaw.com
Tiana S. Mykkeltvedt
Georgia Bar No. 533512
mykketlvedt@bmelaw.com
Amanda Kay Seals
Georgia Bar No. 502720
seals@bmelaw.com
Michael R. Baumrind
Georgia Bar No. 960296
baumrind@bmelaw.com

BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street, N.W., Suite 3900
Atlanta, GA  30309
(404) 881-4100 – Telephone
(404) 881-4111 – Facsimile

Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Trinity Hundredmark
Georgia Bar No. 140808

26

thundred@atclawfirm.com

ANDERSEN, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia  30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiff Jane Doe 1*

## <u>CERTIFICATION</u>

The undersigned counsel hereby certifies that **PLAINTIFF'S**

**RESPONSE TO ESSEX HOTEL MANAGEMENT, LLC'S MOTION FOR**

**JUDGMENT ON THE PLEADINGS** was prepared using 13-point Century

Schoolbook font and complies with the margin and type requirements of this

Court, per L.R. 5.1 (N.D. Ga.).

This 25th day of August, 2020.

*/s/ Tiana S. Mykkeltvedt*
Tiana S. Mykkeltvedt
Georgia Bar No. 533512

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2020, I served a true and correct copy of **PLAINTIFF'S RESPONSE TO ESSEX HOTEL MANAGEMENT, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS** using the Court's CM/ECF system, which will automatically email the document to all counsel of record.

This 25th day of August, 2020.

/s/ *Tiana S. Mykkeltvedt*
Tiana S. Mykkeltvedt
Georgia Bar No. 533512